**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Lightning Technologies, Inc.,            Case No. 21-41019
                                        Chapter 7
        Debtor.                    Honorable Thomas J. Tucker

_____/

## COVER SHEET FOR MOTION TO APPROVE SALE PROCEDURES

     Chapter 7 Trustee Fred J. Dery ("Trustee") has filed a motion for approval of

procedures for the sale of assets, which is attached to this cover sheet. Pursuant to

E.D. Mich. L.B.R. 6004-1, the Trustee has identified below, by page and paragraph

number, the location in the proposed order accompanying the motion of each of the

following provisions:

| PROVISION | Contained in proposed order | Location in proposed order |
|---|---|---|
| (1) Provisions concerning the qualifications of the bidding parties. | X Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 2-4 |
| (2) Provisions concerning the criteria for a qualifying bid and any deadlines for (i) submitting such a bid, and (ii) notification of whether the bid made constitutes a qualifying bid. | X Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 2-5 |

1

| | | |
|---|---|---|
| (3) Provisions that require qualified bids to identify points of variation from the Buyer bid (including price and other terms). | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 4 |
| (4) Provisions pertaining to the conditions to the qualified bidders' obligation to consummate the purchase (including the time period within which the purchaser must close the transaction). | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 7-8 |
| (5) Provisions pertaining to the amount required for a good faith deposit. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 4 |
| (6) Provisions that relate to a "Back-Up Buyer" should the first winning bidder fail to close the transaction within a specified period of time. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 6-7 |
| (7) No-shop or No-Solicitation provisions including the justification for such provision. | _____Yes<br><br><u>X</u> No | Page____, ¶ ____ |
| (8) Provisions relating to Break-Up fees, Topping fees, and/or Expense Reimbursement (including the waiver of such fees due to rebidding). | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 2 |
| (9) Provisions specifying the bidding increments. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 6 |
| (10) Provisions relating to auction procedures including manner in which auction is to be conducted and when the auction will be open and when it will close. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 6-7 |

2

| (11) Provisions relating to whether the auction will occur and the termination of the auction process and/or sale. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 6-7 |
|---|---|---|
| (12) Provision whether 14 day stay of F.R.Bankr.P. 6004(h) and 6006(d) is waived. | <u>X</u>Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 8 |
| (13) Provisions regarding timing for notice, submission of bids, objections to sale and other key events. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 8 |

**THE TAUNT LAW FIRM**

By:   /s/ Erika D. Hart (P67457)

Dated: March 9, 2021

Erika D. Hart (P67457)
Dean R. Nelson, Jr. (P70818)
Matthew L. Boyd (P73012)
Attorneys for Trustee
700 E. Maple Rd., 2nd Floor
Birmingham, MI 48009
(248) 644-7800
ehart@tauntlaw.com
dnelson@tauntlaw.com
mboyd@tauntlaw.com

3

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Lightning Technologies, Inc.,

                                       Case No. 21-41019
                                       Chapter 7
                                        Honorable Thomas J. Tucker

      Debtor.

_____/

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER (I)
ESTABLISHING SALE PROCEDURES, (II) SCHEDULING AN AUCTION AND
A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365,
(III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION
THEREWITH, (IV) APPROVING THE FORM OF THE PURCHASE AND SALE
AGREEMENT, INCLUDING THE TERMINATION FEE, AND (V) GRANTING
RELATED RELIEF**

Fred J. Dery, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Lightning

Technologies, Inc. ("Lightning" or the "Debtor"), through his counsel, The Taunt Law

Firm, hereby moves (this "Motion") for entry of (i) an order approving the Sale

Procedures, substantially in the form of **Exhibit 1** attached hereto (the "Sale

Procedures Order"), including approving the proposed auction and Sale Procedures,

attached as Exhibit A thereto (the "Sale Procedures")[1] for the proposed sale of substantially

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed
to them in the Sale Procedures and/or the Sale Procedures Order, as applicable.
Intentionally, some of the capitalized terms are repeat definitions in multiple locations
throughout these interrelated documents.

all the assets of Debtor (the "Sale"), (b) approving the form of the Purchase And Sale Agreement, (c) scheduling an auction (the "Auction") if the Trustee receives two or more Qualified Bids (as defined below), (d) scheduling a hearing to consider approval of the Sale (the "Sale Hearing"), (e) approving the form and manner of notice thereof, and (f) establishing procedures (the "Assumption Procedures") for the assumption and assignment of executory contracts and unexpired leases(collectively, the "Assumed and Assigned Agreements"), including notice of proposed cure amounts; and, an order approving the sale of substantially all of the Debtor's assets (the "Sale Order"), including (w) approving the transaction documents between the Trustee and the Successful Bidder (as defined below), (x) authorizing the Sale (after the Auction, if necessary) to the Successful Bidder or the Backup Bidder, if applicable, free and clear of liens, claims, interests, and encumbrances, (y) authorizing the assumption and assignment of the Assumed and Assigned Agreements, and (z) granting related relief, pursuant to sections105(a), 363, 364, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").    In further support of the Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

37328179.4/159982.00001

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 364, 365, and 503 and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014.

## BACKGROUND

4.      Creditors of Lightning Technologies, Inc. (the "Debtor") filed an Involuntary Petition for Relief against the Debtor under Chapter 7 of the U.S. Bankruptcy Code on February 5, 2021 (the "Petition Date").

5.      Fred J. Dery (the "Trustee") is the duly appointed and acting Chapter 7 Trustee of the Debtor.

4.      An Order for Relief was entered by this Court on February 8, 2021 (the "Order for Relief").

5.      The Debtor is a preproduction next generation pallet manufacturing company. The Debtor ceased operations more than 6 months ago and its assets are being held in two locations in Oxford, Michigan and Lake Orion, Michigan.

### *Creditors Asserting Secured Claims*

6.      Grow Michigan LLC ("GrowMI") asserts a first position security interest in all of the assets of the Debtor. Prior to the Petition Date, GrowMI had engaged in a process to sell the assets of the Debtor pursuant to Article 9 of the Uniform Commercial Code ("UCC"). The Article 9 process was halted by the filing of the Involuntary Petition. *See*

3

Grow Michigan LLC's Emergency Motion for Relief from the Automatic Stay or, in the Alternative to Dismiss ("Grow MI Motion for Relief")(Docket No. 6).

7.     As discussed in the Trustee's Response to the Grow MI Motion for Relief (Docket No. 5), there have been allegations regarding the avoidability of Grow MI's alleged perfected secured status and the Trustee is not able, at this point, to confirm the extent, validity and amount of Grow MI's asserted perfected secured claim.

8.     In addition to Grow MI, the following entities or individuals have filed UCC1 financing statements against the Debtor and may assert a secured claim. Similarly, due to the infancy of this case and allegations regarding the status of each secured or perfected status, the Trustee is not able to confirm the extent, validity or amount of these asserted secured claims (in no particular order):

a.  Flagstar Bank, FSB, 5151 Corporate Drive, Troy, MI 48098;

b.   NFS Leasing, Inc., 900 Cummings Center, Suite 226-U, Beverly, MA 01915;

c.  Robert J. Causley, 14233 Bass Court, Shelby Twp, MI 48315;

d.  Paul Shamo, 38311 Huron Point, Harrison Twp., MI 48045;

e.  Solyco, LLC, 400 Water Street, Suite 203, Rochester, MI 48307; and

f.  BB Invescor I, LLC, 445 Park Ave, 20th Floor, New York, NY 10022.

9.     Each of these alleged creditors is included on the creditor matrix and will receive notice of this Motion.

37328179.4/159982.00001

*Stalking Horse Bidder*

10.    On March 4, 2021, the Trustee filed its Application to Employ CRS Capstone ("Capstone") as Financial Advisor to the Trustee (Docket No. 52) to assist with the sale process described herein.  The Court approved employment of Capstone on March 5, 2021 (Docket No. 59). Capstone, and its Managing Director, Scott Eisenberg, were previously engaged by GrowMI prior to the Petition Date in order to, among other things, assist the Debtor in marketing and sale process for substantially all of the Debtor's assets (the "Assets").

11.    Capstone assisted the Trustee in identifying a stalking horse offer from Palltronics, Inc. ("Buyer")[2] to purchase the Assets.  The Trustee has decided, in his business judgment, that the Buyer's offer is likely to maximize value for creditors and the estate.  On March 4, 2021, the Trustee executed an Asset Purchase Agreement ("APA") with Buyer to sell the Assets, subject to Bankruptcy Court approval, a copy of which is attached hereto as **Exhibit 3**.

12.    Subject to the terms and conditions of the APA, the Buyer has offered to pay Five Million Dollars ($5,000,000.00) for the Assets and has provided the Trustee with a deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), which the Trustee is holding pursuant to the terms of the APA.  In addition, the Buyer has agreed to

---

[2] The Buyer Bidder is a different entity than the Article 9 purchaser previously identified by GrowMI through its Article 9 sale process.

act as the stalking horse bidder for the Sale Procedures described herein, subject to a Termination Fee in the amount of $150,000 plus up to $75,000 in actual expenses in the event the Buyer is not the Successful Bidder. The APA is subject to higher and better offers through the sale process described herein.

## **RELIEF REQUESTED**

13.      By this Motion, the Trustee seeks entry of the Sale Procedures Order, substantially in the form attached hereto as **Exhibit 1**:

a      authorizing and approving the Sale Procedures, in substantially the form attached to the Sale Procedures Order as Exhibit A, in connection with the Sale of substantially all of the Debtor's Assets;

b      approving the form of the purchase and sale agreement attached to the Motion as **Exhibit 3** ("APA"), including the Termination Fee,

c      authorizing the Trustee to grant the Termination Fee set forth in the Sale Procedures to the Buyer;

d      approving the form and manner of notice, in substantially the form attached hereto as **Exhibit 6A** (the "Sale Notice"), of the Auction and Sale Hearing for the Sale;

e      scheduling the Auction and Sale Hearing;

f      approving the Assumption Procedures for the Assumed and Assigned Agreements in connection with the Sale; and

g      granting related relief.

14.      The Trustee and his professionals will market the Assets prior to the Auction in the manner set forth in the Sale Procedures Order.

15.      Furthermore, the Trustee will seek entry of the Sale Order at the Sale Hearing:

6

a    authorizing and approving the Sale of all or substantially all of the Assets to the Successful Bidder (as defined in the Sale Procedures) on the terms substantially set forth in the Successful Bid;

b    authorizing and approving the Sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interests, all in accordance with the Successful Bid or, if there is no Auction, to the Buyer pursuant to the terms of the APA; authorizing the assumption and assignment of the Assumed and Assigned Agreements; and

c    granting any related relief.[3]

16.    A copy of the proposed Sale Order will be filed with the Court no later than seven (7) days before the Sale Hearing.

17.    As part of the proposed sale process, the Trustee and Capstone will engage in a robust marketing effort for the Debtor's Assets, contacting both financial and strategic investors regarding a potential sale process. The Trustee, in consultation with Capstone, has developed a list of parties who the Trustee believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "Contact Party", and collectively, the "Contact Parties"). Capstone has or will contact each Contact Party to explore its interest in acquiring the Assets. TheTrustee may supplement the list of Contact Parties throughout the marketing process. The Trustee shall distribute to, or make available in the data room for, each Contact Party an "Information Package" that is comprised of: (i) a cover letter; (ii) a copy of these Sale

---

[3] The Trustee reserves the right to file and serve any supplemental pleading or declaration that the Trustee deems appropriate or necessary in his reasonable business judgment, including any pleading summarizing the competitive bid and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.

7

Procedures; and (iii) copy of a confidentiality agreement (the "Confidentiality Agreement"). To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "Diligence Materials"), each Contact Party must submit to the Trustee, through Capstone, an executed Confidentiality Agreement, signed and transmitted by the person or entity wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "Preliminary Potential Purchaser." All Diligence Material requests must be directed to Capstone. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers. For any Preliminary Potential Purchaser (but not the Buyer) who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Trustee reserves the right to withhold certain Diligence Materials if the Trustee reasonably believes that (a) such disclosure would be detrimental to the interests of the Trustee, or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

## The Proposed Sale

18.     The Trustee believes a prompt sale of the Assets, utilizing the APA with Buyer as a stalking horse bid, represents the best option available for all stakeholders in the Chapter 7 Case.

19.     By this Motion, the Trustee requests that the Court approve the following timeline which may be subject to further revision pursuant to the terms of the Sale

8

Procedures:

    (a)    <u>Deadline to file objections to the Cure and Possible Assumption and Assignment Notice</u>: 14 days from notice of cure amounts.

    (b)    <u>May 3, 2021, at 5:00 pm</u>: Bid Deadline.

    (c)    <u>May 5, 2021 at 5pm, designation of qualified bids (if any) by Trustee</u>

    (d)    <u>May 6, 2021, at 12:00 noon</u>: Auction date.

    (e)    <u>May 7, 2021</u>: Deadline to serve objections to the Sale.

    (f)    <u>May 10, 2021 at 9:00 a.m. Eastern time</u>: Sale Hearing.

20.    The Trustee believes that this timeline maximizes the prospect of accomplishing a sale of the Assets. The Trustee believes that the timeline for consummating the sale process established pursuant to the Sale Procedures is in the best interest of its estate and all parties in interest and should be approved.

## <u>The Sale Procedures Order</u>

### I.    The Sale Procedures.

21.    To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Trustee, in coordination with the Buyer, has developed and proposed the Sale Procedures, attached as <u>Exhibit A</u> to the Sale Procedures Order. The Sale Procedures were designed to permit an expedited sale process, to promote participation and active bidding, and to ensure that the Debtor receives the highest or otherwise best offer for the Assets.

22.    The Sale Procedures describe, among other things, the requirements for prospective purchasers to participate in the bid process, the availability and conduct of

9

due diligence, the deadline for submitting a competing bid, the method and factors for determining Qualified Bids, and the criteria for selecting a Successful Bidder.

23. The following summary describes the salient points of the Sale Procedures, which are subject to further revision pursuant to the stated terms of the Sale Procedures:

(a) The Trustee, in consultation with Capstone, has developed a list of parties who the Trustee believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "Contact Party", and collectively, the "Contact Parties"). Capstone has or will contact each Contact Party to explore its interest in acquiring the Assets. The Debtor may supplement the list of Contact Parties throughout the marketing process.

(b) The Trustee shall distribute to, or make available in the data room for, each Contact Party an "Information Package" that is comprised of:

1    a cover letter;

2    a copy of the Sale Procedures; and

3    a copy of a confidentiality agreement (the "Confidentiality Agreement").

(c) To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "Diligence Materials"), each Contact Party must submit to the Trustee, through Capstone, an executed Confidentiality Agreement, signed and transmitted by the person or entity wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "Preliminary Potential Purchaser." All Diligence Material requests must be directed to Capstone. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers.

(d) For any Preliminary Potential Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Trustee reserves the right to withhold certain Diligence Materials if the Trustee reasonably believes, that (a) such disclosure would be detrimental to the interests of the estate or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

10

(e)    Buyer Bid Protections: Subject to the approval of the Bankruptcy Court, if (i) the Buyer is not in material breach of any provision of the APA and (ii) a sale pursuant to section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization or otherwise of all or substantially all of the Assets in a single transaction or a series of transactions to one or more persons (a "Third Party") other than the Buyer or an affiliate of the Buyer (a "Third-Party Sale"), whether at an Auction, pursuant to a plan of reorganization or otherwise, is consummated, then the Buyer shall be entitled to receive, without further order of the Bankruptcy Court, from the proceeds of the Third-Party Sale and payable in full at such Closing, an amount in cash equal to the sum of (i) $150,000 (USD), plus (ii) the amount of the reasonable, documented fees and expenses paid by the Buyer with respect to the transactions contemplated hereby, including attorneys' fees and expenses and those of other advisors and consultants in an amount not to exceed the sum of $75,000 (USD) ((i) and (ii) collectively, the "Termination Fee"). Such Termination Fee shall be made by wire transfer of immediately available funds to an account designated by the Buyer from the proceeds of the applicable Third-Party Sale at Closing.

(f)    To be eligible to participate in the Auction, each initial Bid, andeach party other than the Buyer Bidder submitting sucha Bid (each, a "Bidder"), must be determined by the Trustee to satisfy each of thefollowing conditions and, if so met, such Bid shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder". The APA is deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items ("Bid Package"):

1. An unconditional cash offer for the Assets. No credit bids are permitted.

2. An executed NDA in form and substance reasonably satisfactory to the Trustee.

3. A cash purchase price that is not less than $5,325,000.

4. A signed asset purchase agreement that contains, with the exception of the cash purchase price in paragraph (3) above, terms substantially similar to the terms and conditions contained in the APA. Any changes to the APA shall be marked against the APA in a separate document.

11

5. A designation of the executory contracts and unexpired leases that such Qualified Bidder desires to be assumed and assigned to such Qualified Bidder. A potential Qualified Bidder will make a good faith showing of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the potential Qualified Bidder. In addition to the cash purchase requirement identified in (3) above, all cure costs will be paid by the Qualified Bidder.

6. A disclosure of the identity of each person or entity that will be bidding for the Assets.

7. A binding and irrevocable offer.

8. The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Trustee of the financial ability to consummate the proposed transaction.

9. A board resolution or written evidence of some type that demonstrates to the reasonable satisfaction of the Trustee that the bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person or persons authorized to bid at the Auction on behalf of such entity is authorized to do so.

10. A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by the Trustee, which Deposit is actually received on or before the Qualified Bid Deadline and in an amount of not less than 5% of the cash purchase price component of the Qualified Bid (exclusive of cure costs to be paid by the Qualified Bidder).

11. The bid must not contain any financial or due diligence contingencies.

12. The agreement of the person or entity making the Qualified Bid to serve as a Back-Up Bidder providing a

12

37328179.4/159982.00001

Back-Up Bid as defined in and pursuant to the terms of Sections 7(f) and 8 of these Sale Procedures.

24.     Importantly, the Sale Procedures recognize the Debtor's goals of not impairing the Debtor's ability to consider all Qualified Bids. Additionally, the Sale Procedures preserve the Debtor's right to modify the Sale Procedures as necessary or appropriate.

## II.     The Auction and Sale.

25.     If any Bid, other than the APA with Buyer, which is received by the Bid Deadline is determined to be a Qualified Bid, the Trustee will conduct the Auction to determine the highest or best Qualified Bid. This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the estate. The Buyer and Qualified Bidders will be notified no later than twenty-four (24) hours prior to the Auction, if any Qualified Bids have been received. If no Qualified Bid other than the APA from the Buyer is received, the Debtor will not hold an Auction and the Buyer will be named the Successful Bidder. TheAuction, if necessary, shall take place virtually on May 6, 2021. Unless otherwise agreed to by the Trustee, only Qualified Bidders, and each of their respective legal or financial professionals are eligible to attend or participate at the Auction. The Auction shall be recorded, transcribed or videotaped, and shall be conducted according to the following procedures, which may be modified by the Trustee.

37328179.4/159982.00001

### III. Summary of the Assumption Procedures for Contracts.

26.     Within seven days after entry of the Bidding Procedures Order, the Trustee will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties (as of the Debtor's Petition Date)(each, a "Contract Counterparty"), setting forth the calculation of each Contract Counterparty's cure amount, if any, that would be owing to such Contract Counterparty if the Trustee decided to assumeor assume and assign such executory contract or unexpired lease, and alerting such Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached hereto as **Exhibit 6B**.  Any Contract Counterparty that objects to the cure amount set forth in the Cureand Possible Assumption and Assignment Notice, must file an objection (a "Cure Objection") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

27.     If a Contract Counterparty does not timely file and serve a Cure Objection, that party will be forever barred from objecting to the proposed cure amount. Where a Contract Counterparty files a timelyCure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Contract Counterparty's agreement, and the Contract Counterparty and the Trustee are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the

14

Trustee's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

28.     After the conclusion of the Auction, the Trustee shall file with the Court and serve on the Contract Counterparties a further notice in the form attached as **Exhibit 6C** (the "Assumption Notice") identifying the Successful Bidder, stating which Assumed and Assigned Agreements may be assumed and assigned to the Successful Bidder, and providing such Contract Counterparties with the Successful Bidder's assurance of future performance. Any Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Assumed and Assigned Agreement set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "Adequate Assurance Objection") and serve the Adequate Assurance Objection on the Notice Parties prior to the Sale Hearing.  If a ContractCounterparty does not file an Adequate Assurance Objection prior to the Sale Hearing, such partywill be forever barred from objecting to the adequacy of the assurance or assumptionand/or assignment of its Assumed and Assigned Agreement to be provided by the Successful Bidder. Where aContract Counterparty files an Adequate Assurance Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacyof the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

29.     Because the Sale Procedures Order sets forth the AssumptionProcedures in detail, they are not restated here.  Generally, however, the AssumptionProcedures: (a)

37328179.4/159982.00001

outline the process by which the Trustee will serve notice to all Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right, and the procedures, to object; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Assumed and Assigned Agreements to the extent necessary.

### Return of Good Faith Deposits

30.     The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the Trustee, but shall not become property of the Debtor's estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after entry of the Sale Order. The Good Faith Deposit of the BackupBidder shall be returned to the Backup Bidder on the date that is the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date, unless such Backup Bidder is determined to become the Successful Bidder. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder or the Backup Bidder timely closes the Sale, its Good Faith Deposit shall be credited towards its purchase price.

