**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 21-41019-tjt |
| Lightning Technologies, Inc., | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

## ORDER AUTHORIZING (I) THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, (III) THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (IV) GRANTING RELATED RELIEF

This Court having considered the Chapter 7 Trustee's Motion for Entry of

Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale

Hearing in Connection with the Sale of Substantially All of Debtor's Assets

Pursuant to 11 U.S.C. §§105, 363 and 365, (III) Setting Certain Dates and

Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase

and Sale Agreement, Including the Termination Fee, and (V) Granting Related

Relief [Docket No. 65], and the Supplement in Support thereof [Docket No. 88]

(together with the Supplement, the "Motion"),[1] filed by Fred J. Dery, in his

capacity as the duly appointed and acting Chapter 7 trustee ("Trustee") for the

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the Final APA, as applicable.

estate of the above-captioned debtor ("Debtor"); and upon review and consideration of the Declarations of Scott Eisenberg, and Damian Kassab in support of the Motion, evidence, proffers and arguments of counsel made in connection with the Motion; and upon entry of the Order (I) Establishing Sale Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets Pursuant to 11 U.S.C. §§105, 363 and 365, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Purchase and Sale Agreement, Including the Termination Fee, and (V) Granting Related Relief [Docket No. 103] (the "Sale Procedures Order" and Exhibit A attached thereto, the "Sale Procedures"); and no Qualified Bidder having submitted a Qualified Bid by the Qualified Bid Deadline and, as a result, the Trustee having canceled the auction due to the absence of competing bids, consistent with the Sale Procedures Order; and the Trustee having filed the Notice of Sale Procedures Result and Intent to Proceed with Sale of Assets to Buyer, and Reserve Backup Buyer, Per Sale Procedures Order on May 5, 2021 [Docket No. 206], designating Palltronics, Inc. ("Palltronics") as the Winning Bidder for the purchase of the Assets as defined in the Amended 363 Sale Asset Purchase Agreement entered into as of March 16, 2021 but effective as of March 4, 2021 between Buyer and Trustee (as amended by the First Amendment to Amended 363 Sale Asset

Purchase Agreement [Docket No. 191] and as may be further amended thereunder or by this Order ("Sale Order"), and expressly including all Schedules, as such Schedules may be amended until the Closing Date pursuant to Sections 2.1 and 2.2 thereof (the "Palltronics APA") and this Sale Order, which Palltronics APA, including all Schedules thereto as such Schedules may have been amended from time to time through the date of the Sale Hearing, filed at Docket No. 239; and the Trustee having designated PALIoT Solutions LLC as the Back-Up Bidder (as defined in the Sale Procedures) for the purchase of the purchased assets pursuant to the Asset Purchase Agreement between Trustee and PALIoT Solutions LLC ("PaLIot" or "Back-Up Bidder") dated as of March 15, 2021, in the form attached to the Supplement in Support [Docket No. 88-4] (the "Back-Up APA"); objections to the Motion having been filed by Ashley Orion Commerce Center, LLC [Docket No. 225], Grow Michigan, LLC [Docket No. 223], DEMS Associates, LLC [Docket No. 227], Palltronics, Inc. [Docket No. 226], and Interested Parties Jeffrey Owen and Rosie Borowski [Docket No. 237] (collectively, "Objections") and a response to the Objections having been filed by the Trustee [Docket No. 236], and no other objections having been timely filed; and the Sale Hearing having been held on May 12, 2021, commencing at 2:00 p.m. then prevailing Eastern Time, to consider the remaining relief requested in the Motion and the Objections, and authorization and approval of the Palltronics APA and, in the event that the

Palltronics APA fails to close, authorization and approval of the Back-Up APA; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings held before this Court (including the testimony and other evidence proffered or adduced at the Sale Hearing); and the Court finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interest of the Debtor's estate, its creditors, and other parties in interest and that the Final APA[2] represents the highest and best offer for the Assets; and that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary or required; and after due deliberation thereon; and good and sufficient cause appearing therefor, and for the reasons stated by the Court on the record during the May 12, 2021 Sale Hearing, and also based on the stipulation filed after the Sale Hearing (Docket # 242);

**THE COURT FINDS THAT:**

A. <u>Findings of Fact and Conclusions of Law</u>:  The findings and conclusions set forth in this Sale Order constitute the Court's findings of fact and

---

[2]    For purposes of this Sale Order, the term "Final APA" refers to either the Palltronics APA or the Back-Up APA, whichever actually closes and is consummated with the Trustee; the term "Buyer" refers to the Trustee's counterparty to such Final APA.  The term Assets as used in this Sale Order shall mean "Assets" as defined in the Palltronics APA or shall mean the "Purchased Assets" as defined in the Back-Up APA, whichever becomes the Final APA.

4

conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction and Venue</u>: The Court has jurisdiction to consider the Sale Motion and to grant the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Authorization and approval of the Trustee's entry into and performance of the Final APA and the transactions contemplated thereby (the "Sale Transaction") is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 7 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.     <u>Final Order</u>:  This Sale Order constitutes a final order within the meaning of 28 U.S.C §158(a).

D.     <u>Statutory Predicates</u>: The statutory predicates for authorization and approval of the Final APA and the relief sought in the Sale Motion include (i) sections 105(a), 363(b), (f), (m) and (n), and 365 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014; and (iii) Rule 6004-1 and Rule 9014 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules").