37328179.4/159982.00001

## BASIS FOR RELIEF

**The Relief Sought in the Sale Procedures Order Is in the Best Interests of the Debtor's Estate and Should Be Approved.**

### A.     The Proposed Notice of the Sale Procedures and the Sale Process Is Appropriate.

31.     The Trustee seeks to sell the Assets through an Auction and asset sale. The Trustee and its advisors will conduct an appropriate marketing process. The Trustee, with the help of Capstone, has developed a list of "Contact Parties" that will be targeted to receive a copy of the "InformationPackage" (both as defined in the Sale Procedures). The list of Contact Parties will encompass those parties whom the Trustee believes may potentially be interested inpursuing a Sale and whom the Trustee reasonably believes may have the financial resources to consummate such a transaction.

32.     Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections. The Trustee respectfully submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one will beheld); (b) the Sale Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as beingfree and clear of liens,

claims, interests, and other encumbrances, with all such liens,claims, interests, and other

encumbrances attaching with the same validity and priority to the Sale proceeds; and

(f) notice of the proposed assumption and assignment of the Assumed and Assigned

Agreements to the Successful Bidder.

33.     The Trustee further submits that notice of this Motion and the related

hearing to consider entry of the Sale Procedures Order, coupled with service of the Sale

Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption

Notice, as provided for herein, constitutes good and adequate notice ofthe Sale and the

proceedings with respect thereto in compliance with, and satisfaction of, the applicable

requirements of Bankruptcy Rule 2002. The Trustee further submits that the proposed

notice procedures are designed to maximize the chance of obtaining the broadest possible

participation in the Trustee's marketing process, while minimizing costs to the estate.

Accordingly, the Trustee respectfullyrequests that the Court find that the proposed notice

procedures set forth in this Motion are sufficient, and that no other or further notice of the

Sale Procedures, Auction, Sale, or Sale Hearing is required.

### B.      *The Sale Procedures Are Appropriate and Will Maximize Value.*

34.     Bidding procedures should be approved when they provide a benefit tothe

debtor's estate by maximizing the value of the debtor's assets. *See In re Edwards*, 228

B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to

facilitate an open and fair public sale designed to maximize valuefor the estate."); *see*

18

*also In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997). Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (noting "[u]nder Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (same); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

35.     Generally, a paramount goal in proposed sales of property of the estate is to maximize the proceeds received by the estate. *See Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *see also In re FoodBarn Stores, Inc.*, 101 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *Edwards*, 228 B.R. at 561.

19

37328179.4/159982.00001

36.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore appropriate in the context of bankruptcytransactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *Integrated Resources*, 147 B.R. at 659 (stating that bidding procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991)(providing "court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficientresolution of bankrupt estates").

37.     The Trustee believes that the Sale Procedures will establish the parameters under which the value of the Sale may be tested at the Auction.  The Sale Procedures will increase the likelihood that the Trustee will receive the best consideration because they will ensure a competitive and fair bidding process.

38.     The Trustee believes that the proposed Sale Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets. The proposed Sale Procedures will enable the Trustee to conduct the Sale in a controlled, fair, and open fashion that willencourage participation by financially capable bidders capable of operating a facilitylike the one at issue here and who will offer the best package for the Assets and whocan demonstrate the ability to close the transaction.

39.     Specifically, the Sale Procedures contemplate an auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid. At the same time, the Sale Procedures provide the Trustee with a robust opportunity to consider competing Bids and select the highest or otherwise best offer for the completion of the Sale.

40.     Indeed here, the Trustee has developed a procedure for incentivizing multiple parties to submit proposed purchase agreements thereby further fostering a competitive bidding environment.

41.     Additionally, the Trustee's entry into the APA with the Buyer will ensure that the Trustee obtains fair market value for the Assets by setting a minimum purchase price that will be tested in the marketplace. As such, creditors of the Trustee's estate can be assured that the consideration obtained will be fair and reasonable and at or above the market value.

42.     The Buyer bid protections ("Termination Fee") contained within the APA are an essential part of the APA.  The Termination Fee encourages the Buyer by providing reimbursement for expenditures during the due diligence process.  In turn, the Buyer sets the minimum price and provides a  basis for comparison to  potential  bidders. Bankruptcy courts consistently and regularly recognize the benefits of bid protections as an important tool for obtaining a Buyer, which in turn ensures that the debtor's estate is paid, at a

37328179.4/159982.00001

minimum, the reasonable value of the assets. *See, e.g.*, *In re Friendship Village of Mill Creek, d/b/a Greenfields of Geneva*, No. 17-12470 (Bankr. N.D. Ill. May 19, 2017) (Order Approving (A) Bidding Procedures and Overbid Protections;and (B) Approving the Form and Manner of Notice) (ECF No. 66). The proposed Termination Fee is comparable to the terms of other bid protectionsroutinely approved by bankruptcy courts. *E.g.*, *id.*

43.     Termination Fees, such as those included in the APA for the Buyer, are "an incentive payment to a prospective purchaser with which a company fails to consummate a transaction." *In re S.N.A. Nut Co.*, 186 B.R. 98, 101(Bankr. N.D. Ill. 1995). "Agreements to provide breakup fees or reimbursement offees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'Buyer' which attracts more favorable offers.'" *Id.*; *see also In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (stating bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking").

44.     The Trustee submits that the proposed Sale Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by courts in similar circumstances. *See,e.g.*, *In re Friendship Village of Mill Creek, d/b/a Greenfields of Geneva*, No. 17- 12470 (Bankr. N.D. Ill. May 9, 2017) (ECF No. 66); *In re The Clare at Water Tower*,No. 11-46151 (Bankr.

N.D. Ill. Dec. 7, 2011).

45.     Thus, the Sale Procedures are reasonable, appropriate and within the Trustee's sound business judgment under the circumstances because the Sale Procedures are designed to maximize the value to be received by the Debtor's estate.

### C.     *The Proposed Notice Procedures for the Assumed and Assigned Agreements and the Identification of Related Cure Amounts Are Appropriate.*

46.     As set forth above, the Sale contemplates the potential assumption and assignment of the Assumed and Assigned Agreements to the Buyer or to an alternate Successful Bidder arising from the Auction, if any. In connection with this process, the Trustee believes it is necessary to establisha process by which: (a) the Trustee and the Contract Counterparties can reconcile cure obligations, if any, in accordance with Bankruptcy Code sections 105(a) and 365; and (b) such counterparties can object to the potential Assumption Procedures.

47.     The Sale Procedures specify the process by which the Trustee will serve Cure and Possible Assumption and Assignment Notice and the procedures and deadline for Contract Counterparties to Assumed and Assigned Agreement that are subject to being assumed and/or assigned by the Successful Bidder to file and serve Cure Objections.

48.     Except as may otherwise be agreed to in the Successful Bid or by the parties to an Assumed and Assigned Agreements, at the closing of the Sale, the Successful Bidder shall cure those defaults under the Assumed and Assigned

Agreement that need to be cured in accordance with Bankruptcy Code section 365(b) by (a) payment of the undisputedcure amount (the "<u>Cure Amount</u>") and/or (b) reserving amounts with respect to any disputed cure amounts.

49.     As set forth in the Sale Procedures Order, the Trustee also requests that any party that fails to object to the proposed assumption and assignment of any Assumed and Assigned Agreement be deemed to consent to the assumption and assignment of the applicable Assumed and Assigned Agreement pursuant to Bankruptcy Code section 365 on the terms set forth in the SaleOrder, along with the cure amount(s) identified in the Cure and Possible Assumptionand Assignment Notice. *See, e.g.*, *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that by not objecting to the [m]otion, a creditor is deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

50.     The Trustee believes that the assumption procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties of the potential assumption and assignment of their Assumed and Assigned Agreements, and provide certainty to all parties ininterest regarding their obligations and rights with respect thereof. Accordingly, the Trustee requests that the Court approve the assumption procedures set forth in the Sale Procedures Order.

37328179.4/159982.00001

## Approval of the Proposed Sale Is Appropriate and in the Best Interests of the Estate.

### A. The Asset Sale Should Be Authorized Pursuant to Bankruptcy Code Section 363 as a Sound Exercise of the Debtor's Business Judgment.

51. Bankruptcy Code section 363(b)(1) provides that a trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to Bankruptcy Code section 363 if a sound business purpose exists for the proposed transaction. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor-in-possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 174 (Bankr. D. Del. 1991); *see also In re Schipper*, 933 F.2d at 515 (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999). A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g.*, *In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143 (3d Cir. 1986.

52. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested

parties; (c) whether the sale will produce a fair and reasonable price for the property; and

(d) whether the parties have acted in good faith. *See Del.& Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

53.     "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos- Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (internal citation omitted); *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'"); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1). Indeed, when applying the business judgment standard, courts show great deference to a debtor's business

decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at \*3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken inbad faith or in gross abuse of the bankrupt's retained discretion.").

54.     As set forth above, the Trustee has a sound business justification for selling the Assets and entering into the APA with the Buyer.  First, the Trustee believes that the Sale utilizing the APA as a stalking horse bid will maximize the Assets' value.

55.     Second, the sale of the Assets will be subject to competing bids, enhancing the Trustee's ability to receive the highest or otherwise best value for the Assets. The value of the Assets will be tested through the Auction conducted pursuant to and according to the Sale Procedures. Ultimately, the Successful Bid, after being subject to a "market check" in the form of the Auction and accepted by the Trustee in the exercise of his reasonable business judgment, will constitute the highest or otherwise best offer for the Assets. *See, e.g.*, *In re Trans World Airlines,Inc.*, No. 01-00056, 2001 WL 1820326, at \*4 (Bankr. D. Del. Apr. 2, 2001) (statingwhile a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's-length fair value transaction"). Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder, or if there is no auction, by the Buyer pursuant to the APA, ultimately will be demonstrated by

adequate "market exposure" and an open and fair auction process—the best means for establishing whether a fair and reasonable price is beingpaid.

56.     Thus, the Trustee submits that the Successful Bidder's purchase agreement, or the APA of the Buyer if there is no Auction, will constitute the highest or otherwise best offer for the Assets and willprovide a greater recovery for the Trustee's estate than would be provided by any other available alternative. As such, the Trustee's determination to sell the Assets through an Auction process and subsequently to enter into the purchase agreement with the Successful Bidder, or, if there is no Auction, to proceed with a sale to the Buyer pursuant to the APA, will be a valid and sound exercise of the Trustee's business judgment.  The Trustee will submit evidence at the Sale Hearing to support these conclusions.  Therefore, the Trustee requests that the Court make a finding thatthe proposed sale of the Assets is a proper exercise of the Trustee's business judgment and is rightly authorized.

### B.     *Adequate and Reasonable Notice of the Sale Will Be Provided.*

57.     As described above, the Sale Notice: (a) will be served in a manner that provides at least 21-days' notice of the date, time, and location of the Sale Hearing; informs parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the Assumed and Assigned Agreements; and (c) otherwise includes, in combination with the Notice of Successful Bidder and Backup Bidder, all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner

of the Sale Notice will have been approved by this Court pursuant to the Sale Procedures Order, after notice and a hearing, before it is servedon parties in interest.

### C. The Sale and Purchase Price Will Reflect a Fair-Value Transaction.

58.     Where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999). The Debtor will continue to market the Assets and solicit offers consistent with the Sale Procedures, including, without limitation, by providing acceptable Bidders with access to due diligence and requested information. In this way, the number of Bidders that are eligible to participate in the competitive Auction process will be maximized. On the other hand, if no Auction is held because no Auction is necessary, the APA's purchase price conclusively will have been demonstrated to be fair value.

### D. The Sale of the Assets Should Be Free and Clear of Interests Pursuant to Bankruptcy Code Section 363(f).

59.     The Trustee submits that it is appropriate to sell the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "Claims and Interests") pursuant to Bankruptcy Code section 363(f), with any such Claims and Interests attaching to the net sale proceeds of the Assets, as and to the extent applicable.

60.     Section 363(f) permits a trustee to sell property free and clear of another party's interest in the property if (a) applicable non-bankruptcy law permits such a free

29

and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

61.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to permit the Trustee's sale of the Assets free and clear of all Claims and Interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable purchase agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of five conditions are met, the Debtors have the authority to conduct the sale free and clear of all liens."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) (noting that "[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met"); *Citcorp Homeowners Servs., Inc. v. Eliot (In re Eliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided that at least one of the subsections of section 363(f) has been satisfied).

30

37328179.4/159982.00001

62.     The Trustee submits that the Assets may be sold free and clear of Claims and Interests—all in accordance with at least one of the five conditions of Bankruptcy Code section 363(f). Consistent with Bankruptcy Code section 363(f)(2), each of the parties holding liens on the Assets, if any, will consent, or absent any objection to this Motion, will be deemed to have consented to, the Sale and transfer of the Assets. Furthermore, any party holding a valid lien against the Assets will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Trustee from the Sale of the Assets to the Successful Bidder, in the same order of priority, with the same validity, force and effect that such creditor had prior to such sale, subject to any claims and defenses the Trustee and the estate may possess. Accordingly, Bankruptcy Code section 363(f) authorizes the sale and transfer of the Assets free and clear of any such Interests.

### E.     The Assets and the Assumed and Assigned Agreements Should Be Sold Free and Clear of Successor Liability.

63.     The Sale Order will provide that the Successful Bidder shall not have any successor liability related to Seller or the Assets to the maximum extent permitted by law. Extensive case law establishes that claims against a winning bidder may be directed to the proceeds of a free and clear sale of property, and may not subsequently be asserted against that buyer.

64.     Although Bankruptcy Code section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d

31

252, 257 (3d Cir. 2000). In the case of *In re Trans World Airlines, Inc.*,322 F.3d 283, 288–89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger*, the scope of Bankruptcy Code section363(f) is not limited to in rem interests. Thus, the Third Circuit in *Folger* cited *Leckie* for the proposition that the debtors "could sell their assets under § 363(f) freeand clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258.

65.     Courts have consistently held that a buyer of a debtor's assets pursuantto a section 363 sale takes free from successor liability resulting from pre-existing claims. *See In re Ormet*, 2014 WL 3542133 at *4 (Bankr. D. Del. July 17, 2014); *The Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free andclear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,837 F.2d 89, 93–94 (2d Cir. 1988) (channeling of claims to proceeds consistent withintent of sale free and clear under

section 363(f) of the Bankruptcy Code); *In re NewEngland Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (finding transfer of property in free and clear sale was free and clear of Title VII employment discrimination and civil rights claims of Debtors' employees); *In re Hoffman*, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (finding transfer of liquor license free and clearof any interest permissible even though the estate had unpaid taxes); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (holding product liability claims precluded from being asserted against his successor in a sale of assets free and clear); *WBQ P'ship v. Va. Dept. of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 104–05 (Bankr E D. Va. 1995)(stating Commonwealth of Virginia's right to recapture depreciation was an "interest" as used in section 363(f)).

66.     The purpose and value of an order authorizing the transfer of the Assets would be frustrated if claimants thereafter could use the transfer as a basis to assertclaims against the Successful Bidder. Under Bankruptcy Code section 363(f), the Successful Bidder is entitled to know that the Assets are not tainted by latent claimsthat could be asserted against the Successful Bidder after the proposed transaction iscompleted. Absent that ruling, the value of the Assets could be severely compromised.

67.     Accordingly, there is substantial authority for any order approving theSale of the Assets to include a finding that the Successful Bidder is not liable as a successor under any theory of successor liability, for Claims and Interests that encumber or relate to

the Assets.

**F.    The Sale Has Been Proposed in Good Faith and Without Collusion, the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code Section 363(m), and the Sale of the Assets Does Not Violate Bankruptcy Code Section 363(n).**

68.    The Trustee requests that the Court find that the Buyer, or any other Successful Bidder, is entitled to the benefits and protections provided by Bankruptcy Code section 363(m) in connection with the sale of the Assets.

69.    Section 363(m) provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

70.    Section 363(m) thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser purchased the assets in "good faith."  While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that, where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g.*, *Abbotts Dairies of Pa.*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial

sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

71.     The Trustee submits that the Buyer, or any other Successful Bidder arising from the Auction would be a "good faith purchaser" within the meaning of Bankruptcy Code Section 363(m), and the APA or the resulting purchase agreement with a Successful Bidder other than the Buyer, would be a good-faith agreement on arm's-length terms entitled to the protections of section 363(m).[4] First, as set forth in more detail above, the consideration to be received by the Trustee pursuant to the Sale will be subject to a market process by virtue of the Trustee's marketing efforts, with the assistance of its professionals, and the Auction will be substantial, fair, and reasonable. Second, the purchase agreement entered into by the Trustee and the Buyer, or a Successful Bidder other than the Buyer, will be the result of extensive arm's-length negotiations, during which all parties will have the opportunity to be, and the Trustee will be, represented by competent counsel, and any purchase agreement with a Successful Bidder will be the culmination of the Trustee's competitive market process and, if necessary, the Auction, in which all negotiations will be conducted on an arm's-length, good-faith basis. Third, where— as the Trustee

_____

[4] The Debtor believes that a finding of good faith within the meaning of Bankruptcy Code section 363(m) will be appropriate for any Successful Bidder arising from the Auction, if any, and the Sale Procedures. Pursuant to the Sale Procedures, any Successful Bidder will have had to present a proposal in accordance with the Sale Procedures. In addition, the Trustee will not choose as the Successful Bidder or the Backup Bidder (as defined in the Sale Procedures) any entity whose good faith under section 363(m) can reasonably be doubted and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) has been satisfied.

35

anticipates will be the case here—there is no indication of any "fraudor collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to Bankruptcy Code section 363(n). Moreover, with respect to potential Bidders, the Sale Procedures are designed to ensure that no party is able to exert undue influence over the process. Finally, the Successful Bidder's offer will be evaluated and approved by the Trustee in consultation with its advisors. Accordingly, the Trustee believes that the Buyer and the APA, or the Successful Bidder and the resulting purchase agreement if there is an Auction or a Successful Bidder other than the Buyer, should be entitled to the full protections of Bankruptcy Code section 363(m).

72.     Moreover, because there will be no fraud or improper insider dealing of any kind, the Sale will not constitute an avoidable transaction pursuant to Bankruptcy Code section 363(n), and, as a result, the Successful Bidder should receive the protections afforded good faith purchasers by Bankruptcy Code section 363(m). Accordingly, the Trustee requests that the Court make a finding at the Sale Hearing that the agreement reached with the Buyer, or with a Successful Bidder other than the Buyer if there is an Auction, was at arm's length and is entitled to the full protections of Bankruptcy Code section 363(m). The Trustee will submit evidence at the Sale Hearing to support these conclusions.

36

**The Assumption and Assignment of the Assumed and Assigned Agreements Should Be Approved.**

**A.** ***The Assumption and Assignment of the Assumed and Assigned Agreements Reflects the Trustee's Reasonable Business Judgment.***

73.     To facilitate and effectuate the sale of the Assets, the Trustee is seeking authority to assign the Assumed and Assigned Agreements to the Buyer or to an alternate Successful Bidder to the extent required by the Buyer or such Successful Bidder.

74.     Bankruptcy Code section 365 authorizes a trustee to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. *See* 11 U.S.C. § 365(b)(1). The standard in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

75.     Courts generally will not second-guess a trustee's business judgment concerning the assumption of an executory contract. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. May 20, 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a

decision to reject an executory contract is governed by the business judgment standard");

*see also Phar Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948, 952 (N.D. Ohio 1997)

("Courts should generally defer to a Debtors' decision whether to reject an executory

contract."). A trustee's decision to assume or reject an executory contract or unexpired

lease will not be subject to review unless such decision is clearly an unreasonable exercise

of such judgment. *See, e.g.*, *Grp. of Institutional Inv'rs v. Chicago, Milwaukee, St. Paul

& Pac. Ry. Co.*, 318 U.S. 523, 549–50 (1943) (applying Bankruptcy Act section 77(b),

predecessor to section 365, and rejecting a test of whether an executory contract was

burdensome in favor of determining whether rejection is within the debtor's business

judgment); *see also Sharon Steel*, 872 F.2d at 40 (describing deference to a debtor's

business judgment as "breathing space afforded [to] the debtor to consider whether to

reject or assume executory contracts under the Code"); *Network Access Sols.*, 330 B.R. at

75; *Exide Techs.*, 340 B.R. at 239.

76.      The Court should approve the decision to assume and assign the Assumed

and Assigned Agreements in connection with the Sale as a sound exercise of the Trustee's

business judgment. First, the Assumed and Assigned Agreements are necessary to operate

the Assets and, as such, they are essential to inducing the best offer for the Assets. Second,

it is unlikely that any purchaser would want to acquire the Assets unless a significant

number of the Assumed and Assigned Agreements needed to manage the day-to-day

operations were included in the transaction. Third, the Assumed and Assigned Agreements

37328179.4/159982.00001

will be assumed and assigned as part of a process approved by the Court pursuant to the Sale Procedures Order and, thus, will be reviewed by key constituents in this Chapter 7 Case. Accordingly, the Trustee submits that the assumption and assignment of the Assumed and Assigned Agreements, if required by the Successful Bidder, should be approved as a sound exercise of the Trustee's business judgment.

77. A trustee may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with Bankruptcy Code section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. *See* 11 U.S.C. § 365(f)(2). Significantly, among other things, adequateassurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a leasefrom the debtors has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

78. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*,993 F.2d 300 (2d Cir. 1993); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr.

D.N.J. 1988).

79.     Contract Counterparties will have the opportunity to request additional adequate assurance information by responding to the Cure and Possible Assumptionand Assignment Notice. Accordingly, the Trustee submits that the assumption and assignment of the Assumed and Assigned Agreements as set forth herein should be approved.