5

E.     Notice and an Opportunity to be Heard:  Service of the Motion, the Palltronics APA, the Back-Up APA, and the Sale Transaction and an opportunity to be heard was afforded to all interested persons and entities, as evidenced by the Certificates of Service dated March 23, 2021 and March 25, 2021 [Docket Nos. 113 and 123], including the following: (i) counsel of record for Grow Michigan LLC; (ii) Flagstar Bank, FSB; (iii) Robert J. Causley; (iv) Paul Shamo; (v) counsel of record for Solyco, LLC; (vi) BB Invescor I, LLC; (vii) Boise Cascade Company; (viii) counsel of record for PALIot Solutions, LLC; (ix) counsel of record for DEMS Associates, LLC; (x) counsel of record for Ashley Orion Commerce Center, LLC; (xi) all persons and entities receiving electronic court filings in this case; (xii) all non-Debtor parties to any executory contracts or unexpired leases of the Debtor (as identified on the applicable schedule to the Final APA to be assumed and assigned to Buyer, "Assumed Contracts") that are proposed to be Assumed Contracts in connection with the Sale Transaction [Docket No. 123]; (xiii) any governmental authority known to have a claim against the Debtor in the case; (xiv) the Internal Revenue Service; (xv) the Office of the United States Trustee for Region 9; (xvi) all persons and entities who have filed proofs of claim alleging secured status as to the Assets or have otherwise asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Trustee);

(xvii) the creditor matrix at the time of such service; (xviii) all persons and entities known by the Trustee to have expressed an interest to the Trustee or CRS Capstone Partners, LLC in any sale transaction involving any of the Assets, including those that have signed nondisclosure agreements, confidentiality agreements, stipulated protective orders or other documents of similar import; and (xix) all other entities who have requested notice pursuant to Bankruptcy Rule 2002 (all of the foregoing, collectively, the "Notice Parties"). The foregoing notice to the Notice Parties was good, sufficient and appropriate under the circumstances, and no notice by publication under Bankruptcy Rule 2002(l) or other or further notice of the Motion, Sale Hearing, Final APA or the Sale Transaction is necessary or need be given pursuant to the Sale Procedures Order, Bankruptcy Rule 2002, the Local Rules or otherwise. The disclosures made by the Trustee concerning the Final APA, the Sale Transaction and the Sale Hearing were sufficient, complete and adequate. Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F.    <u>Business Judgment</u>: The Trustee has demonstrated a sufficient and compelling basis and a good and sound business purpose and judgment for entering into the Final APA, selling the Assets and assuming and assigning the Assumed Contracts under sections 105, 363 and 365 of the

Bankruptcy Code pursuant to the Final APA and this Sale Order, and taking such other actions as may be appropriate exercises of the Trustee's business judgment, consistent with his fiduciary duties, and in the best interests of the bankruptcy estate, its creditors and other parties in interest. Good and sufficient reasons for authorization and approval of the Final APA and all ancillary documents executed and to be executed in connection with the Final APA and the Sale Transaction have been demonstrated by the Trustee.

G. <u>Compliance with the Sale Procedures</u>: The Trustee and his professionals have complied in all respects with the Sale Procedures Order and the Sale Procedures. The Trustee has afforded interested potential buyers a full, fair and reasonable opportunity under the circumstances to make higher and better offers to purchase the Assets, and provided potential buyers, upon request and subject to nondisclosure agreements, confidentiality agreements, stipulated protective orders or other documents of similar import, with appropriate access to sufficient information to enable them to make informed judgments on whether to submit a Qualified Bid for the Assets and, if so, in what amounts and on what terms.

H. <u>Marketing Process</u>: As demonstrated by (i) the Declaration of Scott Eisenberg of CRS Capstone Partners, LLC [Docket No. 228], (ii) the testimony and other evidence proffered or adduced at the hearing on the

approval of the sale procedures held on March 17, 2021 ("Sale Procedures Hearing") and the Sale Hearing, and (iii) the representations of counsel made on the record at the Sale Procedures Hearing and the Sale Hearing, the marketing and sale process relating to the Assets conducted by the Trustee and his advisors, including CRS Capstone Partners, LLC, was non-collusive, fair and reasonable and conducted in good faith as set forth in and in accordance with the Sale Procedures Order and the Sale Procedures, and resulted in obtaining the highest and best value for the Assets under the circumstances. Based upon the record in these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to purchase the Assets.

I. <u>Highest and Best Offer</u>: The offer of the Buyer, upon the terms and conditions set forth in the Final APA and this Sale Order, including the form and total consideration to be realized by the Debtor's estate pursuant to the Final APA: (i) is the highest and best offer received by the Trustee; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's estate, its creditors and other parties in interest; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets; and (v) will provide a greater recovery and benefit for the Debtor's estate, creditors and

9

other interested parties than would be provided by any other practically available alternative.

J.   Court Approval Required.  Entry of an order authorizing and approving the Trustee's entry into the Final APA and the Trustee's performance of all provisions thereof is a necessary condition precedent to the Buyer's consummation of the Sale Transaction.

K.   Insider Status:

1.   Palltronics:  Based upon the Declaration of Damian Kassab on behalf of Palltronics [Docket No. 229], Palltronics is not an "insider" or otherwise an "affiliate" (as such terms are defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor and, except for Damian Kassab and Martin DiFiore, no common identity of directors, officers or controlling equity security holders exists now or has ever existed between Debtor and Palltronics, although Palltronics may name one or more former officers or directors of Debtor in the future as officers or directors of Palltronics.