80.     To assist in the assumption, assignment and sale of the Assumed and Assigned Agreements, the Trustee also requests that the Sale Order approving the Sale of the Assets provide that anti-assignment provisions in the Assumed and Assigned Agreements shall not restrict, limit, or prohibit the assumption, assignment and sale of the Assumed and Assigned Agreements and are deemed and found to be unenforceable anti-assignment provisionswithin the meaning of Bankruptcy Code section 365(f).

81.     Section 365(f)(1) permits a trustee to assign unexpired leases and executory contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .

11 U.S.C. § 365(f)(1).

82.     Section 365(f)(1), by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g.,* *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904,

40

910–11 (9th Cir. 1997) (providing "no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365"), *cert. denied*, 522 U.S. 1148 (1998).

83.     Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced. *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f) [*sic*], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."). Similarly, in *In re Mr. Grocer., Inc.*, the court noted that:

> [the] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.

77 B.R. 349, 354 (Bankr. D.N.H. 1987). Thus, the Trustee requests that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Assumed and Assigned Agreements, and be deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

41

## **NO PRIOR REQUEST**

84.     No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter the proposed order substantially in the form attached hereto as **Exhibit 1** granting the relief requested in the Motion and such other and further relief as may be just and proper.


                                        **THE TAUNT LAW FIRM**

                                By:     /s/ Erika D. Hart
Dated: March 9, 2021                    Erika D. Hart (P67457)
                                        Dean R. Nelson, Jr. (P70818)
                                        Matthew L. Boyd (P73012)
                                        Attorneys for Trustee
                                        700 E. Maple Rd., 2nd Floor
                                        Birmingham, MI 48009
                                        (248) 644-7800
                                        ehart@tauntlaw.com
                                        dnelson@tauntlaw.com
                                        mboyd@tauntlaw.com

# INDEX OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | Sale Procedures Order |
| **Exhibit 2** | Reserved Pending Motion for Expedited Hearing |
| **Exhibit 3** | Asset Purchase Agreement |
| **Exhibit 4** | Certificate Of Service |
| **Exhibit 5** | N/A |
| **Exhibit 6A** | Sale Procedures Notice |
| **Exhibit 6B** | Cure and Possible Assumption and Assignment Notice |
| **Exhibit 6C** | Assumption Notice |

**EXHIBIT 1**

37328179.4/159982.00001

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

| In re: | Case No. 21-41019-tjt |
|---|---|
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

**ORDER (I) ESTABLISHING SALE PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365, (III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, (IV) APPROVING THE FORM OF THE PURCHASE AND SALE AGREEMENT, INCLUDING THE TERMINATION FEE, AND (V) GRANTING RELATED RELIEF**

This matter having come before the Court on the Chapter 7 Trustee's Motion for the entry of an Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, including the Termination Fee, and (V) Granting Related Relief ("Sale Motion")[5], filed by the Chapter 7 Trustee duly appointed and acting in this case ("Trustee"), which seeks entry of, among other things, this order ("Sale Procedures Order"); proper notice of the Sale Motion having been provided to all parties entitled thereto as required by applicable law, and no other or further notice being required; objections, if any, to the entry of this

---

[5] All capitalized terms used in this Sale Procedures Order but not defined herein shall have the meanings ascribed to them in the Sale Motion.

Sales Procedure Order having been withdrawn, resolved, or overruled; the Court finding that (a) it has jurisdiction to enter this Sale Procedures Order pursuant to 28 U.S.C. § 1334; and (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing to the Court that the relief granted by the Sale Procedures Order is in the best interest of Debtor, its estate, and its creditors; the Court being otherwise fully advised on the premises;

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Sale Motion is GRANTED, solely to the extent that it requests entry of this Sale Procedures Order and as provided herein. All objections to the entry of this Sale Procedures Order not settled, withdrawn, or otherwise resolved are overruled.

2.     The APA is authorized, approved, duly executed, and binding to the extent necessary to carry out and implement the terms of this Order, and Trustee and Buyer are authorized to perform as required thereunder, subject to the Sale Procedures, the Sale Order and as set forth herein.   No credit bids are permitted for the Assets.

3.     The Trustee is authorized and directed to pay to the Buyer an amount equal to (i) $150,000, plus (ii) an expense reimbursement for the reasonable fees, including professional fees of the Buyer, of up to $75,000 ((i) and (ii), collectively, the "Termination Fee") on the terms, and subject to the conditions, set forth in the Sale Procedures and the APA.  The Termination Fee is hereby authorized and approved based on the substantial value the Stalking Horse Bid (as defined in the Sales Procedures) created for the bankruptcy estate and the exercise of the Trustee's business judgment.

4.     Objections, if any, to the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order must: (a) be in writing; (b) conform to any applicable requirements of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any applicable local rules of procedure of this Court; (c) set forth the name of the objecting party and the nature of any claims or interests held by such party against or in Debtor's estate or property; (d) state with particularity the legal and factual bases for the objection and the specific grounds therefore; and (e) be filed with the Clerk of the Court, and served on the Chapter 7 Trustee's counsel so as to be received, on or before **May 7, 2021.**

5.     Any person or entity that fails to make an objection in compliance with the requirements of paragraph 4 above shall be forever barred from asserting any objection to the entry of the Sale Order.

6.     A hearing ("Sale Hearing") to consider the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order shall be held on **May 10, 2021 at [****].** The Trustee shall file a proposed Sale Order with the Court on or before May 3, 2021.

7.     The Sale Procedures attached as **Exhibit A** to this Order are incorporated herein, are hereby approved, and shall apply to the sale of the Assets.

8.     The proposed Notice of Auction and Sale in the form attached as **Exhibit 6A** to the Sale Motion is hereby approved and deemed sufficient for all purposes, and no further notice shall be required.

9.     The proposed assumption and assignment notice ("Cure and Possible Assumption and Assignment Notice") substantially in the form attached as **Exhibit 6B** to the Sale Motion and the Notice of Proposed Assignment of Executory Contracts and Unexpired Leases ("Assumption Notice") substantially in the form attached as **Exhibit 6C** to the Sale Motion, are both hereby approved and deemed sufficient for all purposes, and no further notice shall be required.

10.     The following procedures are hereby approved and shall apply to the assumption and assignment by the Trustee of certain executory contracts and unexpired leases (the "Assumed and Assigned Agreements"):

    (a)     By no later than seven (7) days after entry of the Sale Procedures Order, the Trustee will file a schedule ("Cure Schedule") which will be attached to the Cure and Possible Assumption and Assignment Notice, identifying (i) the Assumed and Assigned Agreements, potentially to be assumed and assigned to a buyer in the event of a Sale and (ii) the amount, if any, the Trustee believes is necessary to cure all monetary defaults and other defaults under such agreement pursuant to section 365 of the Bankruptcy Code ("Cure Costs").

    (b)     Upon the filing of the Cure Schedule, the Trustee will serve the Cure Schedule and the Cure and Possible Assumption and Assignment Notice on each of the non-debtor counterparties ("Contract Counterparty") listed on the Cure Schedule by first class mail. The Cure and Possible Assumption and Assignment Notice will state that the Trustee is or may be seeking the assumption and assignment of the Assumed and Assigned Agreement and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale, (ii) that the deadline for objecting ("Cure/Assignment Objection") to the amount of the proposed Cure Costs related to any executory contract or unexpired lease is **April 7, 2021** ("Cure/Assignment Objection Deadline") and (iii) that the deadline for objecting ("Adequate Assurance Objection") to the ability of the Buyer to provide adequate assurance of future performance

under any Assumed and Assigned Agreement is prior to the start of the Sale Hearing ("Adequate Assurance Objection Deadline").

(c)     Each Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on Trustee's counsel so that it is received by Cure/Assignment Objection Deadline and/or the Adequate Assurance Objection Deadline, respectively.

(d)     If no objections are received with respect to any Assumed and Assigned Agreement, then the Cure Costs set forth in the Cure Schedule for such agreement will be binding upon the Contract Counterparty to such agreement for all purposes and will constitute a final determination of the Cure Cost required to be paid by or on behalf of the applicable Debtor in connection with the assumption and assignment of such agreement. In addition, all Contract Counterparties to the Assumed and Assigned Agreements who fail to file an objection before the Cure/Assignment Objection Deadline and/or the Adequate Assurance Objection Deadline, as applicable, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed and Assigned Agreements, and the Trustee and the buyer will be entitled to rely solely upon the Cure Cost set forth on the Cure Schedule; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the Debtor or the buyer that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumption or assignment of the applicable Assumed and Assigned Agreement.

(e)     The Trustee or the Winning Bidder may amend the Cure Schedule to remove or add any Assumed and Assigned Agreement at any time before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an order of the Court. The Contract Counterparty or Counterparties to any such removed or added contract or lease will be notified of such exclusion or addition by written notice mailed within five (5) business days after such amendment, and any Contract Counterparty with an Assumed and Assigned Agreement which is added to the Cure Schedule shall have the longer of (a) seven (7) days after written notice is mailed to the non-debtor counterparty with an added Assumed and Assigned Agreement and (b) the

Cure/Assignment Objection Deadline or Adequate Assurance Objection Deadline, as applicable, to file an objection.

11.     A hearing to consider any Cure/Assignment Objections shall be held on **April 21, 2021 at _____.**

12.     After the conclusion of the Auction, the Trustee shall file with the Court and serve on the Contract Counterparties the Assumption Notice identifying the Successful Bidder, stating which Assumed and Assigned Agreement may be assumed and assigned to the Successful Bidder, and providing such Contract Counterparties with the Successful Bidder's assurance of future performance. Any Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Assumed and Assigned Agreement set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "Adequate Assurance Objection") and serve the Adequate Assurance Objection on the Notice Parties prior to the Sale Hearing.  If a Contract Counterparty does not file an Adequate Assurance Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance or assumptionand/or assignment of its Assumed and Assigned Agreement to be provided by the Successful Bidder. Where a Contract Counterparty files an Adequate Assurance Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacyof the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

13.     The presence of an Assumed and Assigned Agreement on the Cure Schedule does not constitute an admission that such Assumed and Assigned Agreement is an

executory contract or unexpired lease or that the Assumed and Assigned Agreement will be assumed, assigned or both.

14. The Court retains jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this Order.

15. This Order is effective immediately upon its entry, notwithstanding Fed. R. Bankr. P. 6004(h).

**EXHIBIT A**

# Sale Procedures

## *In re Lightning Technologies, Inc.* (Bankr. E.D. Mich. Case No. 21-41019)

The duly appointed and acting Chapter 7 trustee ("Trustee") for the bankruptcy estate of Lightning Technologies, Inc. (the "Debtor") has determined that entering into the Section 363 Asset Purchase Agreement ("APA")[6] with, and thereby accepting an initial bid for the Assets described in and subject to the APA ("Stalking Horse Bid") from, Palltronics, Inc. ("Buyer"), subject to higher and better offers to be solicited and considered pursuant to the Sale Procedures described herein, will enable the Trustee to obtain the highest and best price for the Assets consistent with his duties under Section 704(a)(1) of the Bankruptcy Code to collect and reduce to money the property of the Debtor's bankruptcy estate and close the estate as expeditiously as is compatible with the best interests of parties in interest.

1.  Notice of Auction and Sale. Within seven (7) days after entry of an order (the "Sale Procedures Order") approving these Sale Procedures, the Trustee will provide notification of the Sale Procedures to the following parties ("Notice Parties") in the form and manner described below:

   (a)  Trustee will serve the Sale Procedures Order and the APA, by mail, postage prepaid on:

      (i)  The Office of the United States Trustee;

      (ii)  All parties that have requested notice in this case pursuant to Bankruptcy Rule 2002;

      (iii)  All entities that have executed a nondisclosure agreement in form and substance acceptable to the Trustee in connection with the proposed sale of the Assets;

      (iv)  Buyer; and

      (v)  All entities known by the Trustee to have asserted a lien, claim, or encumbrance on or against any of the Assets.

   (b)  Trustee will serve a notice of the Sale Procedures Order and the Notice of Auction and Sale, by mail, postage prepaid, in the form of

---

[6] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Section 363 Asset Purchase Agreement dated March 4, 2021.

**Attachment 6A to the Motion** (with the blanks filled in), on the creditor matrix.

2. <u>Due Diligence</u>. Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from the Trustee. Interested parties must execute a form nondisclosure agreement acceptable to the Trustee ("<u>NDA</u>") before any due diligence materials will be provided. The NDA will include a provision that any copies made or otherwise obtained of any Intellectual Property will be returned to the Trustee and any electronically stored information will be permanently deleted if the counterparty to the NDA is not the Winning Bidder or does not Close the Winning Bid. All due diligence requests should be directed to Scott Eisenberg, Capstone Headwaters, 255 E. Brown St., Suite 120, phone 248.633.2150; email: <u>seisenberg@capstoneheadwaters.com</u>. All due diligence shall be completed by the Auction.

3. <u>Stalking Horse Bid</u>.

 (a) The aggregate consideration for the Assets is cash payable at Closing (as defined below) in the total amount of $5,000,000.00, inclusive of the Deposit Amount (the "<u>Purchase Price</u>"). In addition to the Purchase Price, all cure costs in connection with Assumed and Assigned Agreements actually assumed and assigned to Buyer will be paid by the Buyer.

 (b) Subject to the approval of the Bankruptcy Court, if (i) the Buyer is not in material breach of any provision of the APA and (ii) a sale pursuant to section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization or otherwise of all or substantially all of the Assets in a single transaction or a series of transactions to one or more persons (a "<u>Third Party</u>") other than the Buyer or an affiliate of the Buyer (a "<u>Third-Party Sale</u>"), whether at an Auction, pursuant to a plan of reorganization or otherwise, is consummated, then the Buyer shall be entitled to receive, without further order of the Bankruptcy Court, from the proceeds of the Third-Party Sale and payable in full at such Closing, an amount in cash equal to the sum of (i) $150,000 (USD), plus (ii) the amount of the reasonable, documented fees and expenses paid by the Buyer with respect to the transactions contemplated hereby, including attorneys' fees and expenses and those of other advisors and consultants in an amount not to exceed the sum of $75,000 (USD) ((i) and (ii) collectively, the "<u>Termination Fee</u>"). Such Termination Fee shall be made by wire transfer of immediately available funds to an account designated by the Buyer from the proceeds of the applicable Third-Party Sale at Closing.

4. <u>Qualified Bidders</u>.

(a) Additional bidders must be Qualified Bidders (as defined below) to participate at the Auction (as defined below).

(b) A "Qualified Bidder" is any person or entity that submits a Qualified Bid (as defined below) in accordance with these Sale Procedures. Buyer is and shall be treated as a Qualified Bidder for all purposes.

(c) A "Qualified Bid" is a written offer to purchase the Assets from a Qualified Bidder that complies with all of the following requirements:

(i) <u>Deadline to Submit Qualified Bids</u>: Any person or entity that wishes to submit a Qualified Bid must submit its bid so that it is actually received by the Trustee's counsel no later than 5:00 p.m. prevailing Eastern Time on May 3, 2021 (the "<u>Qualified Bid Deadline</u>").

(ii) <u>Where to Submit Bids</u>:  Bids must be submitted by electronic mail to the Counsel for the Trustee and the Office of the United States Trustee and must include an address, telephone number and electronic mail address at which the entity submitting the bid may be contacted:

> Counsel for the Trustee
> Erika D. Hart
> THE TAUNT LAW FIRM
> 700 E. Maple Road, Birmingham, MI 48009
> Office: (248) 644.7800
> ehart@tauntlaw.com


> Office of the United States Trustee
> c/o Leslie J. Berg
> 211 West Fort Street, Suite 700
> Detroit, MI 48226
> leslie.j.berg@usdoj.gov

The Trustee shall provide Buyer with a complete copy of any Qualified Bid it receives, by electronic mail, promptly upon receipt, to the following email addresses:

> Counsel for Buyer

Miller, Canfield, Paddock and Stone, PLC
Steven A. Roach
roach@millercanfield.com
Marc N. Swanson
swansonm@millercanfield.com
150 West Jefferson, Suite 2500
Detroit, MI 48226

(iii) <u>Content of Qualified Bids</u>: The Stalking Horse Bid is deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items ("<u>Bid Package</u>"):

(1) An unconditional cash offer for the Assets. No credit bids are permitted.

(2) An executed NDA in form and substance reasonably satisfactory to the Trustee

(3) A cash purchase price that is not less than $5,325,000.

(4) A signed asset purchase agreement that contains, with the exception of the cash purchase price in paragraph (3) above, terms substantially similar to the terms and conditions contained in the APA. Any changes to the APA shall be marked against the APA in a separate document.

(5) A designation of the executory contracts and unexpired leases that such Qualified Bidder desires to be assumed and assigned to such Qualified Bidder. A potential Qualified Bidder will make a good faith showing of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the potential Qualified Bidder. In addition to the cash purchase requirement identified in (3) above, all cure costs will be paid by the Qualified Bidder.

(6) A disclosure of the identity of each person or entity that will be bidding for the Assets.

(7) A binding and irrevocable offer.

14

(8)     The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Trustee of the financial ability to consummate the proposed transaction.

(9)     A board resolution or written evidence of some type that demonstrates to the reasonable satisfaction of the Trustee that the bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person or persons authorized to bid at the Auction on behalf of such entity is authorized to do so.

(10)    A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by the Trustee, which Deposit is actually received on or before the Qualified Bid Deadline and in an amount of not less than 5% of the cash purchase price component of the Qualified Bid (exclusive of cure costs to be paid by the Qualified Bidder).

(11)    The bid must not contain any financial or due diligence contingencies.

(12)    The agreement of the person or entity making the Qualified Bid to serve as a Back-Up Bidder providing a Back-Up Bid as defined in and pursuant to the terms of Sections 7(f) and 8 of these Sale Procedures.

The Trustee reserves the right to work with any potential bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid.

5.     "As Is, Where Is"; No Reliance by Bidders. All entities seeking to be designated as Qualified Bidders shall be conclusively presumed to represent, warrant, and acknowledge as follows:

(a)     The Assets shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, its agent, or the bankruptcy estate, other than as contained in the APA or the asset purchase agreement submitted by the Qualified Bidder.

15

(b)    All of Debtor's right, title, and interest in and to the Assets pursuant to the terms of the Sale Order shall be sold free and clear of all liens, claims, encumbrances, restrictions, and other interests of any kind or nature thereon to the full extent authorized under Bankruptcy Code §§ 363(f), 365 and 105, with the same to attach to the net proceeds of the sale of the Assets according to their priority immediately prior to Closing of the sale of the Assets.

(c)    Each Qualified Bidder understands and is bound by the terms of these Sale Procedures, and any order approving these Sale Procedures.

(d)    Each Qualified Bidder has had an opportunity to conduct reasonable due diligence, if requested, and it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or Assets in making its bid and has not relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets except as expressly stated in the Sale Procedures Order or in an executed asset purchase agreement, or the accuracy or completeness of any information provided in connection with the Assets, the Sale Procedures Order, or the Auction.

(e)    Each Qualified Bidder has not colluded with any party with respect to its bid and has submitted its bid in good faith and not by any means forbidden by law. Nothing herein shall be construed to prohibit disclosed joint bids, however.

6.    <u>Designation of Qualified Bids</u>.

(a)    On or before May 5, 2021, at 5:00 p.m. prevailing Eastern Time, Trustee will designate those submitted bids, if any, that are Qualified Bids. The Trustee may determine at the Auction that a previously Qualified Bidder has altered its bid in a way that causes it no longer to be a Qualified Bidder.

(b)    If no Qualified Bids, other than the Stalking Horse Bid, are received by the Qualified Bid Deadline, the Trustee will seek Bankruptcy Court approval of a sale of the Assets to Buyer pursuant to the APA.

7.    <u>Auction</u>. If one or more Qualified Bids is received (in addition to the Stalking Horse Bid) by the Qualified Bid Deadline, then an auction between or among the Buyer

and those persons and entities submitting Qualified Bids will be conducted remotely via zoom on May 6, 2021, commencing at 12:00 p.m. prevailing Eastern Time ("Auction").

(a) Only representatives of the Trustee, the Buyer, and any other Qualified Bidder will be entitled to attend and participate in the Auction.

(b) Trustee may announce at the Auction additional procedural, non-material substantive rules as determined in good faith in the exercise of his business judgment for bidding and other procedures that are reasonable under the circumstances (*e.g.*, regarding the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Sale Procedures Order, any order of the Court entered in connection herewith, the APA, or the Bankruptcy Code.

(c) The Trustee shall designate at the start of the Auction the Qualified Bid determined by the Trustee in the exercise of his business judgment to be the highest or otherwise best bid as the initial bid for the Assets ("Initial Qualified Bid").

(d) The first overbid above the Initial Qualified Bid (as determined by the amounts to be paid in clauses (3) and (5) of its Bid Package) and each subsequent overbid must be in the form of cash consideration and must be determined by the Trustee to be equal in value to the sum of $100,000.00 above the immediately preceding Initial Qualified Bid or subsequent overbid (if applicable).

(e) After each round of bidding, the Trustee will announce the identity of the Qualified Bidder deemed by Trustee at that point to have made the highest or otherwise best offer for the Assets.

(f) Promptly after the conclusion of the Auction, the Trustee will designate the highest or best Qualified Bid (taking into account all relevant factors, including, but not limited to, cash consideration, the terms and conditions of the proposed agreement, the aggregate value offered by the Qualified Bidder, the speed and certainty of consummation of a sale of the Assets to such Qualified Bidder), and the net proceeds that will be made available to the Debtor's bankruptcy estate upon a sale of the Assets (the "Winning Bidder") and shall designate the next highest or otherwise best Qualified Bid (the "Back-Up Bid") and the entity submitting the Back-Up Bid ("Back-Up

Bidder"). The Trustee will file a notice with the Court immediately after the Auction setting forth the identity of the Winning Bidder.