L.   Good Faith and Arm's-Length Sale: The Buyer is purchasing the Assets for value in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and therefore is entitled to and granted the full rights, benefits, privileges, immunities and

protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the sale in that, among other things: (i) the Buyer recognized that the Trustee was free to deal with any other party interested in acquiring all or any portion of the Assets; (ii) the Buyer complied in good faith in all respects with the provisions in the Sale Procedures Order and the Sale Procedures; (iii) the Buyer agreed to subject its bid to the competitive bidding process set forth in the Sale Procedures Order and the Sale Procedures; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed; and (v) the negotiation and execution of the Final APA were at arm's length and in good faith. Neither Trustee nor the Buyer engaged in any conduct (i) that would prevent the application of section 363(m) of the Bankruptcy Code or (ii) that would cause the application of or implicate section 363(n) of the Bankruptcy Code to the Buyer, or to the Final APA or the consummation of the Sale Transaction contemplated by the Final APA and transfer of the Assets, including the Assumed Contracts, to the Buyer.

M.     <u>No Successor Liability</u>: The transfer of the Assets to Buyer does not and shall not be deemed to constitute a consolidation, merger, or *de facto* merger of the Debtor and Buyer, and there is no continuity of enterprise between Debtor and Buyer. Buyer is not a joint employer or co-employer with

Debtor nor is it a mere successor to or a continuation or substantial continuation of the Debtor. Buyer's acquisition of the Assets shall be free and clear of any "successor liability" claims of any kind or nature whatsoever. Buyer would not acquire the Assets but for the protections against any claims based upon "successor liability" theories.

N.  <u>Power and Authority</u>: Upon entry of this Order, the Trustee shall have full power and authority to execute, deliver, and perform the Final APA and all other documents contemplated thereby and hereby, and the sale of the Assets shall have been duly and validly authorized, and all necessary authority provided, to consummate the transactions contemplated by the Final APA and this Sale Order. No consents or approvals, other than as expressly provided for in the Final APA, are required by the Trustee to consummate such transactions.

O.  <u>Legal, Valid and Effective Transfer</u>: Notwithstanding any requirement for approval or consent by any person or entity, the transfer of the Assets to the Buyer, including the assumption and assignment of the Assumed Contracts, is and will constitute a legal, valid and effective transfer of the Assets and any Assumed Contracts to Buyer.

P.  <u>Satisfaction of Section 365(b) and (f)</u>: The Trustee and the Buyer have, to the extent necessary, and subject to the terms and conditions set

12

forth herein, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b) and 365(f), in connection with the sale of the Assets and the assumption and assignment of any Assumed Contracts. Adequate assurance of future performance with respect to all Assumed Contracts has been demonstrated and satisfied. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Final APA and is in the best interests of the Trustee, the estate, its creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Trustee, consistent with his fiduciary duties.

Q.     Assumption and Assignability of Assumed Contracts: No counterparty to an Assumed Contract that was listed on the Notice to Assume Cure and Possible Assumption Notice with Contract Counterparties [Docket No. 123] that was served on March 25, 2021 [Docket No. 123] ("Initial Possible Assumption Notice") filed a timely objection by the Cure/Assignment Deadline under Section 10(b) of the Sale Procedures Order and, as a result, the cure amount for each such Assumed Contract is $0. Consequently, the Buyer has satisfied its obligation concerning the cures and/or other payments or actions required to assume and assign the Assumed Contracts identified on the Initial Possible Assumption Notice. The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.

R.     <u>Assets Sold Free and Clear</u>: Except as otherwise expressly provided in the Final APA with respect to Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing), the Assets shall be sold free and clear of all Interests. As used in this Sale Order, the terms "Interest" and "Interests" include all of the following, in each case, to the extent against or with respect to the Debtor, or in, on, or against, or with respect to any of the Assets or Assumed Contracts:

      i.     encumbrances, charges, liens (whether consensual, statutory, possessory, judicial, or otherwise), claims, mortgages, leases, subleases, licenses, hypothecations, deeds of trust, pledges, levies, security interests or similar interests, title defect, options, hypothecations, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), profit sharing interests, rights of consent, restrictive covenants, encroachments, servitude, restrictions on transferability of any type, charge, easement, right of way, restrictive covenant, transfer restriction under any shareholder agreement, judgment, conditional sale or other title retention agreement, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Buyer's interest in the Assets, or any similar rights, or other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever (collectively, "Liens");

     ii.     any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including,

without limitation: (1) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA (as defined herein), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "<u>COBRA</u>"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors, (l) the WARN Act (29 U.S.C. §§ 2101 et seq.), or (m) any claims or liens under any government program, including any Economic Injury Disaster Loan or any Paycheck Protection Program loan; (2) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) of Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "<u>ERISA</u>"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (3) any and all claims or causes of action based upon or relating to any putative successor or transferee liability; (4) any rights related to intercompany loans and receivables between the Debtor and any non-debtor affiliate; (5) any Excluded Assets; (6) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease that is not an Assumed Contract that will be assumed and assigned pursuant to this Sale Order and the Final APA; (7) any and all

claims or causes of action based upon or relating to any bulk sales, transfer taxes or similar law; (8) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority; (9) any other excluded liabilities under the Final APA; and (10) any and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff, recoupment, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtor or any of its affiliates, directors, officers, agents, successors or assigns in connection with or relating to the Debtor, its operations, its business, liabilities, the Trustee's marketing and bidding process with respect to the Assets, the Assumed Contracts, or the transactions contemplated by the Final APA (collectively, "Claims"); and

iii.   without limiting any of the foregoing, any other interest that the Debtor or Trustee may sell property free and clear of pursuant to section 363(f) of the Bankruptcy Code (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to, on or subsequent to the commencement of this bankruptcy case, and whether imposed by agreement, understanding, applicable law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability) (items (i), (ii) and (iii) above are collectively, "Interests").