(g)    At the conclusion of the Auction, the party making the highest or otherwise best bid for the Assets shall be designated the Winning Bidder and the party submitting the second highest or otherwise best bid shall be designated the Back-Up Bidder. If the Winning Bid is approved by the Court and the Winning Bidder fails to close, the Trustee shall be authorized, but not directed, to close on the Back-Up Bid without further order of the Court.

8.    <u>Presentation of Winning Bidder and Back-Up Bid; Acceptance of Qualified Bid Only Upon Court Approval</u>. A hearing shall occur as soon as practicable after the Auction given the schedule of the Court, at which hearing the Trustee shall seek entry of an order approving the sale of the Assets to the Winning Bidder ("<u>Sale Order</u>") and that is effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h). The Sale Order shall provide that, if the transaction with the Winning Bidder for sale of the Assets fails to close because of a breach or failure to perform on the part of the Winning Bidder, the Trustee may consummate a sale of the Assets pursuant to the Back-Up Bid without further order of the Court. If an Auction is conducted, and the Buyer is not the Winning Bidder, the Buyer shall, if its bid is determined to be the next highest bid, serve as the Back-Up Bidder and keep the Buyer's bid to consummate the transactions contemplated by the APA on the terms and conditions set forth in the APA in addition to any increased bid amount that the Back-Up Bidder may make at the Auction open and irrevocable until the date which is 30 days after the date of the Auction (the "<u>Buyer Outside Back-up Date</u>"). The Back-Up Bid of a Back-Up Bidder shall also remain open and irrevocable until the Buyer Outside Back-Up Date. A Qualified Bid, including any Winning Bid or Back-Up Bid, shall be deemed accepted by the Trustee only when that Qualified Bid has been approved by the Court and the Sale Order entered by the Court.

9.    <u>Treatment of Deposits</u>.

(a)    Any Qualified Bidder that submitted a Deposit and that is not designated at the Auction as having submitted the Winning Bid or the Back-Up Bid shall have its Deposit returned to it no later than two (2) business days after the designation of the Winning Bid.

(b)    If Buyer is the Back-Up Bidder, its Deposit shall be returned to it within two (2) business days after the Buyer Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid. The Trustee is authorized to wire transfer the return of Deposits to respective Qualified Bidders pursuant to these Sale Procedures.

(c)     If a Qualified Bidder other than Buyer is the Back-Up Bidder, its Deposit shall be returned to it within two (2) business days after the Buyer Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid.

(d)     Notwithstanding anything to the contrary in any agreement between a Qualified Bidder and Trustee or any other entity, if such Qualified Bidder fails to consummate a transaction approved pursuant to the Sale Order because of a breach or failure to perform on the part of such Qualified Bidder, such Qualified Bidder shall not be entitled to the return of its Deposit and the Deposit shall be irrevocably forfeited to the Debtor's estate. Such Deposit shall be deemed property of Debtor's estate and such Deposit shall be retained by Debtor's estate in full satisfaction of any damages due to Debtor's estate as a result of such Qualified Bidder's failure to consummate the transaction. Such Deposit shall not be subject to any security interest or other lien.

10.    <u>Closing</u>. The closing of the transactions contemplated by the APA or the Winning Bid, as applicable ("<u>Closing</u>"), shall take place remotely via electronic exchange of documents, on the date ("<u>Closing Date</u>") that is mutually agreed to by the Parties, but in no event shall be later than 10 days after the entry of the Sale Order.

11.    <u>Sale Hearing</u>. A hearing to consider entry of the Sale Order will be held before the Court on a date to be set at the hearing on the entry of the Sale Procedures Order.

37328179.4/159982.00001

**EXHIBIT 2**

**NOTICE – RESERVED PENDING MOTION FOR EXPEDITED HEARING**

**EXHIBIT 3**

**ASSET PURCHASE AGREEMENT**

## 363 SALE ASSET PURCHASE AGREEMENT

This 363 SALE ASSET PURCHASE AGREEMENT (the "Agreement") is entered into as of March 4, 2021, between **Palltronics, Inc**., a Michigan corporation ("Buyer"), and **Fred J. Dery, in his capacity as Chapter 7 Trustee for the bankruptcy estate of Lightning Technologies Inc., Case No. 21-41019-tjt** ("Trustee" or "Seller", and collectively with Buyer, the "Parties" and each a "Party"). The date on which this Agreement is accepted by the Seller, as evidenced by his signature below, is the "Acceptance Date".

## RECITALS

WHEREAS, on February 5, 2021, an involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 USC §§101 *et. seq.,* as amended (the "Bankruptcy Code") was filed against Lightning Technologies, Inc. ("Debtor"), thereby commencing Case No. 21-41019-tjt (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"); and

WHEREAS, Debtor consented to the involuntary petition and the Bankruptcy Court entered its Order for Relief on February 8, 2021 [Docket No. 5]; and

WHEREAS, Fred J. Dery was appointed as and is the duly acting Chapter 7 trustee for the bankruptcy estate in the Bankruptcy Case; and

WHEREAS, Debtor had been in the business of designing, manufacturing, and selling pallets, including pallets featuring specific proprietary coatings, pooling, and logistics (the "Business"); and

WHEREAS, the Seller desires to sell, convey, transfer, assign and deliver to the Buyer, and the Buyer desires to purchase and acquire from the Seller, all of the Assets free and clear of all liens, claims, encumbrances and other interests, including all Assumed Contracts (defined in Section 2.1.3 below), all on the terms and subject to the conditions provided herein, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Assets shall be purchased by the Buyer pursuant to this Agreement and the Sale Order (as defined in Section 8.4) authorizing and approving this Agreement and the sale described herein, free and clear of all liens, claims, encumbrances and other interests, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 6004 and 6006, which Sale Order will include, but not be limited to, the authorization and approval of the assumption by the Seller and assignment to the Buyer of the Assumed Contracts designated by the Buyer to be assumed and assigned, in accordance with Section 365 of the Bankruptcy Code, and the Sale Procedures Order and Sale Procedures (each as defined in Section 6 below), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and the local rules for the Bankruptcy Court (the "Sale").

# AGREEMENT

NOW, THEREFORE, in consideration of the premises and mutual representations, warranties and covenants herein contained and other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereto agree as follows:

## 1. Incorporation of Recitals.

**1.1.** The Recitals set forth above are true and correct and are incorporated into and form an integral part of this Agreement.

## 2. Purchase and Sale of Assets.

**2.1.** <u>Assets</u>.  Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, and pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, at the Closing and effective on the Closing Date, the Seller shall sell, convey, transfer, assign and deliver to the Buyer, and the Buyer shall purchase, receive and accept from the Seller, free and clear of all liens, claims, encumbrances and other interests, all of the Assets.  "Assets" shall mean all of the Debtor's and its bankruptcy estate's right, title, and interest in and to the assets, properties, and other rights used, useful or capable of being used in connection with the Business (exclusive only of the Excluded Assets (as defined in Section 2.4 below)).  The Assets shall include, but shall not be limited to, all of the Debtor's and its bankruptcy estate's right, title and interest in and to the Assets described in the following clauses of this Section 2.1 (but shall specifically exclude the Excluded Assets only):

**2.1.1.** the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Fixtures, General Intangibles, the Assumed Contracts (as defined in Section 2.1.3 below; and including any agreements and any related Contract Rights), Goods, Instruments, Investment Property, and Money (each capitalized term used, but not defined, in this Section 2.1.1 has its meaning as defined in the Article 9 of the Michigan Uniform Commercial Code), including, in each case, that which is specifically set forth on <u>Schedule 2.1.1</u> hereto;

**2.1.2.** (a) the Equipment of the Debtor, including that which is specifically set forth on <u>Schedule 2.1.2(a)</u> hereto and (a) the motor vehicles and corresponding vehicle title and Michigan registration set forth on <u>Schedule 2.1.2(b)</u> hereto;

**2.1.3.** all of the Debtor's right in, to and under any written contract, obligation, understanding, commitment, lease, license, purchase order, bid or other agreement, together with all amendments and other modifications of any of the foregoing, that are not executory contracts or unexpired leases under Section 365 of the Bankruptcy Code ("Contracts") and all executory contracts and unexpired leases under Section 365 of the Bankruptcy Code that are designated in writing by the Buyer at any time prior to and as of the Closing Date to be assumed by Seller and assigned to Buyer under the terms of this Agreement, the Sale Procedures Order or the Sale Order ("Assumed Contracts"), including those Contracts and Assumed Contracts that are specifically set forth on <u>Schedule 2.1.3</u> hereto;

**2.1.4.** the Intellectual Property (as defined and identified on <u>Schedule 2.1.4</u> hereto);

2

**2.1.5.** all Inventory, all Goods held by Debtor for sale or lease or to be furnished under contract or service, including any finished goods, raw materials, work in progress, and materials used or consumed in the Business, including that which is specifically set forth on Schedule 2.1.5 hereto (collectively "Inventory");

**2.1.6.** all equity owned by the Debtor or any other subsidiary of the Debtor including that which is specifically set forth on Schedule 2.1.6 hereto;

**2.1.7.** all causes of action, lawsuits, judgments, claims and demands of any nature to the extent reasonably necessary to enforce Buyer's rights, title and interest in the Assets;

**2.1.8.** any other property or assets of the Debtor or its bankruptcy estate in existence at the time of the Closing that are not Excluded Assets (as defined in Section 2.34 below);

**2.1.9.** any rights, title and interest of Seller, including the right to enforce, under any nondisclosure agreement, confidentiality agreement or similar document or agreement running in favor, or for the benefit, of Seller, including, but not limited to, any such document or agreement executed and delivered to Seller in connection with the Sale under the Sale Procedures (defined in Section 6.1 below); and

**2.1.10.** except for the Purchase Price paid by Buyer, all proceeds and products of any of the foregoing.

For purposes of this Agreement, the Assets identified on the Schedules referred to in this Section 2.1 are defined in this Agreement as the "Scheduled Assets". Buyer shall have the right to amend the Schedules at any time prior to the Closing Date to add or delete Assets from the Schedules or to modify their scope or descriptions, in each case, without increasing or reducing the Purchase Price (defined in Section 3.1).

**2.2.** Right to Disclaim Assets. Notwithstanding Section 2.1, Buyer shall have the right to disclaim any Asset, and thereby to treat such disclaimed Asset as an Excluded Asset, at any time prior to Closing by notifying Seller in writing of its election to disclaim such Asset.

**2.3.** No Assumption of Liability. The transfer of the Assets pursuant to this Agreement does not include the assumption of any liability or other obligation related to the Assets, whether express or implied, unless Buyer expressly assumes such liability or other obligation in this Agreement.

**2.4.** Excluded Assets. Notwithstanding any other provision set forth in this Agreement, the Seller is not selling, conveying, transferring or assigning and the Buyer is not purchasing, receiving or accepting, any of the assets, rights or properties set forth below (such assets being referred to as the "Excluded Assets"):

**2.4.1.** all of the organizational documents, equity books, equity ledgers and minute books, and tax returns and related work papers, in each case, of the Debtor, and any other materials that Debtor is required by law to retain;

**2.4.2.** all executory contracts and unexpired leases that Buyer does not designate in writing as of the Closing Date to be treated as Assumed Contracts;

**2.4.3.** all rights in connection with employee benefit plans (including any pension plans) of the Debtor;

**2.4.4.** except to the extent any interest in real property is designated by Buyer in writing as an Assumed Contract, all interests in real property of the Debtor;

**2.4.5.** any and all tax refunds related to the operations of the Debtor;

**2.4.6.** all current and prior director and officer insurance policies of the Debtor and all rights of any nature with respect thereto, including all insurance proceeds and recoveries thereunder and rights to assert claims with respect to such insurance proceeds and recoveries.

**2.4.7.** all causes of action, lawsuits, judgments, claims and demands of any nature except those described in Section 2.1.7;

**2.4.8.** any cause of action arising under Chapter 5 of the Bankruptcy Code which belongs to the bankruptcy estate of the Debtor, including, but not limited to, claims of the estate which the Seller could bring pursuant to the Trustee's strong-arm power under §544 of the Bankruptcy Code, except, in each case, any such cause of action arising from or relating to an Assumed Contract.

### 3. Purchase Price Consideration.

**3.1.** <u>Purchase Price</u>. The consideration to be paid by Buyer to Seller is cash in the amount of $5,000,000.00 (the "Purchase Price"), plus any cure costs associated with the Assumed Contracts designated as such by Buyer at any time prior to and as of the Closing Date.

**3.2.** <u>Deposit Terms</u>.

Within two (2) business days of the execution of this Agreement by Buyer and Seller, Buyer shall promptly deposit by wire transfer the sum of $250,000.00 (the "Deposit Amount") to the Seller, which Deposit Amount shall be non-refundable unless: (i) Buyer is not the Winning Bidder, as defined herein; (ii) Buyer terminates this Agreement pursuant to Section 7, or (iii) Seller cancels or terminates the Sale (other than under Section 7.1.5), in which case, whether under (i), (ii), or (iii) of this Section 3.2.1, the Deposit Amount shall be returned to Buyer pursuant to Section 7.2 below. Upon the Closing, if the Buyer is the Winning Bidder, the Deposit Amount shall be paid to Seller and shall automatically be credited against the Purchase Price. The balance of the Purchase Price shall be paid by Buyer at Closing. Except for Seller, no creditor or other party in interest shall have any security interest or other lien on, interest in, or claim to, the Deposit Amount.

### 4. Sale "As Is" And "Where Is."

EXCEPT IN EACH CASE TO THE EXTENT OTHERWISE PROVIDED IN THIS AGREEMENT OR THE SALE ORDER: (A) BUYER IS ACQUIRING THE ASSETS "AS IS" AND "WHERE IS" WITH ALL FAULTS AND DEFECTS (INCLUDING DEFECTS OF

4

TITLE), (B) BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE AND DOES NOT MAKE, AND SELLER SPECIFICALLY DISCLAIMS, ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE VALUE, NATURE, QUALITY, QUANTITY OR CONDITION OF THE ASSETS, (C) BUYER ACKNOWLEDGES THAT BUYER, HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE ASSETS, IS RELYING ON ITS OWN INVESTIGATION OF THE ASSETS, (D) BUYER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY SELLER CONCERNING THE ASSETS AND THAT SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, AND (E) BUYER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PART OF THIS AGREEMENT AND THAT SELLER WOULD NOT AGREE TO SELL THE ASSETS TO BUYER FOR THE PURCHASE PRICE WITHOUT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION.

### 5. Bankruptcy Court Matters.

**5.1.** <u>Motion to the Bankruptcy Court</u>. As soon as practicable after the Parties execute this Agreement, but in any event no later than three (3) business days after the Parties execute this Agreement, Seller will file with the Bankruptcy Court a motion, in form and substance satisfactory to Buyer, seeking entry of an order of the Bankruptcy Court approving the Sale Procedures Order described in Section 6 and setting the Sale Hearing for authorization and approval of the Sale and entry of the Sale Order ("Sale Hearing"). Seller will use its best efforts to obtain entry of an order of the Bankruptcy Court approving the Sale Procedures provided herein within seven (7) business days after the Acceptance Date. Seller will use its best efforts to obtain entry of the Sale Order on or before May 10, 2021.

**5.2.** <u>Bankruptcy Court Approval.</u> Seller and Buyer each acknowledges that this Agreement and the sale of the Assets are expressly subject to Bankruptcy Court approval and, without such approval, this Agreement and the sale of the Assets shall be null and void and the Deposit Amount promptly returned to Buyer.

### 6. Sale Procedures; Buyer Protections; Closing.

**6.1.** <u>Sale Procedures</u>. The "Sale Procedures" are set forth on Exhibit A to this Agreement and the "Sale Procedures Order" is attached as Exhibit B to this Agreement. Seller shall use his best efforts to obtain Bankruptcy Court approval of the Sale Procedures Order, including the Termination Fee (defined below) in accordance with section 6.2 below, within seven (7) days of the Acceptance Date. This Agreement and the transactions contemplated herein and hereby are subject to approval by the Bankruptcy Court and the Trustee's right and ability to consider higher and better competing bids with respect to the Assets pursuant to the Sale Procedures Order (each a "Competing Bid"), including, without limitation, by way of auction (the "Auction") as set forth in the Sale Procedures Order.

**6.2.** Buyer Protections. If (i) the Buyer is not in material breach of any provision of this Agreement, and (ii) a sale pursuant to section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization or otherwise of all or substantially all of the Assets in a single transaction or a series of transactions to one or more persons (a "Third Party") other than the Buyer or an affiliate of the Buyer (a "Third-Party Sale"), whether at an Auction, pursuant to a plan of reorganization or otherwise, is consummated, then the Buyer shall be entitled to receive, without further order of the Bankruptcy Court, from the proceeds of the Third-Party Sale, payable in full at such closing of the Third-Party Sale, an amount in cash equal to the sum of (i) $150,000 (USD), *plus* (ii) the amount of the reasonable, documented fees and expenses paid by the Buyer with respect to the transactions contemplated hereby, including attorneys' fees and expenses and those of other advisors and consultants in an amount not to exceed the sum of $75,000 (USD) ((i) and (ii) collectively, the "Termination Fee"). The Termination Fee shall be payable in full in cash from the proceeds of the applicable Third-Party Sale, at the closing of the Third-Party Sale, by wire transfer of immediately available funds to an account designated by the Buyer.

**6.3.** Closing Date. The closing of the transactions contemplated hereby ("Closing") shall take place remotely via electronic exchange of documents on a date ("Closing Date") as soon as practicable after the entry of the Sale Order or on such later date that is mutually agreed to by the Parties, but, subject to the next sentence, in no event shall the Closing Date be later than 10 days after the entry of the Sale Order without the written consent of the Buyer. On the Closing Date, unless expressly waived by Buyer in writing, the Sale Order shall be in full force and effect and not subject to any stay, injunction, appeal, or pending motion that, if granted, would have the effect of modifying, vacating or otherwise affecting the terms of the Sale Order or this Agreement. Unless otherwise expressly provided in this Agreement, all actions to be taken on the Closing Date pursuant to this Agreement and the Sale Order shall be deemed to have occurred simultaneously.

**6.4.** Sale Procedures Order and Sale Order. The Bankruptcy Court shall have entered the Sale Procedures Order as a condition precedent to this Agreement and entry of the Sale Order. The Bankruptcy Court shall have entered the Sale Order as defined in and including the requirements of Section 8.4 of this Agreement.

**6.5.** Assumed Contracts. The Trustee shall use his best efforts to assume and assign to Buyer all of the Assumed Contracts on Schedule 2.1.3. The Trustee shall include on the "Cure Schedule" (as defined in the Sale Procedures Order) all of the Debtor's executory contracts and unexpired leases, including, without limitation, the Assumed Contracts set forth on Schedule 2.1.3. Schedule 2.1.3 may be amended to add or delete an Assumed Contract by Buyer at any time, in Buyer's sole discretion, through the Closing. From the Acceptance Date through the entry of the Sale Order, the Trustee shall not reject any executory contract or unexpired lease unless otherwise agreed to in writing by Buyer. Notwithstanding anything in this Agreement to the contrary, in the event and to the extent that any of the Assumed Contracts cannot be assumed and assigned to Buyer under Section 365 of the Bankruptcy Code or otherwise, then this Agreement shall not constitute an agreement to assign any such particular Assumed Contract (or any claim or right or any benefit arising thereunder or resulting therefrom) if the agreement to assign or attempt to assign, without the consent of a third party, would constitute a breach thereof, accelerate any obligations thereunder, permit the termination thereof or in any other way adversely affect the rights of Buyer thereunder. Until such consent is obtained, or if an attempted assignment thereof would be

6

ineffective or would affect the rights of the Debtor thereunder so that Buyer would not, in fact, receive all such rights, the Trustee shall provide, to the extent practicable, for Buyer the benefits of (upon the same terms as in existence on the Acceptance Date), and to permit Buyer to assume, insofar as expressly set forth herein, the stated liabilities under such particular Assumed Contract (upon the same terms as in existence on the Acceptance Date), including enforcement at the request and expense and for the benefit of Buyer of any and all rights of the Debtor against a third party thereto arising out of the breach or cancellation thereof by such third party or otherwise. Any transfer or assignment to Buyer by the Trustee of any property or property rights or any contract or agreement that shall require the consent or approval of any third party shall be made subject to such consent or approval being obtained.

**6.6.** Seller's Deliveries to Buyer at Closing. The obligation of Buyer to consummate the transactions contemplated by this Agreement is subject to the Seller making the following deliveries to Buyer on the Closing Date (collectively, "Seller's Deliveries"):

**6.6.1.** a Bill of Sale executed by Seller for all of the Assets, including, but not limited to, all of the Scheduled Assets;

**6.6.2.** delivery by Seller of, or otherwise making unrestricted access available to Buyer of, all Scheduled Assets;

**6.6.3.** assignments of the Intellectual Property set forth on Schedule 2.1.4 hereto, in the form of an IP Bill of Sale, executed by Seller, together with releases from existing secured parties thereof;

**6.6.4.** assignment and assumption agreements for the Assumed Contracts to the extent reasonably required by the Buyer;

**6.6.5.** the title and registration certificates, together with such duly executed assignment documents required by the State of Michigan, in respect to the motor vehicles set forth on Schedule 2.1.2(b);

**6.6.6.** a certificate duly executed by Seller, certifying the Seller's representations and warranties set forth in Section 8.3.2 of this Agreement as of the Closing Date; and

**6.6.7.** the Sale Procedures Order;

**6.6.8.** the Sale Order; and

**6.6.9.** such other documents, instruments, and agreements as Buyer reasonably requests for the purpose of consummating the transactions contemplated by this Agreement.