S.    Without limitation of the scope or breadth of the foregoing definition of Interests, the phrase "Interests" includes (i) any lien, claim, encumbrance or other Interest of Jeffrey Owen in, on or against the Truck and Trailer (as defined in paragraph 8 below), (ii) any lien, claim, encumbrance or other Interest in, on or against the Debtor's Citrix ShareFile, the Debtor's S Drive, any internal or external hard drives or thumb drives of the Debtor, any laptops or other computers of the Debtor, any information contained within any of the foregoing, and the Office 365 Account of the Debtor and any emails and other information contained within it pursuant to the Court's Order and Opinion [Docket No. 189](all property identified in this clause (ii), "Electronically Stored Property") and (iii) with respect to the Intellectual Property (as defined and identified on Schedule 2.1.4 of the Palltronics APA or in the Back-Up APA, as applicable)), any claims or other rights relating to infringement, reverse engineering, misappropriation, breach of any license agreement, any rights of licensees, breach of any confidentiality, non-disclosure, or non-compete agreements, stipulated protective orders, security interests, liens and agreements, or other documents of similar import, or any other claim or Interest that might impair either the title to or value of the Intellectual Property or Electronically Stored Property in the name of Buyer or the ownership and exclusive use of the Intellectual Property and Electronically Stored Property by the

Buyer, with such Intellectual Property and Electronically Stored Property including, without limitation, any patents, trademarks, trade secrets, the Exobond secret formula, and the Exobond secret process. The Buyer would not enter into the Final APA or consummate the transactions under the Final APA unless the Assets are transferred to Buyer free and clear of any and all Interests other than assumed liabilities in respect of Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing). A sale of the Assets other than one free and clear of all Interests would yield substantially less value for the bankruptcy estate.

T.    Adequate Protection: All such Interests, if any, shall attach solely to the Purchase Price to be received by the Trustee and in the same order of priority and with the same validity, force and effect as existed immediately before the Closing, subject to any rights, claims and defenses, including avoidance actions, of the Debtor, Trustee, the bankruptcy estate or as otherwise provided in this Sale Order. All holders of Interests are adequately protected within the meaning of section 363(e) of the Bankruptcy Code by such treatment.

U.    Vesting of the Assets in Buyer: The transfer of the Assets to Buyer will be a legal, valid, binding and effective transfer of the Assets, and, except as may otherwise be provided in the Final APA or this Sale Order, upon Closing shall vest the Buyer with all rights, title and interest of the Debtor and its

estate in and to the Assets free and clear of any and all Interests. Except as specifically provided in the Final APA or this Sale Order, the Buyer shall not assume or become liable for any Interests relating to the Assets.

V.    Injunction of Persons against Buyer:  All persons or entities having Interests of any kind or nature whatsoever in, on or against the Debtor, the bankruptcy estate, or the Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Interests against the Buyer, any of its assets, property, successors or assigns, or the Assets, other than with regard to liabilities assumed by Buyer in connection with Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing).  Upon and after Closing through June 30, 2021 (a) no person or entity (other than the Buyer and its agents and designees) may relocate or remove any of the Assets from their then physical locations under any nonresidential real property lease with the Debtor, whether such lease has, or has been, terminated or remains executory, as of the Closing Date, and (b) the Buyer shall be afforded unrestricted, continuous access to such physical locations to remove any of the Assets as of and at all times after the Closing Date (and with the written consent of the Trustee at all times before the Closing Date). This Court previously entered its Opinion and Order Regarding Certain Unresolved Landlord Issues, and Regarding Landlord

Motions for Relief from Stay [Docket No. 214] making certain findings of fact and conclusions of law regarding the extent of the obligations of the Trustee, commercial landlords and Buyer to each other as relating to the respective commercial real property where some of the Assets are located.

W.     Section 363(f):  The Trustee can sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, to the extent necessary, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Any holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Assets on, against or in which they claim or may claim any Interests, with such Interests being subject to treatment as, or that will be, determined by separate, subsequent order of this Court with respect to the distribution of such proceeds.

X.     No Assumed Liabilities or Obligations: The Buyer shall have no obligations with respect to any debt, liabilities, commitments, or obligations related to the Assets, or Interests, whether express or implied, other than liabilities

assumed in connection with Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after the Closing Date). Furthermore, the Buyer shall have no liability or other obligation under or in respect of any other Contracts.

Y.      Immediate Efficacy of this Sale Order: In the absence of a stay pending appeal, the Buyer will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the Sale Transaction and the transactions contemplated by the Final APA and this Sale Order at any time on or after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**IT IS ORDERED THAT:**

1.      The Motion is granted in its entirety as set forth in this Sale Order.

2.      To the extent any Objections or other objections or responses to the Motion have been raised, they are resolved in accordance with the terms of this Sale Order.  To the extent any such Objection or other objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations and rights contained therein, is overruled and denied.

3.     The terms and conditions of the Final APA and the sale of the Assets contemplated therein are hereby authorized and approved in all respects, including pursuant to sections 105(a), 363(b), (f), (m), and (n), and 365 of the Bankruptcy Code.

4.     Pursuant to sections 105(a), 363(b), (f), (m), and (n), and 365 of the Bankruptcy Code and otherwise, the Trustee is hereby authorized, directed and empowered to fully assume, perform under, consummate and implement the terms of this Sale Order and the Final APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, instruments of transfer, and the other deliveries required by such Final APA, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer, or reducing to possession in Buyer, any and all of the Assets and Assumed Contracts, as may be necessary or appropriate to the performance of Trustee's obligations under and as contemplated by the Final APA and this Sale Order, without any further action or orders of this Court.