**6.7.** Buyer's Deliveries to Seller at Closing. On the Closing Date, Buyer shall deliver or cause to be delivered to Seller (the "Buyer's Deliveries"):

**6.7.1.** the Purchase Price (less the Deposit Amount) in cash or immediately available funds; and

7

**6.7.2.** such documents and instruments as are contemplated by this Agreement or are reasonably required by Seller to transfer the Assets to Buyer.

**7. Termination.**

**7.1.** This Agreement may be terminated at any time prior to Closing by:

**7.1.1.** Either Party if prior to the Auction, Sale Hearing or Closing, any third party commences any legal action and obtains a temporary restraining order, preliminary injunction or other order from a court of competent jurisdiction to stay, prevent or otherwise delay the Auction, Sale Hearing and/or the Closing, as the case may be, and the same is not set aside within 21 days after the same is entered.

**7.1.2.** The Buyer if, after the conclusion of the Auction or the Sale Hearing, but before the Closing, Seller materially breaches its obligations under this Agreement.

**7.1.3.** The Buyer, within 45 days after the Acceptance Date, upon written notice to the Seller, if it is not satisfied, in its sole and absolute discretion, with the results of its ongoing due diligence investigation of the Assets.

**7.1.4.** The Buyer, if any of Seller's Deliveries in Section 6.6 is not satisfied on the Closing Date (unless waived by Buyer in writing and in its discretion).

**7.1.5.** The Seller, if any of Buyer's Deliveries in Section 6.7 is not satisfied on the Closing Date (unless waived by Seller in writing and in its discretion).

**7.2.** Effects of Termination. Upon termination of this Agreement under Section 7, this Agreement shall become null and void and have no effect and there shall be no liability on the part of either Party or its representatives, affiliates, directors, officers, shareholders, members or agents to the other Party, except (a) Buyer shall be entitled to (i) the return of the Deposit Amount, unless Buyer terminates this Agreement exclusively under Section 7.1.3 at any time more than 30 days after the Acceptance Date, in which case Buyer shall forfeit the Deposit Amount, and (ii) receive the Termination Fee if Buyer is entitled to receive the Termination Fee under Section 6.2 of this Agreement and (b) Seller shall be entitled to retain the Deposit Amount if it terminates this Agreement under Section 7.1.5. For the avoidance of doubt, the sole and exclusive remedy available to the Seller for a breach of this Agreement and failure to Close by Buyer is the forfeiture by Buyer of the Deposit Amount to Seller.

**8. Additional Agreements.**

**8.1.** Further Assurances.

**8.1.1.** Upon the terms and subject to the conditions hereof, each Party shall use its reasonable efforts to take or cause to be taken all appropriate action and to do or cause to be done all things necessary, proper or advisable under applicable law, to consummate the transactions contemplated by this Agreement as promptly as practicable, including using its reasonable efforts to obtain all licenses, permits, consents, approvals, authorizations, qualifications and orders of Governmental Authorities (defined in Section 8.1.3.3 below), and make any filings with respect thereto, as are

8

necessary for the consummation of the transactions contemplated by this Agreement and to fulfill the conditions to the Closing.

**8.1.2.** Each Party agrees to cooperate in good faith in obtaining any other consents and approvals that may be required in connection with the transactions contemplated by this Agreement; provided, however, that no Party shall be required to compensate any third party to obtain any such consent or approval.

**8.1.3.** From the date of this Agreement until the earlier of the Closing Date or the termination of this Agreement, Seller and Buyer shall promptly:

**8.1.3.1.** notify the other Party in writing of any pending action, proceeding or investigation by any Governmental Authority or any other person (i) challenging or seeking material damages in connection with this Agreement or the transactions contemplated hereunder or (ii) seeking to restrain or prohibit the consummation of the transactions contemplated hereunder or otherwise limit the right of Buyer or its affiliates to own or operate all or any portion of the Business or Assets.

**8.1.3.2.** consult with each other to provide any necessary information with respect to (and, in the case of correspondence, provide the other Party copies of), all filings made by such Party with any Governmental Authority or any other information supplied by such Party to, or correspondence with a Governmental Authority in connection with this Agreement and the transactions contemplated hereby.

**8.1.3.3.** inform each other of any communication from any Governmental Authority regarding any of the transactions contemplated by this Agreement. If any of Buyer or Seller or any of their respective affiliates receives a request for additional information or documentary material from any Governmental Authority with respect to the transactions contemplated by this Agreement, then such Party shall use commercially reasonable efforts to make, or cause to be made, promptly and after consultation with the other Party, an appropriate response in compliance with such request. "Governmental Authority" means any (a) nation, region, state, county, city, town, village, district or other jurisdiction, (b) federal, state, local, municipal, foreign or other government, (c) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department or other entity and any court or other tribunal), (d) multinational organization or (e) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power of any nature.

**8.1.3.4.** notify the other Party upon having actual knowledge of (i) the occurrence, or non-occurrence, of any event, which would reasonably be expected to cause any representation or warranty of such Party contained in this Agreement to be untrue or inaccurate in any material respect, (2) any failure to comply with or satisfy in any material respect any covenant or agreement to be complied with or satisfied by such Party under this Agreement, or (3) the failure of any condition precedent to the other Party's obligations under this Agreement.

**8.2.** Intentionally Omitted.

**8.3.** Representations and Warranties.

**8.3.1.** *Buyer's Representations and Warranties.* Buyer represents and warrants to Seller that:

**8.3.1.1.** it has full power and authority to execute and deliver this Agreement and all ancillary documents contemplated by this Agreement and to perform its obligations hereunder;

**8.3.1.2.** the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement have been duly authorized by all necessary company action on the part of Buyer;

**8.3.1.3.** subject to approval of the Bankruptcy Court, upon the execution and delivery hereof, this Agreement and all ancillary documents contemplated by this Agreement will be valid, binding and enforceable upon it in accordance with its terms, subject to the effect of any applicable bankruptcy, moratorium, insolvency, reorganization or other similar law affecting the enforceability of creditors' rights generally and to the effect of general principles of equity which may limit the availability of equitable remedies (whether in a proceeding at law or in equity); and

**8.3.1.4.** the execution and delivery of this Agreement does not and will not contravene, conflict with, violate or constitute a default under any material agreement governing Buyer.

**8.3.2.** *Seller's Representations and Warranties.* Seller represents and warrants to Buyer that:

**8.3.2.1.** subject to approval of the Bankruptcy Court, Seller has full power and authority to execute and deliver this Agreement and all ancillary documents contemplated by this Agreement, and to perform its obligations hereunder;

**8.3.2.2.** subject to approval of the Bankruptcy Court, upon the execution and delivery hereof, this Agreement and all ancillary documents contemplated by this Agreement will be valid, binding and enforceable upon it in accordance with its terms, subject to the effect of any applicable bankruptcy, moratorium, insolvency, reorganization or other similar law affecting the enforceability of creditors' rights generally and to the effect of general principles of equity which may limit the availability of equitable remedies (whether in a proceeding at law or in equity);

**8.3.2.3.** subject to approval of the Bankruptcy Court, the execution and delivery of this Agreement does not and will not contravene, conflict with, violate or constitute a default under any agreement governing Seller;

**8.3.2.4.** except for CRS Capstone Partners, LLC, neither Seller, nor any agent acting on behalf of Seller has incurred any liability to pay any fees or commissions to any broker, finder or agent or any other similar payment in connection with any of the transactions contemplated by this Agreement.

**8.3.2.5.** except as set forth on Schedule 8.3.2.5, to the best of Seller's knowledge, there are no pending proceedings (i) by or against Seller that could reasonably be expected to affect the Business or the Assets, (ii) that challenge, or that may have the effect of preventing, delaying, making illegal or otherwise interfering with, any of the transactions contemplated by this Agreement or (iii) that in any way may result in a Material Adverse Effect. "Material Adverse Effect" means any event, change, circumstance, effect or other matter that has, or could reasonably be expected to have, either individually or in the aggregate with all other events, changes,

circumstances, effects or other matters, with or without notice, lapse of time or both, a material adverse effect on the Business, Assets, financial condition, prospects, operating results or operations of the Business; provided, however, that the following shall not by itself constitute a Material Adverse Effect: (i) effects caused by changes or circumstances affecting general market conditions in the U.S. or foreign economies or which are generally applicable to the industry in which the Business operates, or (ii) effects caused by COVID-19 (*i.e.*, the Coronavirus) on the Business;

**8.3.2.6.** to the best knowledge of Seller, without inquiry or independent investigation, the Schedules to this Agreement are true and correct;

**8.3.2.7.** no representation or warranty of Seller in this Section 8.3.2. and no statement made by Seller in any ancillary agreements to which it is a party, or any certificate, instrument or other document delivered by or on behalf of Seller pursuant to this Agreement or any ancillary agreement to which it is a party, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein, in light of the circumstances in which they were made, not misleading; and

**8.3.2.8.** the Debtor is not engaged in the manufacturing of pallets as of the date of this Agreement and, to the best of the knowledge of Seller, will not be engaged in the manufacturing of pallets through the Closing Date.

**8.4.** <u>Sale Order.</u> Seller intends to sell the Assets to Buyer pursuant to 11 U.S.C. §§105, 363(b) and (f), and 365 after entry of the Sale Order by the Bankruptcy Court. The term "Sale Order" as used in this Agreement means an order entered by the Bankruptcy Court in a form and substance satisfactory to Buyer (i) that was granted after appropriate notice to all parties entitled to notice of any motion relating to the Assets, Sale Procedures and this Agreement; (ii) that is not subject to a stay pending appeal; (iii) unless waived by Buyer, as to which the time to appeal from, or to seek review, rehearing, reconsideration, amendment or petition for certiorari of, has expired without a pending appeal or application or motion seeking review, rehearing, reconsideration, amendment or petition for certiorari; and (iv) that provides, at least, the following: (A) the Assets will be transferred to Buyer free and clear of all liens, claims, encumbrances and other interests of every and any kind or nature whatsoever, whether at law or in equity, including, but not limited to, free and clear of any rights or claims based on any theory of successor, derivative, or vicarious liability of any kind or character including, on a theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, products antitrust liability, or tax liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, whether arising before, on or after the entry of the Order for Relief under chapter 7 of the Bankruptcy Code, save and excepting only those liabilities expressly assumed by Buyer in writing under this Agreement; (B) all liens, claims, encumbrances and other interests shall be transferred from the Assets to the proceeds of Sale in the same order of priority as such liens, claims, encumbrances and other interests existed in and against the Assets immediately before the Closing, pending a further order of the Bankruptcy Court distributing such proceeds; (C) requiring any party who is in possession of the Scheduled Assets, including, without limitation, any Intellectual Property stored electronically or digitally, to deliver to Buyer such Scheduled Assets, including, without limitation, all copies of Intellectual Property, and to certify in writing to the Seller that such party has delivered all Scheduled Assets and copies

11

to the Buyer, and has permanently erased all digital or other electronically stored copies; (D) Buyer has acted in "good faith" within the meaning of and is entitled to the protections of section 363(m) of the Bankruptcy Code; (E) the consideration provided by Buyer for the Assets is for all purposes valuable, fair and reasonably equivalent value and consideration under the Bankruptcy Code and any other applicable law, and the transaction may not be avoided, or costs or damages imposed or awarded, under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code; (F) the acquisition of the Assets does not amount to a consolidation, merger or de facto merger of Buyer and Debtor and/or Debtor's estate; (G) Buyer's operation of the Sale Assets are not deemed a continuation of Debtor's business, and all "persons" (as defined in section 101(41) of the Bankruptcy Code) are enjoined from asserting against Buyer, or its successors or assigns, any claim or cause of action based upon the theory or "successor liability"; (H) as to the Assumed Contracts, (1) the sale, assumption and assignment, and transfer is approved pursuant to sections 363, 365 and 105 of the Bankruptcy Code; (2) Seller is authorized in accordance with Bankruptcy Code sections 365(b)(1) and (f)(2), to: (a) assume the Assumed Contracts; (b) sell, assign and transfer to Buyer each of the Assumed Contracts; and (c) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign and transfer the Assumed Contracts; (3) all defaults or other obligations or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2) are deemed cured; and (4) Buyer has provided adequate assurance of its future performance of the Assumed Contracts and the proposed assumption and assignment of the Assumed Contracts satisfies in all respects the requirements under section 365 of the Bankruptcy Code; (I) Seller is authorized and directed to (1) execute, deliver, perform under, consummate and implement this Agreement and all additional instruments and documents that are contemplated under this Agreement, or may be reasonably necessary or desirable to implement this Agreement, and (2) take all further actions as may be requested by Buyer for the purpose of transferring the Assets to Buyer and carrying out the intents and purposes of this Agreement; (J) this Agreement was negotiated, proposed and entered into by the Parties without collusion, in good faith and from arm's length bargaining positions; and (K) waiving any stay of the Sale Order pursuant to Bankruptcy Rule 6004(h), such that the Sale Order is immediately effective and can be acted and relied upon by the Parties in Closing the transaction contemplated in this Agreement upon entry of the Sale Order.

**8.5.** <u>No Implied Rights or Remedies</u>. Except as otherwise expressly provided herein, nothing herein is intended or shall be construed to confer upon or to give any person other than Seller and Buyer any rights or remedies under or by reason of this Agreement.

**8.6.** <u>Risk of Loss</u>. Except with respect to a breach of any of the representations and warranties made herein by Seller, the risk of any loss that may occur with respect to any of the Assets being purchased hereunder shall be borne by Buyer immediately upon consummation of the Closing and at all times from and after the Closing Date.

**8.7.** <u>Limited Responsibility</u>. It is the mutual intent of the Parties that the obligations, representations, warranties and covenants hereunder or as a result hereof or of the transactions contemplated hereby are and shall be limited to only those expressly set forth herein, and not enlarged by implication, operation of law or otherwise.

**9. Indemnification.**

12

Except as otherwise provided for in this Agreement, nothing in this Agreement shall be construed to create a specific obligation on the part of either Party to indemnify or hold the other Party harmless from and with respect to any claims, liabilities, losses, damages, costs or expenses whatsoever.

**10. Miscellaneous.**

**10.1.** <u>Notices</u>.  Any notices, consents or other communications required to be sent or given hereunder by any of the Parties shall in every case be in writing and shall be deemed properly served if and when (a) delivered by hand, (b) transmitted by facsimile or email with confirmation of transmission or receipt, or (c) delivered by Federal Express or other express overnight delivery service, or registered or certified mail, return receipt requested, to the Parties at the addresses as set forth below or at such other addresses as may be furnished in writing:

To Seller:

Fred J. Dery
803 W. Big Beaver
Site 353
Troy, MI 48084

With a copy to:

The Taunt Law Firm
Attn: Erika D. Hart, Dean R. Nelson, Jr.
700 E. Maple Rd., Second Floor
Birmingham, Michigan 48009


To Buyer:


Damian Kassab and John Garcia
Solyco Advisors
400 Water Street, Suite 203
Rochester, MI 48307
Email: dkassab@solycoadvisors.com
Email: jgarcia@solycoadvisors.com

With a copy to:

Steven Roach and Marc Swanson
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, MI 48226
Email: roach@millercanfield.com
Email: swansonm@millercanfield.com

13

**10.2.** Entire Agreement. This Agreement, the Schedules and the Exhibits attached hereto, and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the sale of Assets. Any oral representations or modifications concerning this Agreement, or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

**10.3.** Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by each Party.

**10.4.** Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

**10.5.** Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver. No failure or delay by a Party in exercising any right or remedy under this Agreement or any of the documents delivered pursuant to this Agreement, and no course of dealing between the Parties, operates as a waiver of such right or remedy, and no single or partial exercise of any such right or remedy precludes any other or further exercise of such right or remedy or the exercise of any other right or remedy.

**10.6.** Captions. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

**10.7.** Payment of Fees and Expenses. Except as provided herein, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of this Agreement and the transaction described herein.

**10.8.** Tax Matters. Seller shall not be responsible for the preparation and filing of any tax returns for Buyer. Seller acknowledges and agrees that it shall pay in a timely manner all applicable sales, use, transfer, conveyance, documentary, recording, notarial, value added, excise, registration, stamp, gross receipts and similar Taxes and fees ("Transfer Taxes"), arising out of or in connection with or attributable to the transactions effected pursuant to this Agreement and the ancillary agreements, excluding expenses and fees relating to registering the Intellectual Property in the name of Buyer or its designee, regardless of whether such Transfer Taxes, expenses and fees are imposed by law on Buyer, the Assets or Seller.

**10.9.** Survival. The representations, warranties, covenants and agreements of Seller and Buyer herein, or in any documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing, except as otherwise set forth herein.

**10.10.** Assignments. This Agreement shall be binding on and inure to the benefit of the Parties and their successors and assigns. Buyer may not assign this Agreement to any entity without the prior approval of the Seller, which approval shall not be unreasonably withheld; provided however,

14

consent of the Seller shall not be required to any assignment by Buyer to one or more of its affiliates.

**10.11.** Specific Performance.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed by Seller in accordance with their specific terms or were otherwise breached. The Parties accordingly agree that, in addition to any other remedy to which Buyer is entitled at law or in equity, Buyer is entitled to injunctive relief to prevent breaches of this Agreement and otherwise to enforce specifically the provisions of this Agreement and that Buyer shall not be required to post any statutorily required bond in connection therewith. Seller expressly waives any requirement that Buyer obtain any bond or provide any indemnity in connection with any action seeking injunctive relief or specific enforcement of the provisions of this Agreement.

**10.12.** Governing Law; Jurisdiction. The validity and construction of this Agreement shall be governed by the internal laws of the State of Michigan without regard to principles of conflicts of laws. Any judicial proceedings against Seller or Buyer involving, directly or indirectly, this Agreement shall be brought in the United States Bankruptcy Court for the Eastern District of Michigan.

**10.13.** Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party.

**10.14.** Counterparts.  This Agreement may be executed in one or more counterparts, all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile transmission or e-mail (in .pdf or similar format) shall be as effective as delivery of a manually executed counterpart hereof, shall be treated as an original signature for all purposes of this Agreement and shall be fully effective to bind such Party to the terms of this Agreement.

**10.15.** Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

**10.16.** Interpretation and Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:

**10.16.1.** when a reference is made in this Agreement to a Section, Schedule or Exhibit, such reference is to a Section of, or a Schedule or Exhibit to, this Agreement unless otherwise indicated;

**10.16.2.** whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

**10.16.3.** the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

**10.16.4.** the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

**10.16.5.** any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

**10.16.6.** any use of "it" or formatives thereof contained in this Agreement shall be construed to mean his or its, as applicable;

**10.16.7.** all references to "$" or "dollars" shall refer to the currency United States dollars;

**10.16.8.** references to a person are also to its permitted heirs, successors and assigns;

**10.16.9.** the use of "or" is not intended to be exclusive unless expressly indicated otherwise; and

**10.16.10.** all Schedules attached hereto are incorporated herein and expressly made a part of this Agreement as though completely set forth herein. All references to this Agreement herein or in any of the Schedules hereto shall be deemed to refer to this entire Agreement, including all such Schedules; provided, however, that information furnished in any particular Schedule shall be deemed to be included in another Schedule if a specific cross-reference is contained therein.

[Signature Page Follows]

16

IN WITNESS WHEREOF, the Parties hereto have duly executed this 363 Sale Asset Purchase Agreement as of the date first written above.

**SELLER**

FRED J. DERY, Chapter 7 Trustee for the bankruptcy estate of Lightning Technologies, Inc.

By: _Fred J. Dery_

Name: Fred J. Dery

Title:   Chapter 7 Trustee for the estate of Lightning Technologies, Inc.

Acceptance Date: _____3/4/021_____

**BUYER**

**Palltronics, Inc.**, a Michigan corporation

By: _____

Name:   Damian Kassab

Title:   President

IN WITNESS WHEREOF, the Parties hereto have duly executed this 363 Sale Asset Purchase Agreement as of the date first written above.

**SELLER**

FRED J. DERY, Chapter 7 Trustee for the bankruptcy estate of Lightning Technologies, Inc.

By: _____
Name: Fred J. Dery
Title:   Chapter 7 Trustee for the estate of Lightning Technologies, Inc.


Acceptance Date: _____


**BUYER**

**Palltronics, Inc.**, a Michigan corporation


By: _____
Name:  Damian Kassab
Title:   President

*Signature Page*
*363 Sale Asset Purchase Agreement*

**<u>SCHEDULE 2.1.1</u>**
**Certain General Intangibles and other UCC Collateral**

Contracts set forth on Schedule 2.1.3.