5.     The Trustee shall be, and hereby is, authorized, empowered and directed, pursuant to sections 105, 363(b) and (f), and 365 of the Bankruptcy Code, to sell the Assets to Palltronics upon delivery of the Purchase Price specified in the

22

Palltronics APA at Closing and completion of all other deliveries required of Palltronics at Closing under the Palltronics APA; provided, however that in the event that Palltronics fails to deliver the Purchase Price as provided in the Palltronics APA, then the Trustee shall be, and hereby is, authorized, empowered and directed, pursuant to sections 105, 363(b) and (f), and 365 of the Bankruptcy Code, to sell the Assets to the Back-Up Bidder upon delivery of the Purchase Price specified in the Back-Up APA at Closing and completion of all other deliveries required of the Back-Up Bidder at Closing under the Back-Up APA.

6. Upon Closing, the Assets shall vest Buyer with all right, title and interest of the Debtor and its bankruptcy estate to the Assets, free and clear of and from any and all Interests (other than any assumed liabilities under the Final APA in connection with Assumed Contracts and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing). The transfer of the Assets to the Buyer pursuant to the Final APA and any and all documents executed in connection therewith does not require any consents other than specifically provided for in the Final APA or as provided for in this Sale Order.

7. Any person or entity holding or asserting Interests in, on or against any of the Assets, at the request of the Trustee, shall deliver to the Trustee termination statements, instruments of satisfaction or releases of all

such Interests that the person or entity has with respect to the Assets, executed

by the appropriate parties and in proper form for filing or recording at or after

Closing.  If any person or entity that has filed financing statements or other

documents or agreements evidencing any Interests in, on or against the Assets shall

not have delivered to the Trustee prior to the Closing, in proper form for filing or

recording and executed by the appropriate parties, termination statements,

instruments of satisfaction, or releases of all such Interests that the person or

entity has with respect to the Assets, the Trustee and Buyer is each hereby

authorized to execute and file such statements, instruments, releases and other

documents on behalf of the person or entity with respect to such Assets prior to

the Closing, and the Buyer is authorized to file such documents after Closing.

The filing of any termination statements, instruments of satisfaction, releases, or

any other documents pursuant to this paragraph will not alter the force, validity,

priority or effect of the Interests in their attachment, if any, exclusively to the

Purchase Price or other Excluded Assets as provided in this Sale Order.

8.     This Sale Order shall be binding upon and govern the acts of all

persons or entities, including, without limitation, all filing agents, recording

agencies, secretaries of state, utility providers, providers of telephone and/or

telecommunication services, and all other persons and entities who may be

required by operation of law to accept, file, register or otherwise record or release

any documents or instruments. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final APA and this Sale Order. This shall include, but not be limited to, the transfer to, and titling in, Buyer of the Debtor's 2017 Ford F350 truck, VIN 1FT8W3DT8HEE24600 which is property of the bankruptcy estate but currently titled in the name of Jeffrey Owen, and the Debtor's 2018 Lamar Trailer, VIN 5RVFG4028JP055115 (together "Truck and Trailer"), both of which shall be registered in the name of Buyer free and clear of any Interests promptly after Closing.

9.      Except for the Trustee and his professionals to the extent provided in paragraph 34 of this Sale Order, all persons or entities which, as of or after the Closing Date, are in possession of some or all of the Assets are hereby ordered and directed to surrender possession of the Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request and, immediately after delivery of such Assets, to permanently erase or destroy all digital or other electronically stored copies. This directive includes, but is not limited to, the possession of the Assets, including any Intellectual Property and Electronically Stored Property stored or kept electronically or digitally and all copies of Intellectual Property and Electronically Stored Property. Any such person or entity,

with notice of this Sale Order, shall be required to certify in writing to the Trustee and Buyer that such party has delivered all Assets and copies to the Buyer, and has permanently erased or destroyed all digital or other electronically stored copies. In the event that the Back-Up Buyer becomes the Buyer, the immediately preceding sentence is inapplicable.

10.     The sale of the Assets to the Buyer under the Final APA will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of all applicable jurisdictions.

11.     The Buyer will not assume and is otherwise not obligated or liable for any of the Debtor's or the bankruptcy estate's debts, liabilities, commitments, obligations, or Interests, other than any assumed liabilities in connection with Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing) as expressly set forth in the Final APA, and the Buyer has not purchased any of the Excluded Assets. Consequently, all holders of debts, liabilities, commitments, obligations, or Interests in, on or against the Debtor, the bankruptcy estate or the Assets are hereby enjoined from asserting or prosecuting any debt, liability, commitment, obligation, or Interests against the Buyer, the Assets or any other property or assets of the Buyer. All persons or entities holding or asserting any debt, liability, commitment, obligation, or Interests in, on or

against any of the Excluded Assets are hereby enjoined from asserting or prosecuting such debt, liability, commitment, obligation, or Interests against the Buyer, the Assets or any other property or assets of the Buyer for any debt, liability, commitment, obligation, or Interests associated with the Excluded Assets. The Trustee or Buyer shall file with this Court the Final APA, including the final version of the Schedules appended thereto, promptly after the Closing Date.  For the avoidance of doubt, this injunction includes, but is not limited to, upon and after Closing through June 30, 2021 (a) any action (other than by the Buyer and its agents and designees) to relocate or remove any of the Assets from their then physical locations under any nonresidential real property lease with the Debtor, whether such lease has, or has been, terminated or remains executory, as of the Closing Date, and (b) the Buyer's right to unrestricted, continuous access to such physical locations to remove any of the Assets as of and at all times after the Closing Date (and with the written consent of the Trustee at all times before the Closing Date). Nothing in this Sale Order does, or is intended to, alter, limit, resolve or amend this Court's prior Opinion and Order Regarding Certain Unresolved Landlord Issues, and Regarding Landlord Motions for Relief from Stay [Docket No. 214].  Buyer shall name Ashley Orion Commerce Center, LLC and DEMS Associates, LLC as additional insureds on property damage and general liability insurance with limits of $5

million per occurrence and $5 million general aggregate liability per location and provide each landlord with a certificate of insurance prior to removing any assets from their premises.