**SCHEDULE 2.1.2(a)**
**Equipment**

| Vendor | Description |
|---|---|
| Multiple, Crown | various racks and shelving in all plants (3) |
| Atlas Copco Compressed Air System | 2 air compressors installed (Oxford) <br> Model GA37VSD+FF SN# API831-290 <br> Model GA37VSD+FF SN# API831-320 |
| Fanuc America Corporation | M20iB / 25 Robot & Servo Table  SN# F173835 with controller |
| Fanuc America Corporation | R2000iC / 210F Robot SN# R16X02138 with controller |
| Fanuc America Corporation | 4 - R2000 Robots <br> R2000iB / 165F Robot SN# R07Z06871 with controller <br> R2000iB / 210F Robot SN# R08306031 with controller <br> R2000iB / 210F Robot SN# R08701557 with controller <br> R2000iB / 210F Robot SN# R07Z06904 with controller |
| Deco Tools | Robot Pedestal, Fence Kit, Gun Bracket, Servo Table Tooling, Spray Gun Bracket |
| North American Processing | PMC 25, 3HP, 220V Spray Machine |
| North American Processing | Gun, AP,AR4242, Auto & Fusion Round Spray Gun  (2 Total) |
| North American Processing | Husky 1050 Diaphragm Pump, 1050A SS/SS/PT/A Pump    (2) Total |
| Fluid Transfer Systems | Pump, 1050A, SS/SS/PT/A (2) & Pump, Maple 30 Adapters (1) (3 Total) |
| Fluid Transfer Systems | Poly Tote Transfer System |
| Ultimate Linings, Ltd. | HFR-Glue Machine and PR70 Meter Mixer |
| Ultimate Linings, Ltd. | Gun P2 Automatic 24x636 PG-24X636 (2 Total) & Fluid Manifold, Kit Accy Frt End, Mixing Chamber |
| Ultimate Linings, Ltd. | HFR-GSM Machines (5 units) - HFRB-14ALALCCM <br> Chemical Metering Equipment <br> SN #UC0569-F17B-N102, #UC0626-B19B-N104, #UC0637-D19B-N101, #UC0649-F19B-N101, #UC0649-F19B-N102 |
| Triton Automation Group | Robotic Spray Booth Load System |
| Triton Automation Group | Robotic Spray Load System; Conveyance, Wall Window, Light Screen & Guarding |
| Triton Automation Group | Assembly Fixture (2) |
| Triton Automation Group | Pooling Pallet Manual Assembly Trunnion Fixture |
| Triton Automation Group | Robotic CNC Tending System |

| Vendor | Description |
|---|---|
| Air and Liquid Systems Inc. | Spray Booth Tank (Wetted) with Palin system |
| Dustpipe | One FAS-300 Series Central Outside Dust Collection System  SN #FAS-300-MI-102017 |
| EMC | Semi Automated Spray Cell Loading System |
| EMC | Robot Riser (wall mount) in use |
| Tennant | T16 Power Scrubber, Electric Rider (Xcelsior Location) 2016 SN# 26903 with charger |
| Tennant | T16 Power Scrubber, Electric Rider (Silverbell Location) 2017 SN# 27422 with charger |
| Crown Lift Trucks | 3 Manual Pallet Jack Lift |
| Crown Lift Trucks | 3 Forklift WP-3035-45 Walkie Pallet Truck (Silverbell/Oxford) SN #7A297447 (other serial numbers unknown) |
| Crown Lift Trucks | Upright Frames, Long Beams & Wide Decking |
| Crown Lift Trucks | 1 unit leased 7-1-2016 (serial number unknown)<br>1 unit leased 7-1-2016 (serial number unknown)<br>10 units leased 11-15-2017.<br>      6 units of model SC5245-40<br>     4 units of model FC5245-50<br>Serial numbers #10047544, #10047545, #10047546, #10048641, #10048642 and #10048643 these are for the SC models.<br>Serial numbers #10048944, #10048945, #10048946 and #10051857 for the FC models |
| Jaantek | EOAT- Manifold Bracket (2) |
| JKL Machinery | Busellato Jet Optima RT21WWD CNC Machining Center Gantry Style Router SN# AH-119150 |
| JKL Machinery | Dustek C1000 3 Bag Dust Collection System SN #C1000-15-110 |
| JKL Machinery | Striebig Compact Vertical Panel Saw SN #45656 |
| Mechanical Contractors | Booth Floor Modifications |
| Leoni | Dress Package Lower and Upper Umbilical (2) |
| Air Technologies | Vacuum Pump GVS A |
| TBD | Sewage pumps |
| TSC | Sludge pump |
| Stiles Machinery Inc. | 2 - Homag Vantech 510 V7 POPT (M/S # 41934 & 42063)<br>SN #0-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 and #0-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<br>CNC Machining Center Gantry Style Router |

| Vendor | Description |
|---|---|
| Stiles Machinery Inc. | 4- Homag Vantech 512 V7 PO PT (M/S # 40932, 40933, 41082, & 41083) SN #0-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, #0-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, #0-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 and #0-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<br>CNC Machining Center Gantry Style Router |
| Stiles Machinery Inc. | Down payment for 2 Homag CNC (50% of the overall price) |
| Triton Automation Group | down payment for CNC handling automation |
| Crown Equipment | 7 Douglas Legacy Hi Lo batteries, 8 charger model F55-mp330-5, magnetic battery handling |
| Jet Power Belt Sander | belt sander for mudded legs   708447 |
| Atlas Copco Compressed Air System | 2 - units GA37VSD (Silverbell- Air Compressors)<br>Model GA37VSD+FF SN# API833-714<br>Model GA37VSD+FF SN# API833-758 |
| Atlas Copco Compressed Air System | 1 – Air Compressor unit (located at Thomas Road)<br>Model GA15FF SN# WUX581583 |
| BBG | Manual pallet assembly fixture |
| various suppliers | pallet life cycle test fixture |
| various suppliers | hand tools (other than Snap-On-Tools listed below) |
| N/A | Petty cash |
| various suppliers | All art, sports memorabilia, pictures, etc. |
| various suppliers | All office supplies including paper, pens, etc. |
| various suppliers | All Furniture in 8 offices |
| various suppliers | All documents and files in 8 offices |
| various suppliers | All Furniture and technology devices in two conferences (including A/V equipment and four 65-inch Samsung LCDs) |
| various suppliers | Computers, servers (and other related computer/systems items), cell phones, printers, tablets, etc. |
| various suppliers | All uniforms and Lightning Technology logo shirts |
| various suppliers | All items stored in storage room between Roland and Jeffrey Owen's office – including company purchased high-end liquor worth approximately $20,000 at time of purchase |
| various suppliers | All Furniture in employee two (2) breakrooms (including kitchen appliances and dishware) – warehouse and corporate offices |
| Snap-On-Tools | 2 blue 4x6x2.5 tool chests each containing full sets of Snap-On-Tools hand tools |
| various suppliers | Hydro cyclone System |
| various suppliers | All branded pallets in large display room including various substrates (including specialty pallets) |

| Vendor | Description |
|---|---|
| various suppliers | All Furniture and fixtures in R&D engineering room in plant (including the SnapOn Tool Chest, molds, hydraulic equipment, samples, etc.) |
| Service Tectonics | Industrial Pad Printer and Work Station SN #P120613416 |
| Various suppliers | Entire contents of Oxford annex (All equipment, tooling, and suppliers) |
| various suppliers | All spray booth equipment, robotics, chemicals, and related supplies |
| various suppliers | All tooling in plant including charging station for jitneys, gravity pallet text fixture, etc. |
| various suppliers | All furniture, pallet fixtures, and displays in Lobby |
| Jaantek | Aluminum Wire Harness Mold, Manifold and Tooling |

For the sake of clarification, the entire custom spray booth located at the Oxford location, including all tools related thereto, is part of the Equipment.

**Schedule 2.1.2(b)**
**Vehicles**
**(Collateral Evidenced by Documents)**

| Make and Model | State & Plate No. | Description VIN No. |
|---|---|---|
| Lamar 2018 FG-02402C | MI- D754381 | 42 Ft 5th Wheel Retractable Covered Trailer VIN #5RVFG4028JP055115 |
| Ford – 2017 F350 | MI-DTA3532 | Diesel Dually 4 Door Pick Up VIN #1FT8W3DT8HEE24600 |

**<u>SCHEDULE 2.1.3</u>**
**Assumed Contracts**

1. Supply Agreement dated as of February 27, 2019, amended July 22, 2019 by the Amendment to Supply Agreement, by and among Lightning Technologies, LLC and Ultimate Linings, LLC

2. License and Supply Agreement dated as of April 15, 2019 by and among Lightning Technologies, LLC and Microban International, Ltd.

## SCHEDULE 2.1.4
## Intellectual Property

All of the Debtor's and bankruptcy estate's entire right, title and interest in, to and under the following (all of which shall collectively be called the "Intellectual Property"):

(a)     Any and all copyright rights, copyright applications, copyright registrations and like protections in each work or authorship and derivative work thereof, whether published or unpublished and whether or not the same also constitutes a trade secret, now or hereafter existing, created, acquired or held.

(b)     Any and all trade secrets or similar protection for confidential information (including proprietary business processes, knowledge, ideas, research and development, know-how, data or any other information or technique relating to the Business, any and all formula, pattern, device, schematics, technology, technical data, designs, drawings, flowcharts, block diagrams, specifications, whether or not patentable, or compilation of information that is used, usable or capable of being used in the Business; including information relating to the formulation of chemical compounds and their application methods or processes, material handling, coating and spray technology and techniques, pooling,  and pallet manufacturing and design (including the track and trace and RFID technology embedded therein and related software)); and any and all intellectual property rights in computer software and computer software products now or hereafter existing, created, acquired or held.

(c)     Any and all design rights which may be available now or hereafter existing, created, acquired or held.

(d)     All patents, patent applications and like protections including without limitation improvements, divisions, continuations, renewals, reissues, extensions and continuations-in-part of the same, including without limitation the patents and patent applications set forth below (collectively, the "Patents"):

| App. No. / Reg. No. of Pub. No. | Country | Title | Inventors | Current Assignee |
|---|---|---|---|---|
| 62/624,832 | US | WIRE BUNDLE COATING ASSEMBLY AND METHOD | Gabel, Jacob | Lightning Technologies, LLC |
| 16/265579 | US | WIRE BUNDLE COATING ASSEMBLY AND METHOD | Gabel, Jacob | Lightning Technologies, LLC |
| D869813 S | US | PALLET | Heiberger, Roland B. | Lightning Technologies, LLC |
| 201830420437X | China | PALLET | Heiberger, Roland B. | Lightning Technologies, LLC |
| 2018-016779 JPD1620188 | Japan | PALETTE | Heiberger, Roland B. | Lightning Technologies, LLC |
| 30-2018-0035495 | Korea | PALLET | Heiberger, Roland B. | Lightning Technologies, LLC |
| 005516135-0001 | EU | PALLETS | Heiberger, Roland B. | Lightning Technologies, LLC |

(e)  Any trademark and servicemark rights, whether registered or not, applications to register and registrations of the same and like protections, and the entire goodwill of the business of Grantor connected with and symbolized by such trademarks, including without limitation those set forth below (collectively, the "Trademarks"):

| App. No. /Reg. No. | Country | Mark | Goods/Services | Current Owner | Registration Date |
|---|---|---|---|---|---|
| 87479216 5698113 | US | EXOBOND | Class 2: Protective coatings comprised of thermoset plastic, applied by spray, cast, or overmold process, for use on cardboard, wood, plastic, multicellular expanded synthetic resins, sponge, and concrete surfaces | Lightning Technologies, LLC | March 12, 2019 |
| 87825348 | US | PALLETCHAIN | Class 9: software for logistics and supply chain management allowing exchange of data, analytics via blockchain technology in the field of pallets; computer software, namely, operating and management software for pallet inventory management systems and asset management systems incorporating active RFID technology | Lightning Technologies, LLC | N/A |
| 87825294 | US | CREATE THE ONE THING THAT CHANGES EVERYTHING | Class 40: Consulting services pertaining to the material transformation of the surface of industrial and commercial products by application of material coatings comprised of thermo set plastic; Application of coatings for others, namely, material transformation of the surface of industrial and commercial products by application of material coatings comprised of thermo set plastic by spray, cast, or over mold process | Lightning Technologies, LLC | N/A |

| App. No. /Reg. No. | Country | Mark | Goods/Services | Current Owner | Registration Date |
|---|---|---|---|---|---|
| 87479224 | US | LIGHTNING COATINGS | Class 2: Protective coatings comprised of thermoset plastic, applied by spray, cast, or overmold process, for use on cardboard, wood, plastic, multicellular expanded synthetic resins, sponge, and concrete surfaces<br>Class 40: Consulting services pertaining to the material transformation of the surface of industrial and commercial products by application of material coatings comprised of thermo set plastic; Application of coatings for others, namely, material transformation of the surface of industrial and commercial products by application of material coatings comprised of thermo set plastic by spray, cast, or over mold process | Lightning Technologies, LLC | N/A |

      (f)      Any website, domain name, and customer portal.

      (g)      Any and all claims for damages by way of past, present and future infringement of any of the rights included above, with the right, but not the obligation, to sue for and collect such damages for said use or infringement of the intellectual property rights identified above, including in addition all rights to enforce, but without obligation to do so, any and all confidentiality, non-disclosure and non-compete provisions and/or agreements.

      (h)      All licenses or other rights to use any of the Copyrights, Patents or Trademarks, and all license fees and royalties arising from such use to the extent permitted by such license or rights, including without limitation, those rights granted under Contracts set forth on Schedule 2.13.

      (i)      All amendments, renewals and extensions of any of the Copyrights, Trademarks or Patents.

      (j)      All proceeds and products of the foregoing, including without limitation all payments under insurance or any indemnity or warranty payable in respect of any of the foregoing.

# SCHEDULE 2.1.5
## Inventory

| Lake Orion Locations 315 West Silverbell Road, (Suite #190) Lake Orion, MI 48359 325 West Silverbell Road, (Suite #270) Lake Orion, MI 48359 | |
| --- | --- |
| **Part or Description** | **Units** |
| Production Ready Corner's | 1,932 |
| Corner Pieces | 3,456 |
| 1525 x1525x 12 plywood | 54 |
| Bad not cut corners | 448 |
| Bad wood legs | 2,196 |
| Unfinished wood plates by assembly | 68 |
| Production Oblong | 868 |
| Type 3 Oblong (production) | 731 |
| Type 3 corner Production | 570 |
| Work-in-progress legs | 144 |
| work-in-progress pallets assembled | 12 |
| work-in-porgress wood legs | 936 |
| 1525 x 1525 x 12 wood pallets | 1,947 |
| Baltica #29 Phase 2 wood plates | 1,980 |
| Baltica #29 Phase 2 wood plates | 8,118 |
| Bad work-in-progress drilled pieces | 1,540 |
| 1525 x 1525 x 12 wood pallets | 33 |
| Bad work-in-progress drilled pieces | 1,430 |
| 22mm x 4 x 8 plywood | 14,718 |
| partially finished pallet tops | 2,350 |
| partially finished pallet bottoms | 3,100 |
| partially finished pallet tops | 150 |
| partially finished pallet tops | 400 |

| **Lake Orion Locations**<br>315 West Silverbell Road, (Suite #190)<br>Lake Orion, MI 48359<br>325 West Silverbell Road, (Suite #270)<br>Lake Orion, MI 48359 | |
|---|---|
| **Part or Description** | **Units** |
| work-in-progress tops (cut) | 65 |
| work-in-progress bottoms (cut) | 73 |
| put together pallets (not coated) | 2,500 |
| Birch D3-E3 | 45,000 |
| Finished Pallets (coated) | 60 |
| put together pallets (not coated) | 2,518 |
| cut pallet tops (not coated) | 200 |
| Fat drops (48.25 x 19.375 x 12mm) | 25,600 |
| window drops | 27,600 |
| Skinny drops | 11,600 |
| Pepsi Legs | 1,197 |
| Pepsi Legs Oblong | 1,295 |
| Production Butcher Block Good Oblong | 1,080 |
| Production Butcher Oblong | 1,080 |
| Type 3 Vertical Oblong Production | 1,080 |
| Butcher Block Good Oblong Production | 1,080 |
| Type 1 Butcher Corner | 1,080 |
| Good Butcher Corner | 1,080 |
| Butcher Block Good Corner Production | 1,080 |
| Butcher Block Good Oblong Production | 4,320 |
| Type 1 Butcher Oblong Production | 3,240 |
| Corner | 4,320 |
| Bad Corner (Vertical) | 1,080 |
| Type 1 Bad Corner | 2,160 |
| Bad Butcher Corner | 2,160 |

| **Lake Orion Locations**<br>315 West Silverbell Road, (Suite #190)<br>Lake Orion, MI 48359<br>325 West Silverbell Road, (Suite #270)<br>Lake Orion, MI 48359 | |
| --- | --- |
| **Part or Description** | **Units** |
| Butcher Block Bad Corner | 1,080 |
| Type 1 Bad Butcher Corner | 3,240 |
| Butcher Block Bad Corner | 1,080 |
| Type 1 Bad Oblong | 1,080 |
| Bad Butch Oblong | 1,080 |
| Type 1 Bad Oblong | 1,080 |
| Butcher Block Type 1 Bad Oblong | 3,240 |
| Bad Vertical Corner | 580 |
| Bad Butcher Corner | 657 |
| Type 3 Bad Vertical Oblong | 748 |
| Type 2 Bad Corner | 1,080 |
| Bad Butcher Block Corner | 1,080 |
| Scrap Corner Legs | 165 |
| Bad Butcher Corner | 115 |
| Scrap Oblong | 170 |
| Type 2 Oblong Pending | 665 |
| Scrap Legs Unrepairable | 704 |
| Fresh Cut Plywood | 568 |
| WIP Complete Bad Lim Hole | 70 |
| Gen 2 Pallet Core | 3 |
| All scanning technology for pallet chips (including all surplus computer chips for pallet assembly) | |
| Annex Receiving dock area – pallets, wood, and Hilo | |
| All scrap wood (offal) generated from CNC machines) | |

37245918.5/159982.00001

| **Lake Orion Locations**<br>315 West Silverbell Road, (Suite #190)<br>Lake Orion, MI 48359<br>325 West Silverbell Road, (Suite #270)<br>Lake Orion, MI 48359 | |
| --- | --- |
| **Part or Description** | **Units** |
| Computer room items (including system to control CNC machines and any documentation for CNC machines) | |
| All items in office used as a storage room | |
| All office furniture and files in two offices | |
| Cleaning storage room items (mops, snow shovels, etc.) | |
| Employee breakroom items (employee uniforms, TV's, and appliances) | |
| Boring Drill (used to mill center pallet leg computer chip) | 1 |
| All CNC machines and associated tooling, computers, and robotics) | |
| Pallet assembly stations (including related equipment and supplies) | |
| Supplies, glue guns, UV systems to cure pallets, racking system, adhesives, chemicals, etc. | |
| Crowne charging stations | |
| Dust collections systems (including piping, fire suppression, hoppers, etc) | 2 |
| Findlay Tooling – Pallet Washers | 2 |

| **Oxford Location**<br>2171 Xcelsior Drive,<br>Oxford, MI 48371 | |
| --- | --- |
| **Part or Description** | **Units** |
| Finished Pallets | 5,000 |

## SCHEDULE 2.1.6
## Equity Interests

| Holder | Issuer | Shares/Units | Percentage of Ownership |
|---|---|---|---|
| Lightning Technologies Inc., a Delaware corporation | Structural Coatings and Products LLC, a Michigan limited liability company | N/A | 35% |
| Lightning Technologies Inc., a Delaware corporation | Airofy, LLC, a Michigan limited liability company | N/A | 100% |

## SCHEDULE 8.3.2.5

*Solyco, LLC*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-182243-CK.

*Paul Shamo*, Plaintiff, *v. Lightning Technologies, Inc., Jeffrey Owen and Damian Kassab*, Defendants. Oakland County Circuit Court, Case No. 2020-181753-CK.

*Gevork G. Khachatrian a/k/a/ Greg Khachatrain*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-182248-CK.

*Ken Cauley*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-182254-CK.

*Michael McClear*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-182244-CK.

*Blake George,* Plaintiff, *v. Lightning Technologies, Inc., Jeffrey Owen and Damian Kassab*, Defendants. Oakland County Circuit Court, Case No. 2020-182253-CK.

*Dems Assoc.*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-181259-CB.

*Jeffrey Torrice*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2020-184640-CK.

*Tom (TRPKO) Dimovski*, Plaintiff, *v. Lightning Technologies, Inc.*, Defendant. Oakland County Circuit Court, Case No. 2021-185579-CK

# EXHIBIT A

# Sale Procedures

### *In re Lightning Technologies, Inc.* **(Bankr. E.D. Mich. Case No. 21-41019)**

The duly appointed and acting Chapter 7 trustee ("Trustee") for the bankruptcy estate of Lightning Technologies, Inc. (the "Debtor") has determined that entering into the Section 363 Asset Purchase Agreement ("APA")[1] with, and thereby accepting an initial bid for the Assets described in and subject to the APA ("Stalking Horse Bid") from, Palltronics, Inc. ("Buyer"), subject to higher and better offers to be solicited and considered pursuant to the Sale Procedures described herein, will enable the Trustee to obtain the highest and best price for the Assets consistent with his duties under Section 704(a)(1) of the Bankruptcy Code to collect and reduce to money the property of the Debtor's bankruptcy estate and close the estate as expeditiously as is compatible with the best interests of parties in interest.

1.     Notice of Auction and Sale. Within seven (7) days after entry of an order (the "Sale Procedures Order") approving these Sale Procedures, the Trustee will provide notification of the Sale Procedures to the following parties ("Notice Parties") in the form and manner described below:

    (a)     Trustee will serve the Sale Procedures Order and the APA, by mail, postage prepaid on:

        (i)     The Office of the United States Trustee;

        (ii)     All parties that have requested notice in this case pursuant to Bankruptcy Rule 2002;

        (iii)     All entities that have executed a nondisclosure agreement in form and substance acceptable to the Trustee in connection with the proposed sale of the Assets;

        (iv)     Buyer; and

        (v)     All entities known by the Trustee to have asserted a lien, claim, or encumbrance on or against any of the Assets.

    (b)     Trustee will serve a notice of the Sale Procedures Order and the Notice of Auction and Sale, by mail, postage prepaid, in the form of **Attachment A** (with the blanks filled in), on the creditor matrix.