12.     Subject to the terms of the Final APA and the Closing, the sale, assumption and assignment of the Assumed Contracts is authorized and approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code.

13.     At the Closing, the Trustee is hereby authorized and directed to assume and assign the Assumed Contracts as set forth on the applicable Schedule to the Final APA (as such Schedule may be modified as of the Closing Date) to the Buyer, subject only to (a) the payment of all cures and/or other payments or actions required to assume and assign the Assumed Contracts to the Buyer, if any (other than the Assumed Contracts listed on the Initial Possible Assumption Notice for which there is no cure amount due); and (b) the Buyer's right to exclude Assumed Contracts from the definition of Assumed Contracts in accordance with the terms of the Final APA. To the extent the Buyer excludes any Assumed Contracts from the definition of Assumed Contracts, the Trustee shall file a revised Schedule to the Final APA with the Court and provide notice thereof to the counterparty to such contract promptly after the Closing Date. The payment of any cure costs due under each Assumed Contract pursuant to section 365(b) of the Bankruptcy Code by the

Buyer under the Final APA (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Contract to the Buyer in accordance with the terms of the Final APA; (b) compensates the applicable counterparty to the Assumed Contract for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Contract by the Trustee and the assignment of the Assumed Contract to the Buyer constitutes adequate assurance of future performance thereof. For clarity, no cure costs are owed or need be paid by Buyer under any Assumed Contract identified on the Initial Possible Assumption Notice.

14. The Buyer has provided adequate assurance of future performance under the Assumed Contracts and the proposed assumption and assignment of the Assumed Contracts satisfies the requirements of the Bankruptcy Code, including sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

15. The Assumed Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms. Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtor or Trustee is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate cure cost, if any. No sections or

provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force or effect with respect to the Sale Transaction and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code, and no assignment of any Assumed Contract pursuant to the terms of the Final APA shall in any respect constitute a default under any Assumed Contract. The non-Debtor party to each Assumed Contract shall be deemed to have consented to such assignment under section 365(e)(l)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the rights, benefits and privileges under each such Assumed Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

16.     Except as may be provided in this Sale Order, upon the assumption and assignment thereof, and except for allowed claims for cure costs payable by the Buyer under an Assumed Contract, each non-Debtor party to an Assumed Contract shall be forever barred and enjoined from asserting against the Trustee, the Debtor's bankruptcy estate, or the Buyer or its property or assets: (a) any default, monetary or non-monetary, existing as of the Closing Date; or (b) any

objection to the assumption and assignment of such non-debtor party's Assumed Contracts, whether or not such non-debtor party filed a proof of claim.

17.     The provisions of this Sale Order authorizing the sale of the Assets free and clear of Interests, other than assumed liabilities in connection with Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing), shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order. However, the Trustee and the Buyer, and their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Trustee or the Buyer deems necessary or appropriate to implement and effectuate the terms of the Final APA and this Sale Order. Effective as of the Closing, the Buyer and its successors and assigns shall have the full power and authority, on behalf and for the benefit of the Buyer and its successors and assigns, to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute for the benefit of the Buyer or its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, or its successors and assigns, may deem proper for the

collection or reduction to possession of any of the Assets, or to enforce any of the rights acquired by the Buyer under the Final APA or this Sale Order, and to do all acts and things with respect to the Assets which the Buyer or its successors and assigns shall deem desirable. Trustee agrees to reasonably cooperate with Buyer in carrying out or otherwise executing any of the foregoing in this paragraph 17.

18.     The Buyer is not a "successor" to the Debtor, Trustee or the bankruptcy estate by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be liable, obligated, or responsible for, any debt, liability, commitment or obligation of any of the Trustee, Debtor, or its bankruptcy estate, including, but not limited to, any bulk sales law, successor, transferee or vicarious liability or similar liability except as otherwise expressly provided in the Final APA with respect to Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing). Except to the extent the Buyer assumes any assumed liabilities in connection with any Assumed Contracts pursuant to the Final APA, neither the purchase of the Assets by the Buyer, nor the subsequent use by the Buyer of any of the Assets previously owned or operated by the Debtor, will cause the Buyer to be deemed a successor in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including

without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation, or doctrine, or under any product warranty liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine. Notwithstanding the foregoing, nothing herein shall preclude a creditor from prosecuting, defending, and potentially recovering on a timely and duly filed claim against the Debtor's bankruptcy estate, but in no event against the Buyer, the Assets or any other property or assets of the Buyer.

19. Except to the extent expressly included in the assumed liabilities in connection with Assumed Contracts (and then only to the extent of liabilities that arise, accrue or otherwise are exclusively for periods after Closing), pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, all debt security holders, equity security holders, the Debtor's employees or former employees (including retirees), governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a debt, liability, commitment, obligation or Interests of any kind or nature whatsoever against, in or with respect to any of the Debtor, the bankruptcy estate, or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated or otherwise),

arising under or out of, in connection with, or in any way relating to the Debtor, the bankruptcy estate, the Assets, the operation and maintenance of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Buyer, shall, upon Closing and payment of the Purchase Price, be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such debt, liability, commitment, obligation, or Interests against the Assets, the Buyer, any other property or assets of the Buyer, or any of Buyer's successors or assigns of the Assets.