2.     Due Diligence. Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from the Trustee. Interested parties must execute a form nondisclosure agreement acceptable to the Trustee ("NDA") before any due diligence materials will be provided. The NDA will include a provision that any copies made or otherwise obtained

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Section 363 Asset Purchase Agreement dated March 4, 2021.

of any Intellectual Property will be returned to the Trustee and any electronically stored information will be permanently deleted if the counterparty to the NDA is not the Winning Bidder or does not Close the Winning Bid. All due diligence requests should be directed to Scott Eisenberg, Capstone Headwaters, 255 E. Brown St., Suite 120, phone 248.633.2150; email: seisenberg@capstoneheadwaters.com. All due diligence shall be completed by the Auction.

3.    Stalking Horse Bid.

(a)    The aggregate consideration for the Assets is cash payable at Closing (as defined below) in the total amount of $5,000,000.00, inclusive of the Deposit Amount (the "Purchase Price"). In addition to the Purchase Price, all cure costs in connection with Assumed Contracts will be paid by the Buyer.

(b)    Subject to the approval of the Bankruptcy Court, if (i) the Buyer is not in material breach of any provision of the APA and (ii) a sale pursuant to section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization or otherwise of all or substantially all of the Assets in a single transaction or a series of transactions to one or more persons (a "Third Party") other than the Buyer or an affiliate of the Buyer (a "Third-Party Sale"), whether at an Auction, pursuant to a plan of reorganization or otherwise, is consummated, then the Buyer shall be entitled to receive, without further order of the Bankruptcy Court, from the proceeds of the Third-Party Sale and payable in full at such Closing, an amount in cash equal to the sum of (i) $150,000 (USD), plus (ii) the amount of the reasonable, documented fees and expenses paid by the Buyer with respect to the transactions contemplated hereby, including attorneys' fees and expenses and those of other advisors and consultants in an amount not to exceed the sum of $75,000 (USD) ((i) and (ii) collectively, the "Termination Fee"). Such Termination Fee shall be made by wire transfer of immediately available funds to an account designated by the Buyer from the proceeds of the applicable Third-Party Sale at Closing.

4.    Qualified Bidders.

(a)    Additional bidders must be Qualified Bidders (as defined below) to participate at the Auction (as defined below).

(b)    A "Qualified Bidder" is any person or entity that submits a Qualified Bid (as defined below) in accordance with these Sale Procedures. Buyer is and shall be treated as a Qualified Bidder for all purposes.

(c)    A "Qualified Bid" is a written offer to purchase the Assets from a Qualified Bidder that complies with all of the following requirements:

(i)    Deadline to Submit Qualified Bids: Any person or entity that wishes to submit a Qualified Bid must submit its bid so that it is actually

received by the Trustee's counsel no later than 5:00 p.m. prevailing Eastern Time on May 3, 2021 (the "Qualified Bid Deadline").

(ii) Where to Submit Bids: Bids must be submitted by electronic mail to the Counsel for the Trustee and the Office of the United States Trustee and must include an address, telephone number and electronic mail address at which the entity submitting the bid may be contacted:

> Counsel for the Trustee
> Erika D. Hart
> THE TAUNT LAW FIRM
> 700 E. Maple Road, Birmingham, MI 48009
> Office: (248) 644.7800
> ehart@tauntlaw.com

> Office of the United States Trustee
> c/o Sean M. Cowley
> 211 West Fort Street, Suite 700
> Detroit, MI 48226
> Sean.cowley@usdoj.gov

The Trustee shall provide Buyer with a complete copy of any Qualified Bid it receives, by electronic mail, promptly upon receipt, to the following email addresses:

> Counsel for Buyer
> Miller, Canfield, Paddock and Stone, PLC
> Steven A. Roach
> roach@millercanfield.com
> Marc N. Swanson
> swansonm@millercanfield.com
> 150 West Jefferson, Suite 2500
> Detroit, MI 48226

(iii) Content of Qualified Bids: The Stalking Horse Bid is deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items ("Bid Package"):

(1) An unconditional cash offer for the Assets. No credit bids are permitted.

(2) An executed NDA in form and substance reasonably satisfactory to the Trustee

(3) A cash purchase price that is not less than $5,325,000.

- 3 -

(4)     A signed asset purchase agreement that contains, with the exception of the cash purchase price in paragraph (3) above, terms substantially similar to the terms and conditions contained in the APA. Any changes to the APA shall be marked against the APA in a separate document.

(5)     A designation of the executory contracts and unexpired leases that such Qualified Bidder desires to be assumed and assigned to such Qualified Bidder.  A potential Qualified Bidder will make a good faith showing of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the potential Qualified Bidder.  In addition to the cash purchase requirement identified in (3) above, all cure costs will be paid by the Qualified Bidder.

(6)     A disclosure of the identity of each person or entity that will be bidding for the Assets.

(7)     A binding and irrevocable offer.

(8)     The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Trustee of the financial ability to consummate the proposed transaction.

(9)     A board resolution or written evidence of some type that demonstrates to the reasonable satisfaction of the Trustee that the bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person or persons authorized to bid at the Auction on behalf of such entity is authorized to do so.

(10)   A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by the Trustee, which Deposit is actually received on or before the Qualified Bid Deadline and in an amount of not less than 5% of the cash purchase price component of the Qualified Bid (exclusive of cure costs to be paid by the Qualified Bidder).

(11)   The bid must not contain any financial or due diligence contingencies.

(12)   The agreement of the person or entity making the Qualified Bid to serve as a Back-Up Bidder providing a Back-Up Bid as defined in and pursuant to the terms of Sections 7(f) and 8 of these Sale Procedures.

- 4 -

The Trustee reserves the right to work with any potential bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid.

5.    "As Is, Where Is"; No Reliance by Bidders. All entities seeking to be designated as Qualified Bidders shall be conclusively presumed to represent, warrant, and acknowledge as follows:

(a)    The Assets shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, its agent, or the bankruptcy estate, other than as contained in the APA or the asset purchase agreement submitted by the Qualified Bidder.

(b)    All of Debtor's right, title, and interest in and to the Assets pursuant to the terms of the Sale Order shall be sold free and clear of all liens, claims, encumbrances, restrictions, and other interests of any kind or nature thereon to the full extent authorized under Bankruptcy Code §§ 363(f), 365 and 105, with the same to attach to the net proceeds of the sale of the Assets according to their priority immediately prior to Closing of the sale of the Assets.

(c)    Each Qualified Bidder understands and is bound by the terms of these Sale Procedures, and any order approving these Sale Procedures.

(d)    Each Qualified Bidder has had an opportunity to conduct reasonable due diligence, if requested, and it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or Assets in making its bid and has not relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets except as expressly stated in the Sale Procedures Order or in an executed asset purchase agreement, or the accuracy or completeness of any information provided in connection with the Assets, the Sale Procedures Order, or the Auction.

(e)    Each Qualified Bidder has not colluded with any party with respect to its bid and has submitted its bid in good faith and not by any means forbidden by law. Nothing herein shall be construed to prohibit disclosed joint bids, however.

6.    Designation of Qualified Bids.

(a)    On or before May 5, 2021, at 5:00 p.m. prevailing Eastern Time, Trustee will designate those submitted bids, if any, that are Qualified Bids. The Trustee may determine at the Auction that a previously Qualified Bidder has altered its bid in a way that causes it no longer to be a Qualified Bidder.

- 5 -

<blockquote>(b) If no Qualified Bids, other than the Stalking Horse Bid, are received by the Qualified Bid Deadline, the Trustee will seek Bankruptcy Court approval of a sale of the Assets to Buyer pursuant to the APA.</blockquote>

7. <u>Auction</u>. If one or more Qualified Bids is received (in addition to the Stalking Horse Bid) by the Qualified Bid Deadline, then an auction between or among the Buyer and those persons and entities submitting Qualified Bids will be conducted remotely via zoom on May 6, 2021, commencing at 12:00 p.m. prevailing Eastern Time ("<u>Auction</u>").

<blockquote>(a) Only representatives of the Trustee, the Buyer, and any other Qualified Bidder will be entitled to attend and participate in the Auction.</blockquote>

<blockquote>(b) Trustee may announce at the Auction additional procedural, non-material substantive rules as determined in good faith in the exercise of his business judgment for bidding and other procedures that are reasonable under the circumstances (<i>e.g.</i>, regarding the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Sale Procedures Order, any order of the Court entered in connection herewith, the APA, or the Bankruptcy Code.</blockquote>

<blockquote>(c) The Trustee shall designate at the start of the Auction the Qualified Bid determined by the Trustee in the exercise of his business judgment to be the highest or otherwise best bid as the initial bid for the Assets ("<u>Initial Qualified Bid</u>").</blockquote>

<blockquote>(d) The first overbid above the Initial Qualified Bid (as determined by the amounts to be paid in clauses (3) and (5) of its Bid Package) and each subsequent overbid must be in the form of cash consideration and must be determined by the Trustee to be equal in value to the sum of $100,000.00 above the immediately preceding Initial Qualified Bid or subsequent overbid (if applicable).</blockquote>

<blockquote>(e) After each round of bidding, the Trustee will announce the identity of the Qualified Bidder deemed by Trustee at that point to have made the highest or otherwise best offer for the Assets.</blockquote>

<blockquote>(f) Promptly after the conclusion of the Auction, the Trustee will designate the highest or best Qualified Bid (taking into account all relevant factors, including, but not limited to, cash consideration, the terms and conditions of the proposed agreement, the aggregate value offered by the Qualified Bidder, the speed and certainty of consummation of a sale of the Assets to such Qualified Bidder), and the net proceeds that will be made available to the Debtor's bankruptcy estate upon a sale of the Assets (the "<u>Winning Bidder</u>") and shall designate the next highest or otherwise best Qualified Bid (the "<u>Back-Up Bid</u>") and the entity submitting the Back-Up Bid ("<u>Back-</u></blockquote>

37230787.10/159982.00001

Up Bidder"). The Trustee will file a notice with the Court immediately after the Auction setting forth the identity of the Winning Bidder.

(g)    At the conclusion of the Auction, the party making the highest or otherwise best bid for the Assets shall be designated the Winning Bidder and the party submitting the second highest or otherwise best bid shall be designated the Back-Up Bidder. If the Winning Bid is approved by the Court and the Winning Bidder fails to close, the Trustee shall be authorized, but not directed, to close on the Back-Up Bid without further order of the Court.

8.    Presentation of Winning Bidder and Back-Up Bid; Acceptance of Qualified Bid Only Upon Court Approval. A hearing shall occur as soon as practicable after the Auction given the schedule of the Court, at which hearing the Trustee shall seek entry of an order approving the sale of the Assets to the Winning Bidder ("Sale Order") and that is effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h). The Sale Order shall provide that, if the transaction with the Winning Bidder for sale of the Assets fails to close because of a breach or failure to perform on the part of the Winning Bidder, the Trustee may consummate a sale of the Assets pursuant to the Back-Up Bid without further order of the Court. If an Auction is conducted, and the Buyer is not the Winning Bidder, the Buyer shall, if its bid is determined to be the next highest bid, serve as the Back-Up Bidder and keep the Buyer's bid to consummate the transactions contemplated by the APA on the terms and conditions set forth in the APA in addition to any increased bid amount that the Back-Up Bidder may make at the Auction open and irrevocable until the date which is 30 days after the date of the Auction (the "Buyer Outside Back-up Date"). The Back-Up Bid of a Back-Up Bidder shall also remain open and irrevocable until the Buyer Outside Back-Up Date. A Qualified Bid, including any Winning Bid or Back-Up Bid, shall be deemed accepted by the Trustee only when that Qualified Bid has been approved by the Court and the Sale Order entered by the Court.

9.    Treatment of Deposits.

(a)    Any Qualified Bidder that submitted a Deposit and that is not designated at the Auction as having submitted the Winning Bid or the Back-Up Bid shall have its Deposit returned to it no later than two (2) business days after the designation of the Winning Bid.

(b)    If Buyer is the Back-Up Bidder, its Deposit shall be returned to it within two (2) business days after the Buyer Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid.

(c)    If a Qualified Bidder other than Buyer is the Back-Up Bidder, its Deposit shall be returned to it within two (2) business days after the Buyer Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid.

(d)    Notwithstanding anything to the contrary in any agreement between a Qualified Bidder and Trustee or any other entity, if such Qualified Bidder fails to consummate a transaction approved pursuant to the Sale Order because of a breach or failure to perform on the part of such Qualified

37230787.10/159982.00001

Bidder, such Qualified Bidder shall not be entitled to the return of its Deposit and the Deposit shall be irrevocably forfeited to the Debtor's estate. Such Deposit shall be deemed property of Debtor's estate and such Deposit shall be retained by Debtor's estate in full satisfaction of any damages due to Debtor's estate as a result of such Qualified Bidder's failure to consummate the transaction. Such Deposit shall not be subject to any security interest or other lien.

10.    <u>Closing</u>.  The closing of the transactions contemplated by the APA or the Winning Bid, as applicable ("<u>Closing</u>"), shall take place remotely via electronic exchange of documents, on the date ("<u>Closing Date</u>") that is mutually agreed to by the Parties, but in no event shall be later than 10 days after the entry of the Sale Order.

11.    <u>Sale Hearing</u>.  A hearing to consider entry of the Sale Order will be held before the Court on a date to be set at the hearing on the entry of the Sale Procedures Order.

37230787.10/159982.00001

**Attachment A – Notice**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 21-41019-tjt |
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

## NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on March [**], 2021, the Trustee filed his motion ("Sale Motion") for entry of orders pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (a) approving the Sale Procedures (as defined below) in connection with the sale ("Sale") of substantially all of the Debtor's assets ("Assets"); (b) authorizing and scheduling an auction, if other bids are received ("Auction"), in connection with the Sale; (c) approving a termination fee and certain other protections to the Trustee's current stalking horse bidder, Palltronics, Inc. ("Buyer"), under the Trustee's stalking horse purchase and sale agreement ("APA"); (d) approving cure procedures relating to the assumption and assignment of certain executory contracts and unexpired leases ("Assumed and Assigned Agreements") in connection with the Sale; (e) approving the form and manner of notices; (f) setting a hearing ("Sale Hearing") to take place after the Auction (if an Auction is necessary), to approve the Sale and the assumption and assignment of the Assumed and Assigned Agreements. By Order dated [***], 2021, the Bankruptcy Court entered an order ("Sale Procedures Order") approving the sale procedures as described therein ("Sale Procedures").

Any party that wishes to take part in the process and submit a bid for the Assets must comply with the Sale Procedures, including without limitation the following procedures. Only "Qualified Bidders" may participate in the bidding and Auction process. A "Qualified Bidder" is a potential bidder that has, no later than the bid deadline of May 3, 2021, at 5:00 p.m. prevailing Eastern Time ("Qualified Bid Deadline"), submitted a "Qualified Bid" by electronic mail to counsel to the Trustee, Erika D. Hart, 700 E. Maple Road, Birmingham, MI 48009, ehart@tauntlaw.com.

Subject to any other requirements established by the Court, an offer to purchase will only constitute a Qualified Bid if it contains the following items:

1.    An unconditional cash offer for the Assets. No credit bids are permitted.

2.    An executed nondisclosure agreement in form and substance reasonably satisfactory to the Trustee.

3.    A cash purchase price that is not less than $5,325,000.

4.      A signed asset purchase agreement that contains, with the exception of the cash purchase price in paragraph (3) above, terms substantially similar to the terms and conditions contained in the APA. Any changes to the APA shall be marked against the APA in a separate document.

5.      A designation of the executory contracts and unexpired leases that such Qualified Bidder desires to be assumed and assigned to such Qualified Bidder.  A potential Qualified Bidder will make a good faith showing of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the potential Qualified Bidder.  In addition to the cash purchase requirement identified in (3) above, all cure costs will be paid by the Qualified Bidder.

6.      A disclosure of the identity of each person or entity that will be bidding for the Assets.

7.      A binding and irrevocable offer.

8.      The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Trustee of the financial ability to consummate the proposed transaction.

9.      A board resolution or written evidence of some type that demonstrates to the reasonable satisfaction of the Trustee that the bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person or persons authorized to bid at the Auction on behalf of such entity is authorized to do so.

10.      A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by the Trustee, which Deposit is actually received on or before the Qualified Bid Deadline and in an amount of not less than 5% of the cash purchase price component of the Qualified Bid (exclusive of cure costs to be paid by the Qualified Bidder).

11.      The bid must not contain any financial or due diligence contingencies.

12.      The agreement of the person or entity making the Qualified Bid to serve as a Back-Up Bidder providing a Back-Up Bid as defined in and pursuant to the terms of Sections 7(f) and 8 of the Sale Procedures

In the event the Trustee receives a Qualified Bid in addition to the APA, the Trustee will, unless otherwise ordered by the Court, conduct the Auction with respect to the Assets.  The Auction will be conducted via zoom on May 6, 2021, commencing at 12:00 p.m. prevailing Eastern Time ("Auction").

If you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Sale Procedures Order and the Sale Procedures.  Such objections must be filed with the Bankruptcy Court and served on the Trustee's counsel so as to be received, on or before May 7,2021.  The hearing on whether to approve the Sale will take place on May 10, 2021, at __:__ _.m. in the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan,

- 2 -

at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226 ("Sale Hearing") or conducted by telephone, in the discretion of the Court. If the Sale Hearing is to be conducted by telephone, then at least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650.  If any party fails to timely file and serve an objection in accordance with the Sale Procedures Order, the Bankruptcy Court may disregard such objection.  The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale or the Trustee's assumption and assignment of the Assumed and Assigned Agreements or the consummation of the Sale and the performance of the APA.

Dated: March [***], 2021

THE TAUNT LAW FIRM

By:    /s/ Erika D. Hart
        Erika D. Hart (P67457)
        Dean R. Nelson (P 70818)
        Attorneys for Trustee
        700 E. Maple Rd., 2nd Floor
        Birmingham, MI 48009
        248.655.7800
        ehart@tauntlaw.com
        dnelson@tauntlaw.com

- 3 -

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| In re: | Case No. 21-41019-tjt |
|---|---|
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

## ORDER (I) ESTABLISHING SALE PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365, (III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, (IV) APPROVING THE FORM OF THE PURCHASE AND SALE AGREEMENT, INCLUDING THE TERMINATION FEE, AND (V) GRANTING RELATED RELIEF

This matter having come before the Court on the Motion for the entry of an Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, including the Termination Fee, and (V) Granting Related Relief ("Sale Motion")[1], filed by the Chapter 7 Trustee duly appointed and acting in this case ("Trustee"), which seeks entry of, among other things, this order ("Sale Procedures Order"); proper notice of the Sale Motion having been provided to all

---

[1] All capitalized terms used in this Sale Procedures Order but not defined herein shall have the meanings ascribed to them in the Sale Motion.

parties entitled thereto as required by applicable law, and no other or further notice being required; objections, if any, to the entry of this Sales Procedure Order having been withdrawn, resolved, or overruled; the Court finding that (a) it has jurisdiction to enter this Sale Procedures Order pursuant to 28 U.S.C. § 1334; and (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing to the Court that the relief granted by the Sale Procedures Order is in the best interest of Debtor, its estate, and its creditors; the Court being otherwise fully advised on the premises;

## NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Sale Motion is GRANTED, solely to the extent that it requests entry of this Sale Procedures Order and as provided herein. All objections to the entry of this Sale Procedures Order not settled, withdrawn, or otherwise resolved are overruled.

2. The APA is authorized, approved, duly executed, and binding to the extent necessary to carry out and implement the terms of this Order, and Trustee and Buyer are authorized to perform as required thereunder, subject to the Sale Procedures, the Sale Order and as set forth herein. No credit bids are permitted for the Assets.

3. The Trustee is authorized and directed to pay to the Buyer an amount equal to (i) $150,000, plus (ii) an expense reimbursement for the reasonable fees,

2

including professional fees of the Buyer, of up to $75,000 ((i) and (ii), collectively, the "Termination Fee") on the terms, and subject to the conditions, set forth in the Sale Procedures and the APA. The Termination Fee is hereby authorized and approved based on the substantial value the Stalking Horse Bid created for the bankruptcy estate and the exercise of the Trustee's business judgment.

4. Objections, if any, to the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order must: (a) be in writing; (b) conform to any applicable requirements of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any applicable local rules of procedure of this Court; (c) set forth the name of the objecting party and the nature of any claims or interests held by such party against or in Debtor's estate or property; (d) state with particularity the legal and factual bases for the objection and the specific grounds therefore; and (e) be filed with the Clerk of the Court, and served on the Chapter 7 Trustee's counsel so as to be received, on or before **May 7, 2021.**

5. Any person or entity that fails to make an objection in compliance with the requirements of paragraph 4 above shall be forever barred from asserting any objection to the entry of the Sale Order.

6. A hearing ("Sale Hearing") to consider the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order shall be held on **May 10, 2021 at [\*\*\*\*].**

3

7.     The Sale Procedures attached as **Exhibit 6A** to the Sale Motion are incorporated herein, are hereby approved, and shall apply to the sale of the Assets.

8.     The proposed assumption and assignment notice ("Assumption and Assignment Notice"), substantially in the form attached as **Exhibit 6B** to the Sale Motion, is hereby approved and deemed sufficient for all purposes, and no further notice shall be required.

9.     The following procedures are hereby approved and shall apply to the assumption and assignment by the Trustee of certain executory contracts and unexpired leases (the "Assumed and Assigned Agreements"):

(a)     By no later than seven (7) days after entry of the Sale Procedures Order, the Trustee will file a schedule ("Cure Schedule") which will be attached to the Assumption and Assignment Notice, identifying (i) the Assumed and Assigned Agreements, potentially to be assumed and assigned to a buyer in the event of a Sale and (ii) the amount, if any, the Trustee believes is necessary to cure all monetary defaults and other defaults under such agreement pursuant to section 365 of the Bankruptcy Code ("Cure Costs").