20.   Subject to the terms of the Final APA, the provisions of the Final APA may be waived, modified, amended, or supplemented only by written agreement of the Trustee and the Buyer, without further action of the Court; provided, however, that the foregoing does not authorize the Trustee to close or otherwise consummate the sale for any amount less than the purchase price currently provided for in the Palltronics APA or the Back-Up APA, as the case may be.

21.   All of the Trustee's interests in the Assets to be acquired by the Buyer under the Final APA shall be, as of the Closing Date and upon the occurrence of the Closing and payment of the Purchase Price, transferred to and fully and irrevocably vested exclusively in the Buyer. Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for any and all purposes

a full and complete general assignment, conveyance and transfer of the Assets

acquired by the Buyer under the Final APA and/or a bill of sale or assignment

transferring good and marketable, indefeasible title and interest in the Assets

exclusively to the Buyer.

22.     The transactions contemplated by the Final APA have been

bargained for and undertaken by the Buyer and the Trustee at arms' length, without

collusion, and in good faith within the meaning of section 363(m) of the

Bankruptcy Code. As such, the Buyer is hereby granted and is entitled to the

protections and benefits provided to a good faith buyer under section 363(m) of the

Bankruptcy Code, including with respect to any transfer of any Assumed Contracts

as part of the sale of the Assets pursuant to section 365 of the Bankruptcy Code

and this Sale Order.

23.     Except in each case to the extent otherwise provided in the

Final APA or this Sale Order: (A) Buyer is acquiring the Assets at Closing "AS IS"

and "WHERE IS" with all faults and defects (including defects of title), (B) the

Trustee has not made and does not make, and Trustee specifically disclaims, any

representations, warranties, promises, covenants, agreements or guaranties of any

kind or character whatsoever, whether express or implied, oral or written, past,

present or future, of, as to, concerning, or with respect to the value, nature, quality,

quantity, title to and interest in, or condition of the Assets, (C) Buyer, having been

35

given the opportunity to inspect the Assets, relied on its own investigation of the Assets, (D) no independent investigation or verification has been or will be made by Trustee with respect to any information supplied by Trustee concerning the Assets and that Trustee made no representation as to the accuracy or completeness of such information, including the existence of any Assets identified on the Schedules, and (E) the disclaimers, agreements and other statements set forth in Section 4 of the Palltronics APA or Section 6.4 of the Back-Up APA are an integral part of the Final APA and that Trustee would not agree to sell the Assets to Buyer for the Purchase Price without the disclaimers, agreements, and statements set forth in Section 4 of the Palltronics APA or Section 6.4 of the Back-Up APA.

24.     If the Palltronics APA is terminated by Trustee pursuant to Section 7.1.6 of the Palltronics APA, or Palltronics breaches the Palltronics APA and fails to Close under the Palltronics APA, then Trustee's sole and exclusive remedy for monetary damages against Palltronics for Trustee terminating the Palltronics APA under Section 7.1.6 or Palltronics breaching the Palltronics APA and failing to Close shall be limited to retention of the Deposit Amount identified in the Palltronics APA. The retention of the Deposit Amount shall constitute Trustee's full and complete liquidated damages and Trustee's sole and exclusive remedy, whether for monetary damages or equitable relief, against Palltronics for loss or damage suffered or incurred by Trustee or the bankruptcy estate as a result

of Trustee terminating the Palltronics APA under Section 7.1.6 or Palltronics

breaching the Palltronics APA and failing to Close.  For purposes of clarity, the

retention of the Deposit Amount is intended solely as the liquidated damages for

Trustee terminating the Palltronics APA under Section 7.1.6 or Palltronics

breaching the Palltronics APA and failing to close. For the avoidance of doubt, if

Palltronics breaches the Palltronics APA and fails to Close, this paragraph is not

intended as a settlement or waiver of any claims of the Trustee against

Palltronics to enforce or seek damages related to any breach of any non-

disclosure agreement, or stipulated protective order entered in the Bankruptcy

Case, in each case, to which Buyer is a party.

   25. The automatic stay pursuant to section 362 of the Bankruptcy

Code is hereby modified to the extent necessary, without further order of this

Court, to allow the Buyer to deliver any notice provided for in the Final APA or

this Sale Order and allow the Buyer to take any and all actions permitted or

required under the Final APA or this Sale Order in accordance with the terms

and conditions hereof and thereof.  The Buyer shall not be required to seek or

obtain any further relief from the automatic stay under section 362 of the

Bankruptcy Code to enforce any of its rights or remedies under the Final APA,

this Sale Order or any other sale-related document.

26.     The sale authorized and approved by this Sale Order is not subject to avoidance or the imposition of an award of monetary damages pursuant to section 363(n) of the Bankruptcy Code or otherwise.

27.     This Sale Order shall inure to the benefit of the Buyer, the Trustee and their respective successors and assigns.

28.     If any order under Section 707 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted to the Buyer hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on the Trustee, the Debtor and its estate, successors, assigns, creditors and other parties in interest.

29.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon its entry and without waiting for the expiration of the fourteen (14) day period which is otherwise applicable. In the absence of any entity obtaining a stay pending appeal, the Trustee and the Buyer are authorized, but not directed, to close under the Final APA at any time after entry of the Sale Order.  In the absence of any entity obtaining a stay pending appeal, if the Trustee and the Buyer close under the Final APA, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protection and benefit of section 363(m) of the Bankruptcy Code as to all

aspects of the transactions contemplated by the Final APA and this Sale Order, regardless of whether this Sale Order or any authorization contained herein is reversed or modified on appeal, provided, however, nothing contained in this Sale Order shall require the Buyer to Close until all conditions for Closing set forth in the Final APA have been satisfied or waived.

30.     The provisions of this Sale Order are non-severable and mutually dependent.

31.     The failure specifically to include any particular provisions of the Final APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Trustee and the Buyer that the Final APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order and the Final APA.

32.     From time to time, as and when reasonably requested by Buyer, Trustee is authorized to execute and deliver, or cause to be executed and delivered, all such documents and instruments, and to take, or cause to be taken, all such further or other actions as the Buyer may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in Buyer its right, title and interest in and to the Assets, including the Scheduled Assets.

33.     Within one (1) business day after the occurrence of the Closing Date of the Sale Transaction, Trustee shall file notice of the occurrence of the Closing Date of the Sale Transaction, in a form to be agreed upon by Trustee and Buyer.

34.     Notwithstanding anything in this Sale Order or Final APA to the contrary, the Trustee is authorized to retain a copy of the Debtor's books and records (whether in electronic or paper format) that are in his or his professionals' possession as of the Closing Date ("Information"), including, but not limited to, all emails and other Information contained in the Debtor's Office 365 account, activity printouts of the Debtor's Citrix Sharefile system, and a copy of the Information contained on the Debtor's Citrix Sharefile system, and the preexisting external hard drive backup thereto; but expressly excluding Information relating to the Exobond secret formula, the Exobond secret process, trade secrets, any programming or engineering files on Debtor's Citrix Sharefile system or otherwise, source code, executable code and any repository of same, whether related to the manufacturing process, in house controls, tracking/tracing/environmental monitoring and reporting, or any other activity ("Excluded Information"). The Trustee and Buyer shall work cooperatively to resolve any issues regarding what is Information, what is Excluded Information, and how the Trustee and the Trustee's professionals may store the Information, with any disputes to be adjudicated by

this Court. The Trustee may use the retained Information (but not the Excluded Information) solely for the purposes of fulfilling the Trustee's duties to the bankruptcy estate, investigating the financial affairs of the Debtor, and administering any assets of the bankruptcy estate which are Excluded Assets, including but not limited to the investigation and pursuit of causes of action (Chapter 5 or otherwise).  For any Information which constitutes an Asset, the Trustee shall keep all such Information confidential and shall not disclose any such Information to any other person or entity, other than Trustee's professionals, unless compelled by an order of the Court after prior written notice and a reasonable opportunity to be heard has been afforded to Buyer before entry of such order or with the consent of Buyer.  The Trustee shall destroy any Information which constitutes an Asset within one year after this Bankruptcy Case is closed except for any such Information that the Trustee is required to retain pursuant to the Bankruptcy Code or applicable United States Trustee guidelines and protocols, in which case the Trustee must destroy such Information within 4 years and 1 month of the closing of the Bankruptcy Case.  The Trustee's professionals may retain their respective files for four years and one month after the closing of the Bankruptcy Case, with the Information to continue to be held as confidential from the date of closing through the date of destruction.  The Trustee and Trustee's professionals shall promptly provide a certification of destruction to Buyer with

respect to any destruction requirements provided for by this Sale Order. Notwithstanding the forgoing provisions of this section, the Trustee and Trustee's professionals are not required to hold as confidential any Information that is in the nature of financial records, Quick Book files, account statements and related documents for any financial institution accounts, and any accounting records. Upon Closing, Trustee shall not retain copies or otherwise preserve Information that is Excluded Information, but will be afforded a reasonable period of time to effectuate the transfer of such Excluded Information to the Buyer or, at Buyer's election, the destruction thereof.

35. Within two (2) days after Closing, Trustee will initiate the transfer of all Electronically Stored Property to Buyer, including, but not limited to, contacting all relevant third parties to inform them of the transfer of the Electronically Stored Property to Buyer, providing Buyer with administrative rights, providing Buyer with any and all account numbers, usernames, passwords and any other information or access necessary for Buyer to access and control the Electronically Stored Property and taking any and all additional actions reasonably necessary to effectuate the transfer of the Electronically Stored Property to Buyer. Nothing in this paragraph requires the Trustee to provide information or access to Electronically Stored Property which he does not have. Trustee shall provide proof or documentation of its efforts to transfer the Electronically Stored Property to

21-41019-tjt   Doc 244   Filed 05/13/21   Entered 05/13/21 10:15:32   Page 42 of 44

Buyer, including, for example, copies of any communications with relevant third parties, upon request of Buyer.

36.     This Court shall retain exclusive jurisdiction to enforce the provisions of this Sale Order and the Final APA, and to resolve any dispute concerning this Sale Order, the Final APA, or the rights and duties of the parties thereunder or hereunder or any issues relating to the Final APA and this Sale Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assumed Contracts, adjudicate all issues concerning any actual or alleged Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such actual or alleged Interests and all issues and disputes arising in connection with the relief authorized herein. To the extent there are any inconsistencies between the terms of this Sale Order and the Final APA, the Sale Procedures Order, the Sale Procedures or related documents, the terms of this Sale Order shall control.

37.     The Trustee and the Buyer are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Sale Order.

38.     The requirements set forth in Bankruptcy Rule 6004(a) and Local Rule 6004(a)-1 are satisfied.

**Signed on May 13, 2021**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**