(b)     Upon the filing of the Cure Schedule, the Trustee will serve the Cure Schedule and the Assumption and Assignment Notice on each of the non-debtor counterparties listed on the Cure Schedule by first class mail. The Assumption and Assignment Notice will state that the Trustee is or may be seeking the assumption and assignment of the Assumed and Assigned Agreement and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale, (ii) that the deadline for objecting ("Cure/Assignment Objection") to the amount of the proposed Cure Costs related to any executory contract or unexpired lease is **April 7, 2021** ("Cure/Assignment Objection Deadline") and

4

(iii) that the deadline for objecting ("Adequate Assurance Objection") to the ability of the Buyer to provide adequate assurance of future performance under any Assumed and Assigned Agreement is **May 7, 2021** ("Adequate Assurance Objection Deadline").

(c)     Each Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on Trustee's counsel so that it is received by Cure/Assignment Objection Deadline and/or the Adequate Assurance Objection Deadline, respectively.

(d)     If no objections are received with respect to any Assumed and Assigned Agreement, then the Cure Costs set forth in the Cure Schedule for such agreement will be binding upon the non-debtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Cost required to be paid by or on behalf of the applicable Debtor in connection with the assumption and assignment of such agreement. In addition, all counterparties to the Assumed and Assigned Agreements who fail to file an objection before the Cure/Assignment Objection Deadline and/or the Adequate Assurance Objection Deadline, as applicable, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed and Assigned Agreements, and the Trustee and the buyer will be entitled to rely solely upon the Cure Cost set forth on the Cure Schedule; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the Debtor or the buyer that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumption or assignment of the applicable Assumed and Assigned Agreement.

(e)     The Trustee or the Winning Bidder may amend the Cure Schedule to remove or add any Assumed and Assigned Agreement at any time before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an order of the Court. The non-debtor counterparty or parties to any such removed or added contract or lease will be notified of such

5

exclusion or addition by written notice mailed within five (5) business days after such amendment, and any non-debtor counterparty with an Assumed and Assigned Agreement which is added to the Cure Schedule shall have the longer of (a) seven (7) days after written notice is mailed to the non-debtor counterparty with an added Assumed and Assigned Agreement and (b) the Cure/Assignment Objection Deadline or Adequate Assurance Objection Deadline, as applicable, to file an objection.

10.     A hearing to consider any Cure/Assignment Objections shall be held on **April 21, 2021 at _____.**

11.     Any Adequate Assurance Objections will be heard at the Sale Hearing.

12.     The presence of an Assumed and Assigned Agreement on the Cure Schedule does not constitute an admission that such Assumed and Assigned Agreement is an executory contract or unexpired lease or that the Assumed and Assigned Agreement will be assumed, assigned or both.

13.     The Court retains jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this Order.

37247088.5/159982.00001

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| In re: | Case No. 21-41019-tjt |
|---|---|
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

       **You are receiving this notice because you may be a party to a contract or lease with Lightning Technologies, Inc.  Please read this notice carefully as your rights may be affected by the transactions described herein.**

       **PLEASE TAKE NOTICE** that on February 5, 2021, an involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 USC §§101 *et. seq.,* as amended (the "Bankruptcy Code") was filed against Lightning Technologies, Inc. ("Debtor"), thereby commencing Case No. 21-41019-tjt (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court").

       **PLEASE TAKE FURTHER NOTICE** that the Debtor consented to the involuntary petition and the Bankruptcy Court entered its Order for Relief on February 8, 2021 [Docket No. 5].

       **PLEASE TAKE FURTHER NOTICE** Fred J. Dery was appointed as and is the duly acting Chapter 7 trustee ("Trustee") for the bankruptcy estate in the Bankruptcy Case.

       **PLEASE TAKE FURTHER NOTICE** that on [***], 2021, the Trustee filed his Motion for Entry of (A) an Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, Including the Termination Fee and (V) Granting Related Relief; and (B) an Order (I) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 105, 363 and 365, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases pursuant to 11 U.S.C. § 365, and (III) Granting Related Relief ("Sale Motion").

       **PLEASE TAKE FURTHER NOTICE** that on [***], the United States Bankruptcy Court for the Eastern District of Michigan  ("Bankruptcy Court") entered an Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, including the Termination Fee, and (V) Granting Related

Relief [Doc. No. ___] ("Sale Procedures Order").[1]  Among other things, the Sale Procedures Order: (a) established certain procedures ("Sale Procedures") for the sale ("Sale") of the Debtor's assets pursuant to an auction ("Auction") and (b) scheduled the time and place for the Auction.  The hearing on whether to approve the Sale will take place on May 10, 2021, at __:__ _.m. in the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan, at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226 ("Sale Hearing").  The hearing will be conducted by telephone. At least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Procedures Order, the Trustee may potentially assume and assign to the Winning Bidder one or more of those executory contracts and unexpired leases listed on Annex 1 attached hereto (collectively, the "Assumed and Assigned Agreements" and each, a "Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the Trustee has indicated on Annex 1 attached hereto the cure amounts the Trustee believes must be paid to cure all pre-petition defaults and pay all amounts accrued under the Assigned Agreements (in each instance, the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the assumption by the Trustee and assignment/transfer to the Winning Bidder of any Assigned Agreement, including the validity and amount of the Cure Amount as determined by the Trustee, or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Agreement for such contract or lease to be assumed and assigned, must file an objection ("Cure/Assignment Objection") that (a) is in writing (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court, and served on the Trustee's counsel so that it is received, on or before **April 7, 2021** ("Cure/Assignment Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider any Cure/Assignment Objections will be held on April 21, 2021,    at __:__ _.m. in the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan, at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226.  The hearing will be conducted by telephone. At least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the ability of the Winning Bidder to provide adequate assurance of future performance of an Assigned Agreement must file an objection ("Adequate Assurance Objection") with the Clerk of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Sale Procedures Order.

Bankruptcy Court on or before May 7, 2021. Any such objections will be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that unless a Cure/Assignment Objection or Adequate Assurance Objection is filed and served before the applicable objection deadline, all parties shall (a) be forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to the Assigned Agreements, and the Trustee and the Winning Bidder shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to the assumption and assignment; (c) be forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assigned Agreements.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Annex 1 and otherwise do not object to the Trustee's assumption and assignment of your lease or contract, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the Trustee's decision to assume and assign the Assigned Agreements is subject to the approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of any document on the list of Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Trustee or the Winning Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, or that your executory contract or unexpired lease will be assumed and/or assigned, and all rights with respect thereto are expressly preserved.

Dated: [***], 2021

THE TAUNT LAW FIRM

By:  /s/ Erika D. Hart
Erika D. Hart (P67457)
Dean R. Nelson (P 70818)
Attorneys for Trustee
700 E. Maple Rd., 2nd Floor
Birmingham, MI 48009
248.655.7800
ehart@tauntlaw.com
dnelson@tauntlaw.com

3

# EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Lightning Technologies, Inc.,

Debtor.

_____/

Case No. 21-41019
Chapter 7
Honorable Thomas J. Tucker

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 9, 2021, a true and correct copy of the foregoing document and all attachments thereto was served via CM/ECF on the following:

- **Robert N. Bassel**   bbassel@gmail.com, robertbassel@hotmail.com;ecfbassel@gmail.com
- **Matthew Boyd**   mboyd@tauntlaw.com, ecarter@tauntlaw.com;mmartin@tauntlaw.com
- **Sean M. Cowley (UST)**   Sean.cowley@usdoj.gov
- **Fred Dery**   fdery@fredjdery.com, MI39@ecfcbis.com;dcloven@fredjdery.com;fjd@trustesolutions.net
- **Erika D. Hart**   ehart@tauntlaw.com, ecarter@tauntlaw.com;mmartin@tauntlaw.com
- **Ryan D. Heilman**   ryan@wernetteheilman.com, paula@wernetteheilman.com
- **Clinton J. Hubbell**   clint@hubbellduvall.com, bk@hubbellduvall.com
- **James Morgan**   jem@h2law.com
- **Dean R. Nelson**   dnelson@tauntlaw.com, ecarter@tauntlaw.com;mmartin@tauntlaw.com
- **Phillip J. Neuman**   Phillip.Neuman@couzens.com, Nancy.Salomonson@couzens.com
- **Steven A. Roach**   roach@millercanfield.com, widen@millercanfield.com
- **David R. Shook**   ecf@davidshooklaw.com
- **Marc N. Swanson**   swansonm@millercanfield.com, wysocki@millercanfield.com;Kidd@MillerCanfield.com
- **James R. Waldvogel**   jwaldvogel@waldvogellaw.com

23

**THE TAUNT LAW FIRM**

Dated: March 9, 2021

By: /s/ Erika D. Hart
Erika D. Hart (P67457)
Dean R. Nelson, Jr. (P70818)
Matthew L. Boyd (P73012)
Attorneys for Trustee
700 E. Maple Rd., 2nd Floor
Birmingham, MI 48009
(248) 644-7800
ehart@tauntlaw.com
dnelson@tauntlaw.com

24

**EXHIBIT 6A**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 21-41019-tjt |
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

## NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on March 8, 2021, the Trustee filed his motion ("Sale Motion") for entry of orders pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (a) approving the Sale Procedures (as defined below) in connection with the sale ("Sale") of substantially all of the Debtor's assets ("Assets"); (b) authorizing and scheduling an auction, if other bids are received ("Auction"), in connection with the Sale; (c) approving a termination fee and certain other protections to the Trustee's current stalking horse bidder, Palltronics, Inc. ("Buyer"), under the Trustee's stalking horse purchase and sale agreement ("APA"); (d) approving cure procedures relating to the assumption and assignment of certain executory contracts and unexpired leases ("Assumed and Assigned Agreements") in connection with the Sale; (e) approving the form and manner of notices; (f) setting a hearing ("Sale Hearing") to take place after the Auction (if an Auction is necessary), to approve the Sale and the assumption and assignment of the Assumed and Assigned Agreements. By Order dated [***], 2021, the Bankruptcy Court entered an order ("Sale Procedures Order") approving the sale procedures as described therein ("Sale Procedures").

Any party that wishes to take part in the process and submit a bid for the Assets must comply with the Sale Procedures, including without limitation the following procedures. Only "Qualified Bidders" may participate in the bidding and Auction process. A "Qualified Bidder" is a potential bidder that has, no later than the bid deadline of May 3, 2021, at 5:00 p.m. prevailing Eastern Time ("Qualified Bid Deadline"), submitted a "Qualified Bid" by electronic mail to counsel to the Trustee, Erika D. Hart, 700 E. Maple Road, Birmingham, MI 48009, ehart@tauntlaw.com.

Subject to any other requirements established by the Court, an offer to purchase will only constitute a Qualified Bid if it contains the following items:

37328179.4/159982.00001

1.     An unconditional cash offer for the Assets.  No credit bids are permitted.

2.     An executed nondisclosure agreement in form and substance reasonably satisfactory to the Trustee.

3.     A cash purchase price that is not less than $5,325,000.

4.     A signed asset purchase agreement that contains, with the exception of the cash purchase price in paragraph (3) above, terms substantially similar to the terms and conditions contained in the APA. Any changes to the APA shall be marked against the APA in a separate document.

5.     A designation of the executory contracts and unexpired leases that such Qualified Bidder desires to be assumed and assigned to such Qualified Bidder.  A potential Qualified Bidder will make a good faith showing of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the potential Qualified Bidder.  In addition to the cash purchase requirement identified in (3) above, all cure costs will be paid by the Qualified Bidder.

6.     A disclosure of the identity of each person or entity that will be bidding for the Assets.

7.     A binding and irrevocable offer.

8.     The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Trustee of the financial ability to consummate the proposed transaction.

9.     A board resolution or written evidence of some type that demonstrates to the reasonable satisfaction of the Trustee that the bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person or persons authorized to bid at the Auction on behalf of such entity is authorized to do so.

10.    A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by the Trustee, which Deposit is actually received on or before the Qualified Bid Deadline and in an amount of not less than 5% of the cash purchase price component of the Qualified Bid (exclusive of cure costs to be paid by the Qualified Bidder).

11.    The bid must not contain any financial or due diligence contingencies.

12.    The agreement of the person or entity making the Qualified Bid to serve as a Back-Up Bidder providing a Back-Up Bid as defined in and pursuant to the terms of Sections 7(f) and 8 of the Sale Procedures

In the event the Trustee receives a Qualified Bid in addition to the APA, the Trustee will, unless otherwise ordered by the Court, conduct the Auction with respect to the Assets. The Auction will be conducted via zoom on May 6, 2021, commencing at 12:00 p.m. prevailing Eastern Time ("Auction").

If you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Sale Procedures Order and the Sale Procedures. Such objections must be filed with the Bankruptcy Court and served on the Trustee's counsel so as to be received, on or before May 7, 2021. The hearing on whether to approve the Sale will take place on May 10, 2021, at __:__ .m. in the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan, at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226 ("Sale Hearing") or conducted by telephone, in the discretion of the Court. If the Sale Hearing is to be conducted by telephone, then at least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650. If any party fails to timely file and serve an objection in accordance with the Sale Procedures Order, the Bankruptcy Court may disregard such objection. The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale or the Trustee's assumption and assignment of the Assumed and Assigned Agreements or the consummation of the Sale and the performance of the APA.


                        THE TAUNT LAW FIRM

                        By:    /s/ Erika D. Hart
Dated: March 9, 2021            Erika D. Hart (P67457)
                               Dean R. Nelson, Jr. (P70818)
                               Matthew L. Boyd (P73012)
                               Attorneys for Trustee
                               700 E. Maple Rd., 2nd Floor
                               Birmingham, MI 48009
                               (248) 644-7800
                               ehart@tauntlaw.com
                               dnelson@tauntlaw.com
                               mboyd@tauntlaw.com

# EXHIBIT 6B

37328179.4/159982.00001

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 21-41019-tjt |
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

**You are receiving this notice because you may be a party to a contract or lease with Lightning Technologies, Inc. Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that on February 5, 2021, an involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 USC §§101 *et. seq.,* as amended (the "Bankruptcy Code") was filed against Lightning Technologies, Inc. ("Debtor"), thereby commencing Case No. 21-41019-tjt (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtor consented to the involuntary petition and the Bankruptcy Court entered its Order for Relief on February 8, 2021 [Docket No. 5].

**PLEASE TAKE FURTHER NOTICE** Fred J. Dery was appointed as and is the duly acting Chapter 7 trustee ("Trustee") for the bankruptcy estate in the Bankruptcy Case.

**PLEASE TAKE FURTHER NOTICE** that on March 8, 2021, the Trustee filed his Motion for Entry of (A) an Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, Including the Termination Fee and (V) Granting Related Relief; and (B) an Order (I) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 105, 363 and 365, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases pursuant to 11 U.S.C. § 365, and (III) Granting Related Relief ("Sale Motion").

**PLEASE TAKE FURTHER NOTICE** that on [***], the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court") entered an

37328179.4/159982.00001

Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, including the Termination Fee, and (V) Granting Related Relief [Doc. No. __] ("Sale Procedures Order").[7] Among other things, the Sale Procedures Order: (a) established certain procedures ("Sale Procedures") for the sale ("Sale") of the Debtor's assets pursuant to an auction ("Auction") and (b) scheduled the time and place for the Auction. The hearing on whether to approve the Sale will take place on May 10, 2021, at __:__ __.m. in the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan, at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226 ("Sale Hearing"). The hearing will be conducted by telephone. At least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Procedures Order, the Trustee may potentially assume and assign to the Winning Bidder one or more of those executory contracts and unexpired leases listed on Annex 1 attached hereto (collectively, the "Assumed and Assigned Agreements" and each, a "Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the Trustee has indicated on Annex 1 attached hereto the cure amounts the Trustee believes must be paid to cure all pre-petition defaults and pay all amounts accrued under the Assigned Agreements (in each instance, the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the assumption by the Trustee and assignment/transfer to the Winning Bidder of any Assigned Agreement, including the validity and amount of the Cure Amount as determined by the Trustee, or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Agreement for such contract or lease to be assumed and assigned, must file an objection ("Cure/Assignment Objection") that (a) is in writing (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court, and served on the Trustee's counsel so that it is received, on or before **April 7, 2021** ("Cure/Assignment Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider any

---

[7] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Sale Procedures Order.

Cure/Assignment Objections will be held on April 21, 2021,    at   __:__   _.m.  in  the Courtroom of the Honorable Thomas Tucker, United States Bankruptcy Court for the Eastern District of Michigan, at Courtroom 1925, 211 West Fort Street Bldg., Detroit MI 48226.  The hearing will be conducted by telephone. At least five minutes before the scheduled time for the hearing, counsel and parties should call (888) 684-8852 and use Access Code 2388650.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the ability of the Winning Bidder to provide adequate assurance of future performance of an Assigned Agreement must file an objection ("<u>Adequate Assurance Objection</u>") with the Clerk of Bankruptcy Court on or before May 7, 2021**.**  Any such objections will be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that unless a Cure/Assignment Objection or Adequate Assurance Objection is filed and served before the applicable objection deadline, all parties shall (a) be forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to the Assigned Agreements, and the Trustee and the Winning Bidder shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to the assumption and assignment; (c) be forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assigned Agreements.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on <u>Annex 1</u> and otherwise do not object to the Trustee's assumption and assignment of your lease or contract, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the Trustee's decision to assume and assign the Assigned Agreements is subject to the approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of any document on the list of Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Trustee or the Winning Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, or that your executory contract or unexpired lease will be assumed and/or assigned, and all rights with respect thereto are expressly preserved.

37328179.4/159982.00001

Dated: [***], 2021

**THE TAUNT LAW FIRM**

By: /s/ Erika D. Hart
     Erika D. Hart (P67457)
     Dean R. Nelson (P 70818)
     Matthew L. Boyd (P73012)
     Attorneys for Trustee
     700 E. Maple Rd., 2nd Floor
     Birmingham, MI 48009
     248.655.7800
     ehart@tauntlaw.com
     dnelson@tauntlaw.com
     mboyd@tauntlaw.com

37328179.4/159982.00001

**Exhibit 6C**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Lightning Technologies, Inc.,

        Case No. 21-41019
        Chapter 7
        Honorable Thomas J. Tucker

        Debtor.

_____/

## NOTICE OF PROPOSED ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on February 5, 2021 (the "**Petition Date**"), the an involuntary petition for bankruptcy was filed against Lightning Technologies, Inc. (the "**Debtor**") pursuant to chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern Districtof Michigan (the "**Bankruptcy Court**"). On _____, Chapter 7 Trustee Fred Dery ("**Trustee**") fileda motion (the "**Sale Motion**") [ECF No._] to sell substantially all of the Debtor's assets (the"**Assets**") free and clear of all liens, claims, encumbrances, and other interests (the "**Sale**") and assume and assign certain of its executory contracts and unexpired leases to the purchaser of the Assets.[1]

**PLEASE TAKE FURTHER NOTICE** that the Trustee is soliciting offers for the purchase of the Debtor's Assets consistent with the bidding procedures (the "**Sale Procedures**") approved by the Court by the entry of an order on [____] (the "**Sale Procedures Order**") [ECF No._]. The Sale Procedures include, among otherthings, procedures for the assumption and assignment of the Contracts (the "**Assumption Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Sale Procedures Order, the Trustee has selected [●] as the Successful Bidder for the Saleof its Assets and, by this written notice, the Trustee notifies you that the Successful Bidder has determined, in the exercise of its business judgment, that the Assumed and Assigned Agreements and any modifications thereto set forth on **Schedule 1** attached hereto (collectively,the "**Assumed and Assigned Agreements**") shall be assumed and assigned to the Successful Bidder,subject to the Successful Bidder's payment of the cure amount set forth on **Schedule1**, or such other cure amounts as are agreed by the parties.

37328179.4/159982.00001

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder has the right under certain circumstances to designate additional Assumed and Assigned Agreements as Assumed and Assigned Agreements or remove certain Assumed and Assigned Agreements from the list of Assumed and Assigned Agreements prior to closing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Sale Procedures, and the Sale Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available by contacting counsel for the Trustee, below, or for a fee via PACER by visiting https://www.pacer.gov/.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided by the Sale Procedures Order, the time for filing objections to (a) the cure amounts related to the Assumed and Assigned Agreements and (b) the Trustee's ability to assume and assign the Assumed and Assigned Agreements has passed and no further notice or action is necessary with respect to such matters.

**PLEASE TAKE FURTHER NOTICE** that any Contract Counterparty that objects to the adequacy of the Successful Bidder's assurance of continued performance set forth in **Schedule 1** hereto must file an objection with the Bankruptcy Court prior to the Sale Hearing.

**THE TAUNT LAW FIRM**

Dated: March 9, 2021

By: /s/ Erika D. Hart
Erika D. Hart (P67457)
Dean R. Nelson, Jr. (P70818)
Attorneys for Trustee
700 E. Maple Rd., 2nd Floor
Birmingham, MI 48009
(248) 644-7800
ehart@tauntlaw.com
dnelson@tauntlaw.com

## Schedule 1 to Assumption Notice

## Assumed and Assigned

## Agreements[82]

| Counterparty | Description of Assumed and Assigned Agreements or Leases | Cure Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

---

[8] The presence of a contract or lease on this Schedule 1 does not constitute and admission by the Trustee that such contract is an executory contract or such lease inan unexpired lease pursuant to Bankruptcy Code section 365 or any other applicablelaw, and the Trustee reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease